## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEWS AT HAVERFORD | : | CIVIL ACTION NO. |
| | : | |
| Plaintiff, | : | No. 2:24-cv-02044-GAM |
| | : | |
| v. | : | |
| | : | |
| THE CORPORATION OF | : | |
| HAVERFORD COLLEGE | : | |
| | : | |
| Defendant. | : | |

## DEFENDANT THE CORPORATION OF
## HAVERFORD COLLEGE'S MOTION TO DISMISS

For the reasons set forth in the Memorandum of Law filed concurrently with this Motion, Defendant The Corporation of Haverford College ("Haverford" or "the College"), moves to dismiss with prejudice the claims asserted against it by Plaintiff "Jews at Haverford" ("Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Haverford respectfully requests argument on this Motion.

Respectfully submitted,

**SAUL EWING LLP**

Date: July 15, 2024

s/ *Joshua W. B. Richards*

Joshua W. B. Richards/204315
Levi R. Schy/329199
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA  19102
(215) 972-7737 (Richards)
(215) 972-7803 (Schy)
Joshua.Richards@saul.com
Levi.Schy@saul.com
*Attorneys for The Corporation of Haverford College*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JEWS AT HAVERFORD | **:** | CIVIL ACTION NO. |
| | **:** | |
| Plaintiff, | **:** | No. 2:24-cv-02044-GAM |
| | **:** | |
| v. | **:** | |
| | **:** | |
| THE CORPORATION OF | **:** | |
| HAVERFORD COLLEGE | **:** | |
| | **:** | |
| Defendant. | **:** | |

## <u>DEFENDANT THE CORPORATION OF HAVERFORD COLLEGE'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS</u>

Defendant, The Corporation of Haverford College ("Haverford" or "the College"), submits this Memorandum of Law in support of its Motion to Dismiss the claims asserted against it in the Complaint filed by Plaintiff "Jews at Haverford" pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

# **TABLE OF CONTENTS**

**Page(s)**

**INTRODUCTION**.................................................................................................... 1

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**............................................ 4

   I.   Alleged facts. ................................................................................................... 4

   II.  Allegations involving Landau.......................................................................... 5

   III. Additional facts alleged. ................................................................................ 10

   IV. Relevant College policies. ............................................................................. 15

   V.  Procedural history. ......................................................................................... 15

**LEGAL STANDARDS** ............................................................................................ 16

**ARGUMENT** ........................................................................................................ 17

   I.   "Jews at Haverford" lacks standing. .............................................................. 17

       A. Plaintiff fails to meet the standard for organizational standing because it has not alleged facts sufficient to assert claims arising from injuries to "Jews at Haverford" itself as an organization. ................................................................. 18

       B. Plaintiff fails to meet the standard for associational standing because it has not alleged facts sufficient to establish that its purported members would have standing to sue in their own right and the relief requested requires the participation of its alleged individual members................................................ 19

   II.  Plaintiff's Title VI hostile environment claim fails because it does not allege that its purported members were subject to discrimination or harassment actionable under Title VI, or that Haverford's response was deliberately indifferent.......................................... 24

       A. Plaintiff fails to allege discrimination or harassment on the basis of race, color, or national origin and Title VI does not apply. ............................................. 25

       B. Plaintiff fails to allege "severe, pervasive, and objectively offensive" harassment. .. 28

       C. Plaintiff fails to allege that Haverford was deliberately indifferent to any alleged harassment of which it had actual knowledge. .......................................... 31

   III. Plaintiff fails to state a claim for breach of contract because Plaintiff fails to identify any contractual duty breached by Haverford.......................................................... 32

**CONCLUSION** ..................................................................................................... 37

# **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Anspach ex rel. Anspach v. City of Phila.*, 503 F.3d 256 (3d Cir. 2007)...................................5, 22

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..........................................................................................16

*Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69 (3d Cir. 2011) ........................................17

*Ballentine v. United States*, 486 F.3d 806 (3d Cir. 2007) ..............................................................17

*Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247 (3d Cir. 2014)....................................................24

*Burton v. Nationstar Mortg. LLC,* 255 F. Supp. 3d 616 (E.D. Pa. 2015) ........................................4

*C.M. v. Pemberton Twp. High Sch.*, CV No. 16-9456 (RMB/JS),
    2017 WL 384274 (D.N.J. Jan. 27, 2017) ...............................................................................30

*Clark v. Burger King Corp.*, 255 F. Supp. 2d 334 (D.N.J. 2003)...................................................21

*Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347 (3d Cir. 2014).........................................19

*Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250 (3d Cir. 2010) ........................................15

*David v. Neumann Univ.*, 187 F. Supp. 3d 554 (E.D. Pa. 2016) ...................................................33

*Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999)........................................24, 25, 30, 31

*Davis v. Wells Fargo*, 824 F.3d 333 (3rd Cir. 2016) .....................................................................17

*Dawn L. v. Greater Johnstown Sch. Dist.*, 586 F. Supp. 2d 332 (W.D. Pa. 2008) .......................32

*Doe v. Abington Friends Sch.*, No. CV 22-0014, 2022 WL 16722322
    (E.D. Pa. Nov. 4, 2022)...........................................................................................................25

*Doe v. Galster*, 768 F.3d 611 (7th Cir. 2014) ..........................................................................28, 30

*Doe v. Haverford Coll.*, No. CV 23-299, 2023 WL 5017964
    (E.D. Pa. Aug. 7, 2023)............................................................................................................32

*Doe v. The Trustees of the Univ. of Pennsylvania*, 270 F. Supp. 3d 799 (E.D. Pa. 2017)............33

*Fair Hous. Council of Suburban Philadelphia v. Montgomery Newspapers*,
    141 F.3d 71 (3d Cir. 1998).......................................................................................................18

*Forum for Acad. & Institutional Rights, Inc. v. Rumsfeld*,
    291 F. Supp. 2d 269 (D.N.J. 2003) ..........................................................................................20

ii

*Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998) .................................................24, 25

*Geesey v. Stryker Corp.*, No. 09-2988, 2010 WL 3069630 (E.D. Pa. Aug. 4, 2010) ...................16

*Hassen v. Gov't of Virgin Islands*, 861 F.3d 108 (3d Cir. 2017) ................................................16

*Kimberg v. Univ. of Scranton*, No. 06-cv-1209, 2007 WL 405971 (M.D. Pa. Feb. 2, 2007)........33

*Kost v. Kozakiewicz*, 1 F.3d 176 (3d Cir. 1993) ........................................................................16

*L.L. v. Evesham Twp. Bd. of Educ.*, 710 F. App'x 545 (3d Cir. 2017) .......................................24

*Lansberry v. Altoona Area Sch. Dist.*, 318 F. Supp. 3d 739 (W.D. Pa. 2018)..............................30

*Lubavitch-Chabad of Illinois, Inc. v. Nw. Univ.*, 6 F. Supp. 3d 806 (N.D. Ill. 2013)...................26

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ............................................................17, 19

*Murrell v. Sch. Dist. No. 1, Denver*, 186 F.3d 1238 (10th Cir. 1999) .........................................28

*Page v. City of Pittsburgh*, 114 F. App'x 52 (3d Cir. 2004)........................................................30

*Pennsylvania Psychiatric Soc'y v. Green Spring Health Servs., Inc.*,
   280 F.3d 278 (3d Cir. 2002)........................................................................................18, 19, 23

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192 (3d Cir. 1993) .............17

*Pub. Interest Research Grp. of New Jersey, Inc. v. Magnesium Elektron, Inc.*,
   123 F.3d 111 (3d Cir. 1997)........................................................................................................23

*Rullo v. Univ. of Pittsburgh*, No. 17-cv-1380, 2020 WL 1472422
   (W.D. Pa. Mar. 26, 2020).....................................................................................................24, 31

*Santiago v. Warminster Twp.*, 629 F.3d 121 (3d Cir. 2010)........................................................16

*Schmidt v. Skolas*, 770 F.3d 241 (3d Cir. 2014) ........................................................................17

*Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577 (5th Cir. 2020).....................................................29

*T.E. v. Pine Bush Cent. Sch. Dist.*, 58 F. Supp. 3d 332 (S.D.N.Y. 2014).....................................26

*Tannous v. Cabrini Univ.*, No. CV 23-1115, 2023 WL 6465842 (E.D. Pa. Oct. 4, 2023)......27, 28

*Vance v. Spencer Cnty. Pub. Sch. Dist.*, 231 F.3d 253 (6th Cir. 2000) .........................................28

*Weiss v. City Univ. of New York*, No. 17-CV-3557 (VSB), 2019 WL 1244508
   (S.D.N.Y. Mar. 18, 2019) .........................................................................................................26

*Whitfield v. Notre Dame Middle Sch.*, 412 F. App'x 517 (3d Cir. 2011) ...............................24, 30

iii

*Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655 (2d Cir. 2012) ................................................28

*Zinman v. Nova Se. Univ., Inc.*, No. 21-CV-60723, 2021 WL 4025722
    (S.D. Fla. Aug. 30, 2021)........................................................................................................25

*Zinman v. Nova Se. Univ.*, No. 21-CIV-60723-RAR, 2021 WL 1945831
    (S.D. Fla. May 14, 2021) ........................................................................................................26

**STATE CASES**

*Murphy v. Duquesne Univ. Of The Holy Ghost*, 777 A.2d 418 (Pa. 2001) ...................................33

# INTRODUCTION

Plaintiff, "Jews at Haverford," an alleged unincorporated association, argues in this lawsuit that five of its members, Ally Landau ("Landau") and four of her classmates identified only as "HJSB," "HJSC," "HJSD," and "HJSE," (the "anonymous members"), experienced antisemitism during their time as students at Defendant, The Corporation of Haverford College ("Haverford" or "the College"). Haverford takes these allegations extraordinarily seriously; antisemitism is antithetical to the College's core values. If Plaintiff's claims survive dismissal, the College will readily demonstrate not only that Plaintiff's depiction of Haverford is untethered to fact, but that the College is deeply committed to opposing antisemitism and all forms of hate, both on and off campus.

The College is also staunchly and historically committed to fostering a community where its members fervently engage in critical inquiry and inclusive, intellectual learning, both in and out of the classroom. To that end, free expression and confrontation between community members is a deeply-embedded feature of Haverford's culture and educational environment. For well over a century, the Haverford College Honor Code has been a integral aspect of a Haverford education, and today, defines how students at the College are to engage with each other in terms of peaceful confrontation concerning all aspects of life at Haverford.[1] According to the Honor Code, "[u]pon encountering actions, values, or words" that a student finds to be inconsistent with the Honor Code, students are encouraged to "initiate dialogue with the goal of repairing the damage that these actions, values, or words may have caused while also encouraging the restoration of our community values."[2] In response, a confronted student is expected to "actively listen[] to

---

[1] *See* https://honorcouncil.haverford.edu/the-code/what-is-the-code/.
[2] *See* https://honorcouncil.haverford.edu/the-code/.

acknowledge and understand the harm experienced by the confronting party in order to facilitate the restorative process."

This commitment to confrontation is designed to foster an atmosphere of trust, concern, and respect, where student community members take ownership of implementing the Honor Code. Allowing for such a high level of agency among a student body representing endlessly diverse backgrounds and personal beliefs admittedly does not yield a neat and tidy process, and there is little doubt that Plaintiff's members in this lawsuit are highly critical of that atmosphere. The College certainly recognizes that its commitment to free expression, student agency, and confrontation between community members often comes with struggle and strife, but believes strongly that the resulting community is a reward worth such discomfort.

In this lawsuit, Plaintiff asserts that the discomfort that its members have felt in the face of their fellow community members' expression of viewpoints on world events, and in particular about the conflict in Israel and Gaza, is actionable in federal court. It is not. Plaintiff's claims are grounded in expression its members characterize as antisemitic, but not all expression which Plaintiff's members find offensive constitutes unlawful harassment. That is, there is a difference between conduct that offends and conduct that we litigate, a difference intended by Congress and repeatedly affirmed by the Courts. To be sure, those concepts overlap materially, but they are not the same.

As an initial matter, in spite of the case caption and self-styled name, "Jews at Haverford" is very much *not* all Jews at Haverford. This is not a class action; Plaintiff does not have standing to sue on anyone's behalf except its members. "Jews at Haverford" asserts its claims in a representative capacity on behalf of five alleged student members: Landau and the anonymous members, who are Jewish **and hold specific, pro-Israel views**. As such, sweeping generalizations

about Jewish-identifying Haverfordians at large, or allegations involving unnamed Haverford students without alleging that such students are members of the Plaintiff association cannot support Plaintiff's claims.

When those sweeping generalizations are set aside, what remains is a handful of allegations centering around two theories: (1) the College breached a purported legal duty to voice unequivocal, full-throated support for the actions of a foreign government and (2) Plaintiff's members were exposed to their classmates' anti-Israel, pro-Palestinian viewpoints which they considered to be antisemitic. But Plaintiff cannot point to any right on behalf of its members to have their political views adopted by Haverford's administration or, conversely, to have the College censor the expression of political views by fellow community members, even if such views may be experienced as hurtful. Because Plaintiff has accordingly failed to establish legal harm, Plaintiff fails to establish standing on behalf of its alleged members, which is fatal to its claims.

Plaintiff's Complaint also fails to state a claim upon which relief can be granted. Plaintiff fails to allege that the conduct complained of is actionable under Title VI for at least three reasons. *First*, the allegations in the Complaint demonstrate that the conduct Plaintiff complains about is not based on its members' race, color, or national origin, but instead based on their political views about Israel. *Second*, the conduct alleged, even if true, does not meet the bar of severe, pervasive, and objectively offensive harassment. And *third*, Plaintiff's allegations make clear that the College's top administrators actively and repeatedly engaged with students on these issues and Landau's ability to express her views widely around campus and online, so it is impossible to draw any plausible conclusion that the College was "deliberately indifferent" to any alleged harassment, as it must have been to state a claim under Title VI.

Finally, much like Plaintiff's failure to identify conduct violative of Title VI, it likewise fails to identify any instance in which the College breached any alleged contract with Plaintiff's members. As such, even if this Court finds that Plaintiff has established standing, Counts I and II should be dismissed, with prejudice, for failure to state a claim.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I.     Alleged facts.

"Jews at Haverford" alleges that it is "an unincorporated association" composed of Haverford students, faculty, alumni, and parents of students and alumni "who are Jewish and share a commitment to the existence of Israel as a Jewish state." (Compl. ¶ 29). Plaintiff accounts for only five associational members: Landau, alleged to be a senior at Haverford when the Complaint was filed on May 13, 2024 who "is Jewish and is committed to the existence of Israel as a Jewish state," (*id.* ¶ 30) and four anonymous members: "HJSB," "HJSC," "HJSD," and "HJSE." (*Id.* ¶¶ 31-34).[3] Allegations specific to the anonymous members appear only in paragraphs 31-34 of the 282-paragraph Complaint. These paragraphs describe each of the anonymous members as Jewish students at the College committed to the existence of Israel as a Jewish State and allege the following as the basis for their involvement in this matter: they have been "affected" by demonstrations and posters on campus that they deem to be antisemitic; they have voluntarily

---

[3] Plaintiff has refused to disclose the identities of the anonymous members to the College, even confidentially. (*See* Declaration of Joshua W. B. Richards ("Richards Decl.") Exhibit 1). (The Court may consider material beyond the allegations contained in the Complaint without converting the motion to dismiss into one for summary judgment where it is "a document integral to or explicitly relied upon in the complaint." *Burton v. Nationstar Mortg. LLC,* 255 F. Supp. 3d 616, 619 (E.D. Pa. 2015) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997)) (internal quotation marks omitted)). But Plaintiff does not show the same concern for protecting the identities of other Haverford students, particularly those with pro-Palestinian views or who identify as Palestinian-American, whom Plaintiff explicitly and repeatedly names in its publicly-filed Complaint. (*See, e.g.*, Compl. ¶¶ 101, 122, 200). Plaintiff even goes so far as to include a photograph of one such student. (*Id.* ¶ 237).

avoided spaces on campus where anti-Israel protests may take place; they have "felt intimidated" when publicly asserting pro-Israel views; they have "been devastated" by classmates' adoption of anti-Israel views; they have "felt continually bombarded and harassed" by classmates' support for a ceasefire in the Middle East; and they have generally considered various College administrators to be insufficiently supportive of Israel. (*Id.*)

## II.   Allegations involving Landau.

Plaintiff's discussion of its four anonymous members is limited to four vague and conclusory paragraphs. By comparison, Plaintiff alleges more specific facts with regard to Landau. Plaintiff alleges that in the aftermath of Hamas-led attacks on Israel on October 7, 2023, the College issued a public statement on October 9, 2023 addressing the "outbreak of war in Israel and Gaza." (Compl. ¶¶ 55, 104). Plaintiff alleges that John McKnight, Dean of the College, later issued a separate message to an unidentified "Jewish leader" to be shared with other students on campus. (*Id.* ¶ 56). Plaintiff's Complaint strategically omits that on October 12, 2023, shortly after the attack, Haverford President Wendy Raymond published a letter to the entire College community referencing the conflict as "a time of horrific loss," and the College's efforts to mourn "the hundreds of Israeli citizens who were murdered or kidnapped by Hamas beginning on Saturday," at a "peace circle" on campus earlier that week and recognizing that "Haverford's Jewish and Palestinian students, faculty, staff, and alums" were "suffering deeply."[4] In that letter, President Raymond presciently noted that these efforts were only the beginning and referenced "the coming months of international strife" and "challenging campus tensions" and reminded students of

---

[4]*See* "War in Israel and Gaza," Wendy Raymond, October 12, 2023, https://www.haverford.edu/president/news/war-israel-and-gaza. The Court may take judicial notice of material outside of the pleadings when that material is, among other things, a matter of public record not subject to reasonable dispute by the parties. *See Anspach ex rel. Anspach v. City of Phila.*, 503 F.3d 256, 273 n. 11 (3d Cir. 2007).

resources available to them, including mental health counselors and academic and emotional support systems at the College. (*See supra* n.4).

Nevertheless, the Complaint alleges that Landau was unsatisfied by the communications and asked President Raymond to issue another communication to the student body "condemning antisemitism and the Hamas terror attacks." (Compl. ¶ 115). When President Raymond declined to issue an additional campus-wide communication at Landau's direction, Landau requested a platform to share her personal views on the Israel-Palestine conflict; President Raymond agreed. (*Id.* ¶ 117). The College granted Landau a platform and venue to deliver a presentation on the conflict to the entire student body on November 1, 2023. (*Id.* ¶ 119). Plaintiff alleges that students with pro-Palestinian views, including members of the organization "Students for Justice in Palestine" ("SJP") protested the event and hung posters reading "From the River to the Sea Palestine Will Be Free" outside the room where the presentation took place. (*Id.* ¶¶ 119-120). Plaintiff alleges that unidentified Jewish students chose not to attend Landau's presentation, and posits that such lack of attendance was a result of the pro-Palestinian protest activity. (*Id.*) Plaintiff alleges that no one from Haverford's administration attended Landau's presentation, but in the same paragraph concedes that a "friendly staff member" attended the event and, at some point, communicated to Landau's parents that they had been "concerned for [Landau's] safety." (*Id.* ¶ 121). The Complaint does not allege that Landau felt or reported the same concern.

The Complaint includes a series of conclusory and factually unsupported allegations about Plenary, a long-held tradition at Haverford by which the student body gathers to discuss timely issues and vote to ratify the College's Honor Code. (*Id.* ¶¶ 138-139). Plaintiff takes issue with the fact that during the College's Fall Plenary on November 5, 2023, students speaking at the Plenary,

on balance, allegedly presented pro-Palestinian viewpoints.[5] (*Id.* ¶¶ 142-45). Plaintiff avers that students holding contrary, pro-Israel views were not given the opportunity to speak at the Fall Plenary, but in the same breath concedes that these individuals were not "barred from speaking" due to their Jewish identity or even their individually held beliefs on the Israel-Palestine conflict, but instead because, unlike the students espousing pro-Palestinian viewpoints, they had failed to prepare such a presentation or sign up in advance to speak at Plenary. (*Id.* ¶¶ 144, 147).

Plaintiff does not allege that Landau attended the Fall 2023 Plenary, that she specifically sought to speak at the Plenary, or was barred from doing so. Nevertheless, Plaintiff alleges that shortly after the Fall Plenary, the Dean of the College John McKnight granted Landau yet another platform from which to present her personal beliefs and concerns regarding the Israel-Palestine conflict, this time through the all-College email system. (*Id.* ¶¶ 154-55). Plaintiff alleges that Dean McKnight not only gave Landau express permission to use the all-College email system, but assisted her in actually sending her message. (*Id.* ¶ 155). The message allegedly offered a response to the views presented at Plenary and "defended Israel's right to exist and to its self-determination and self-defense." (*Id.* ¶ 156).

---

[5] Among the alleged "anti-Israel, pro-Palestinian" statements shared at Fall Plenary were concerns that the "Israel government" was committing genocide against Gazans and that Israel had imposed an apartheid and occupation upon Palestinians. (Compl. ¶ 145). Plaintiff recognizes that students espousing such views at Plenary were careful to explain that their views were focused on disapproval of the actions of the Israel government, not Jewish people or Israelis generally, stating "Anti-Zionism is the opposition of an oppressive government that has occupied Palestine for the past 75 years . . . . Being antizionist does not mean that you are anti semitic . . . . people start to think that the linking of Jewish people to a Jewish state means that all Jewish people support Israel. . . . That is not the message we are trying to send as SJP. . . . Opposing an oppressive government is not anti semitic." (*Id.*) Another student allegedly stated "When I denounce the Israeli government, I speak only about the people in positions of power…. I will always denounce antisemitism and fascism where I see it." (*Id.*)

On November 25, 2023, a Haverford Palestinian-American student was shot while walking in Burlington, Vermont with two other Middle Eastern men wearing keffiyehs, an article of clothing frequently worn by and associated with Palestinians. (*Id.* ¶ 122). Plaintiff alleges that President Raymond, in a statement to the College community, denounced the shooting as a "hate crime," though the actual text of Raymond's letter is considerably more measured than Plaintiff avers: "This was a hateful act of violence, regardless of whether the Vermont authorities ultimately file statutory hate crime charges against the suspect, now arrested." (*Id.* ¶ 125 (citing https://www.haverford.edu/college-communications/news/caring-one-another-following-weekend-violence)). It is difficult to understand how one can disagree with Raymond's statement that shooting strangers on the street constitutes "a hateful act of violence," regardless of the shooter's motivations.

Plaintiff further alleges that Nikki Young, Haverford's Vice President for Institutional Equity and Access, attended a student vigil for the injured Palestinian-American student on November 27, 2023 where she "expressed sympathy for Palestinians" and characterized the conflict in Israel and Palestine as "genocide committed" by Israel. (*Id.* ¶ 126). Plaintiff alleges that Young's comments prompted "Jewish students and leaders" to file bias reports against Young "but no action was taken." (*Id.* ¶ 127). Plaintiff does not allege that Landau, the anonymous members, or any other purported members of "Jews at Haverford" heard Young's comments, filed a bias report concerning same, or were even present at the vigil. Plaintiff also attempts to draw a comparison between the College's alleged response to the shooting of one of its students (*i.e.*, President Raymond's letter of support and an administrator's presence at a vigil) with the perceived lack of support for and attendance at Landau's November 1st presentation. (*Id.* ¶¶ 126; 132-33; 135). In other words, Plaintiff suggests that the College has failed in its duty because

College administrators reacted to the shooting of one of its students differently than they responded to world events and related debates on campus.

Plaintiff alleges that on or about November 27, 2023, certain Haverford students published a document titled the "Haverford Grievances Document." (*Id.* ¶ 158). Plaintiff asserts that the Grievances Document included "two direct attacks" on Landau. (*Id.* ¶ 159). The Grievances Document, most of which focused on Haverford's response to the conflict in Israel and Gaza, referenced Landau's letter sent through the all-College email system two times, both stating a view that the letter "target[ed] members of the student body with false accusations" and that Landaus' use of the term "hijacking" constituted "hostile, charged language." (Compl. Ex. B). Plaintiff fails to explain how these references to Landau's letter constitute "direct attacks" on Landau let alone denounce Landau "as an accessory to attempted murder." (Compl. ¶ 165). Nonetheless, President Raymond agreed to have Landau's name removed from the circulating document, and did so. (*Id.* ¶¶ 163, 165). President Raymond then allegedly met personally with Landau and offered resources, including counseling. (*Id.* ¶ 167).

In November of 2023, Plaintiff alleges that Landau obtained permission from Vice President Young to dedicate a Haverford women's basketball game to antisemitism awareness, and that the College had dedicated prior athletic events to causes including diabetes awareness. (*Id.* ¶¶ 183-84). Landau then allegedly worked with Assistant Director of Athletics Jason Rash to identify February 6, 2024 as an available date for the event. (*Id.* ¶ 185). Plaintiff alleges, however, that prior to the intended event, Landau attended a meeting with Dean McKnight and Athletic Director Danielle Lynch where Dean McKnight and Director Lynch raised concerns that the intended event "might prove too antagonistic," and that, if protestors interrupted the game, Haverford could be forced to forfeit the game per NCAA rules. (*Id.* ¶¶ 186-87). Plaintiff alleges

9

that Landau "understood" the administrators to be telling her that, if the team were forced to forfeit the game under such circumstances "the team's loss would be entirely her fault and it would be selfish of her to cost her teammates a win." (*Id.* ¶ 188). Plaintiff does not allege that Dean McKnight or Director Lynch ever used those words or told Landau anything of the sort. The "antisemitism awareness game" did not go forward, though it is unclear by Plaintiff's allegations who ultimately cancelled the event. The Complaint does not allege that the College cancelled the event, forced Landau to cancel the event, or directed her to do so. Plaintiff alleges that at the February 6, 2024 basketball game, Landau's father accused Dean McKnight of pressuring Landau herself to cancel the event and that Dean McKnight responded by suggesting that Landau may have also faced pressure from her father and "the Chabad Rabbi." (*Id.* ¶¶ 190-91).

Plaintiff alleges that, presumably in the Spring of 2024, when a Haverford administrator referenced May as Asian American/Pacific Islander Month, Landau informed the administrator that May is also Jewish American Heritage Month, but that the administrator failed to make a similar announcement regarding same. (*Id.* ¶ 249).

## III.   Additional facts alleged.

Plaintiff's Complaint is replete with allegations referencing events occurring on and off Haverford's campus with no mention of involvement by Landau, the anonymous members, or any other individual alleged to be a member of "Jews at Haverford." Plaintiff fails to explain how any of these events relate to purported injuries suffered by its alleged members. Nevertheless, in the interest of presenting the Court with a complete narrative, those allegations are summarized here.

Plaintiff alleges that on December 5, 2023, pro-Palestinian students "took over" Founders Hall, "the main administrative office" at the center of campus, where they hung banners and "conducted antisemitic chants." (*Id.* ¶ 174-75). Plaintiff alleges that this had the effect of "intimidating and harassing Jewish students," (*id.*) though Plaintiff fails to identify any specific

students who were "harassed" by such conduct. Plaintiff asserts that the protest "violated multiple Haverford rules," (*id.* ¶ 179) but fails to identify which rules were violated and how. In any event, the allegation that the College failed to enforce its rules with regard to the protest is belied by Plaintiff's concession that Dean McKnight "put an end to" the protest based on concerns that it created a "hostile work environment" for College staff who worked in the building (which Plaintiff alleges "has no classrooms"). (*Id.* ¶¶ 180-81). Plaintiff posits that the College's decisive action in response to the concerns for Haverford staff compared to its response to Landau's concerns demonstrates an indifference to hostility directed at Jewish students and preposterously asserts that this comparison supports the conclusion that, in the College's eyes "the Jews' suffering was of no consequence." (*Id.* 182). Of course this completely discounts the possibility that Dean McKnight ended the protest due in part to concerns of *Jewish* faculty and staff working in Founders Hall.

Plaintiff alleges that on January 26, 2024, Haverford students participated in an off-campus march on a public street to neighboring Bryn Mawr College, which Plaintiff deemed antisemitic. (*Id.* ¶ 76). Plaintiff fails to explain how Haverford has any control over the conduct of its students on a public street and on a different college campus. Plaintiff does not allege that any of its alleged members were present for or impacted by this event.

Plaintiff alleges that between February 29 and March 3, 2024, an "emergency Plenary" was held devoted entirely to efforts to adopt a resolution demanding a ceasefire in the Israel-Palestine conflict. (*Id.* ¶ 194). Plaintiff vaguely references "rules governing Plenaries" and asserts that such rules were violated (*Id.* ¶¶ 195-96, 204). But Plaintiff fails to attach the "rules governing Plenaries" and instead relies on selective excerpts from the College's Students' Association Constitution (*id.* ¶¶ 197-98) and the opinion of an individual who graduated from the College more than three decades ago and presumably has not participated in a Haverford Plenary since. (*Id.* ¶ 203, Ex. D).

Plaintiff asserts that the Emergency Plenary violated College rules because it "was held over four days" with voting taking place on three of those days, but fails to explain which specific rules this violated or how. (*Id.* ¶ 199). Nevertheless, Plaintiff concedes that the ceasefire resolution did not pass due to "the refusal of Jewish students to participate." (*Id.* ¶ 204). Plaintiff does not allege how any of its purported members were impacted by or if they even participated in the emergency Plenary.

Plaintiff alleges in conclusory fashion that the regularly-scheduled Spring Plenary involved "significant bullying and harassment to obtain signatures" for a renewed ceasefire resolution (*Id.* ¶ 207), but fails to support that assertion with any factual allegations about how students were bullied or harassed, let alone students alleged to be members of the Plaintiff association. Instead, Plaintiff merely alleges that Palestinian flags were present outside the building where the Spring Plenary took place, and that a student offered attendees a Palestinian flag. (*Id.* ¶ 208). The resolution ultimately passed at the Spring Plenary, and shortly thereafter, Plaintiff alleges that President Raymond wrote to the community that students "have felt fearful, silenced, or a protective need to self-censor." (*Id.* ¶ 209). Plaintiff further asserts generally that students felt pressured to vote in favor of the resolution (*Id.*), though Plaintiff fails to identify any such students, let alone students who are alleged to be members of "Jews at Haverford."

Plaintiff's Complaint includes allegations regarding several other events without mention of a single alleged member of the Plaintiff association, included here for completeness:

- Between March 25 and 28, 2024, Haverford students allegedly presented a series of lectures which Plaintiff describes as antisemitic. (*Id.* ¶¶ 213-217).

- At a March 31, 2024 Jewish student event titled "How do you Jew?" President Raymond allegedly gave responses to questions about whether certain statements were antisemitic, which Plaintiff considers to be wanting and offensive. (*Id.* ¶¶ 210-12).

- At a March 2024 event titled "Fords' Forum" held in response to complaints by Jewish community members, the chair of Haverford's Board allegedly responded to questions related to antisemitism in a way that Plaintiff considers to be wanting. (*Id.* ¶¶ 226-28).

- Haverford's political science department allegedly hosted an event showing "Supernova," a film about the October 7 attacks at an Israeli music festival and that protestors assembled outside of the event. (*Id.* ¶¶ 233-36).

- Anti-Israel protestors allegedly demanded that President Raymond apologize for inviting "Zionists" to campus for the Supernova movie screening, and that Raymond failed to adequately "rebuke" the students for demanding such an apology. (*Id.* ¶¶ 238-40).

- Pro-Palestinian protestors allegedly attempted to install an "encampment" on Haverford's campus featuring posters that Plaintiff deems to be antisemitic. (*Id.* ¶¶ 242-48). Despite alleging that Haverford "did absolutely nothing" to limit the encampment, Plaintiff concedes that the encampment was disbanded after three days and is no longer present on Haverford's campus.[6] (*Id.*)

- Haverford students allegedly demanded a boycott of a Jewish and Israeli-owned restaurant contracted to supply breakfast for Haverford's commencement by publicizing an image with the words "Say No to Blood Donuts." (*Id.* ¶ 26).

---

[6] It bears mention that Plaintiff appears to conflate the alleged "encampment" at Haverford with protests at different institutions by quoting a New York Times article describing the protests on Columbia University's campus. (Compl. ¶ 243). Such descriptions of occurrences at an entirely different institution are irrelevant here.

- On or about October 11, 2023, Haverford Professor Tarik Aougab posted on social media: "Let your rage drive your unequivocal and firm support for the Palestinian resistance," and reposted a similar post showing a photo of a bulldozer breaking through the Israel/Gaza border with the message "We should never have to apologize for celebrating these scenes of an imprisoned people breaking free from their chains. This was a historic moment to be recorded in the history books." (*Id.* ¶¶ 106-07). Plaintiff alleges that Professor Aougab referred to unidentified Haverford students supportive of Israel as "racist genocidaires." (*Id.* ¶ 220).

- Professor Aougab allegedly wrote "that he would not provide any recommendations for students seeking to study either in Israel or about anything related to Judaism." (Compl. ¶ 219). Plaintiff does not allege that any of its alleged members sought a letter of recommendation from Professor Aougab, that they were denied such a letter of recommendation, or that they were ever enrolled in a class with Professor Aougab.

- On November 26, 2023, Haverford Professor Gina Velasco posted a message to her personal social media profile which included the expressions "F*ck Israel" and "F*ck Zionism." (*Id.* ¶ 222).

- Haverford "initiated an investigation" into a complaint that Haverford Professor Barak Mendelsohn authored social media posts which included his "views that were supportive of Israel, and of Zionism as a Jewish movement and against those who reflexively reject those views." (*Id.* ¶ 77). Plaintiff does not allege that Professor Mendelsohn is a member of "Jews at Haverford."

- Student employees in the College's Office of Admissions allegedly rejected "more than one" application for a student tour guide position because the applicants were deemed

14

"Zionists." (*Id.* ¶¶ 46-48). Plaintiff fails to identify any of the individuals involved or allege that the tour guide applicants are members of "Jews at Haverford."

## IV.   Relevant College policies.

Plaintiff selectively references several of the College's policies but declines to attach those policies in full, instead relying on conclusory allegations and Plaintiff's own subjective understanding of those policies, which are not entitled to the presumption of truth on consideration of a motion to dismiss. The Court may consider documents attached to a Rule 12(b)(6) motion to dismiss as part of the pleadings if they are referenced in the plaintiff's complaint and are central to the claim. *Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 253 n.3 (3d Cir. 2010) (citing *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002)). As such, the College attaches the following policies, which are discussed more specifically with regard to Plaintiff's claims below.

- Expressive Freedom and Responsibility Policy (Richards Decl. Ex. 2);

- The Haverford College Honor Code (Richards Decl. Ex. 3);

- Social Media Best Practices and Policy (Richards Decl. Ex. 4);

- Bulletin Boards, Posting Notices, Banners, and Installation Policy (Richards Decl. Ex. 5); and

- The Students' Association Constitution (containing rules related to Plenary) (Richards Decl. Ex. 6).

## V.   Procedural history.

Plaintiff filed its Complaint (ECF No. 1) with this Court on May 13, 2024 asserting claims for hostile environment in violation of Title VI (Count I) and breach of contract (Count II). The College waived service of the Complaint on May 14, 2024.

## LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint that on its face is insufficient to state a claim upon which relief can be granted. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). To survive a motion to dismiss under Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim 'has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Hassen v. Gov't of Virgin Islands*, 861 F.3d 108, 115 (3d Cir. 2017) (quoting *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014)). In evaluating plausibility, the Court "disregard[s] rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements." *Id*. (citation omitted). Not all allegations are entitled to a presumption of truth; only "well-pleaded" ones. *Id*. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice.". *Geesey v. Stryker Corp*., No. 09-2988, 2010 WL 3069630, at *2 (E.D. Pa. Aug. 4, 2010) (quoting *Iqbal*, 556 U.S. at 678 (2009)).

The Third Circuit has set forth a three-part analysis that the court must conduct in evaluating a Rule 12(b)(6) motion to dismiss. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (citations omitted). "Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (citations omitted). "Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Id.* (citations omitted). In ruling on a Rule 12(b)(6) motion, courts may consider the complaint, exhibits attached to the complaint, matters of public record, and "an[y] undisputedly authentic document that a

defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

Under Rule 12(b)(1), a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim. Fed. R. Civ. P. 12(b)(1). In evaluating whether a complaint adequately pleads the elements of standing, courts apply the standard of reviewing a complaint pursuant to a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) ("Court[s] must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the non-moving party.") (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)); *see also Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 73 (3d Cir. 2011) ("A dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state a claim.").

## ARGUMENT

### I.     "Jews at Haverford" lacks standing.

Plaintiff alleges that it is "an unincorporated association consisting of Jewish students and faculty at Haverford College, as well as Haverford alumni and parents of students and alumni, who are Jewish and share a commitment to the existence of Israel as a Jewish state." (Compl. ¶ 29). But Plaintiff only identifies a single alleged member: Ally Laundau. (*Id.* ¶ 30). Plaintiff vaguely references four additional alleged members by pseudonym: HJSB, HJSC, HJSD, and HJSE. (*Id.* ¶¶ 31-34). The party invoking federal jurisdiction bears the burden of establishing elements of standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3rd Cir. 2016) ("[T]he plaintiff must prove the court has subject matter jurisdiction."). As an alleged "unincorporated association," Plaintiff can establish standing: (1) by asserting claims that arise from alleged injuries to the organization itself (organizational standing);

or (2) by asserting claims on behalf of its members (associational standing). *See Pennsylvania Psychiatric Soc'y v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 283 (3d Cir. 2002). Plaintiff fails to allege facts satisfying the standard for either organizational standing or associational standing, and its Complaint should be dismissed.

> **A.    Plaintiff fails to meet the standard for organizational standing because it has not alleged facts sufficient to assert claims arising from injuries to "Jews at Haverford" itself as an organization.**

The Complaint focuses on alleged harm suffered by purported members of "Jews at Haverford" and other unidentified individuals and does not assert any injury to the organization itself. (*See, e.g.*, Compl. ¶ 267 (asserting the existence of a hostile environment towards "Jews, including the Jewish students who are members of the Plaintiff association"); ¶ 271 (basing breach of contract claim on alleged contract between "the College and each of its enrolled students," as opposed to the Plaintiff association itself)). The Third Circuit has held that to establish organizational standing, the plaintiff organization must allege a "concrete and demonstrable injury to [its] activities," or that "it has devoted additional resources to some area of its effort in order to counteract discrimination." *Fair Hous. Council of Suburban Philadelphia v. Montgomery Newspapers*, 141 F.3d 71, 78-79 (3d Cir. 1998) (quoting *Spann v. Colonial Village, Inc.*, 899 F.2d 24, 27 (D.C. Cir. 1990)). Plaintiff's Complaint contains no allegations concerning its activities as an organization or any resources devoted to counteract discrimination, let alone allegations rising to the level of a concrete and demonstrable injury to "Jews at Haverford" as an association. As such, Plaintiff fails to establish organizational standing.

**B.    Plaintiff fails to meet the standard for associational standing because it has not alleged facts sufficient to establish that its purported members would have standing to sue in their own right and the relief requested requires the participation of its alleged individual members.**

To establish associational standing, Plaintiff must allege facts establishing that: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Pennsylvania Psychiatric Soc'y*, 280 F.3d at 283 (quoting *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)). Plaintiff fails on the first and third elements here because the Complaint fails to allege facts establishing that Landau or any of the anonymous members would have standing to sue in their own right and because the relief requested requires the participation of Plaintiff's individual members.

> *1.    The Complaint fails to allege facts establishing that the anonymous members would have standing to sue in their own right.*

To satisfy the first element of associational standing, Plaintiff must allege facts establishing that Landau and the four anonymous members individually satisfy three elements: injury-in-fact, causation, and redressability:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly … trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 360 (3d Cir. 2014). (quoting *Lujan*, 504 U.S. at 560-61). In order for injury to be "particularized," it must affect the plaintiff in a personal and individual way. *Lujan*, 504 U.S. at 560 n.1.

Plaintiff's allegations concerning HJSB, HJSC, HJSD, and HJSE are impermissibly vague and lack any substantive factual allegations necessary to establish standing. *Forum for Acad. & Institutional Rights, Inc. v. Rumsfeld*, 291 F. Supp. 2d 269, 287-89 (D.N.J. 2003) ("A barebones allegation, bereft of any vestige of a factual fleshing-out, is precisely the sort of speculative argumentation that cannot pass muster where standing is contested.") (quoting *United States v. AVX Corp.*, 962 F.2d 108, 117 (1st Cir. 1992)), *aff'd*, 446 F.3d 1317 (3d Cir. 2006). Indeed, throughout Plaintiff's 282-paragraph Complaint, allegations referencing the anonymous members are cabined to only four paragraphs. (Compl. ¶¶ 31-34). The allegations in those paragraphs base the anonymous members' purported injuries and related claims on their identities, each as a Jewish student at the College committed to the existence of Israel as a Jewish State. (*Id.*) The scant allegations concerning each of the anonymous members are nearly identical and include that they have been upset that their peers and classmates do not support Israel; have been "affected" by demonstrations and posters on campus that they deem to be antisemitic; have voluntarily avoided spaces on campus where anti-Israel protests may take place; have "felt intimidated" when publicly asserting pro-Israel views; have "been devastated" by classmates' adoption of anti-Israel views; have "felt continually bombarded and harassed" by classmates' support for a ceasefire in the Middle East; and generally that they considered various College administrators to be insufficiently supportive of Israel. (*Id.*)

It also bears emphasis that Plaintiff has refused to disclose the identities of the anonymous members to the College, even confidentially,[7] significantly hindering the College's ability to evaluate the allegations implicating those members and whether or not they have established standing to sue in their own right. While the Third Circuit has declined to adopt a blanket rule

---

[7] *See* Richards Decl. Ex. 1.

requiring that a plaintiff association explicitly name its members to establish standing, the failure to identify alleged members by name weighs as a factor in determining whether a plaintiff association has alleged facts which sufficiently and plausibly demonstrate that its members have suffered an injury-in-fact or that such injury is redressable by a favorable decision. *See Clark v. Burger King Corp.*, 255 F. Supp. 2d 334, 345 (D.N.J. 2003) (holding that organization dedicated to enforcement of Americans with Disabilities Act lacked standing to bring suit on behalf of its members for denial of handicapped access to restaurants given failure "to identify which members visited which restaurants on which dates and when such members plan to return").

While Plaintiff vaguely describes that each of the anonymous members has felt impacted by the conflict in Israel and Palestine and their fellow College community members' views on the issue, having to share a college campus with individuals who voice political opinions with which one disagrees is not an injury cognizable at law and the Complaint fails to connect the members to any specific factual allegations supporting a claim under Title VI or for breach of contract. Such barebones allegations fail to plausibly assert any concrete or particularized invasion of a legally protected interest necessary to establish standing, let alone that any such injury was caused by the College. Further, the College and this Court cannot determine whether each anonymous member's purported "injury" is likely to be redressed by a favorable decision if the College does not know who they are (by way of example, whether they are still an enrolled student, with respect to injunctive relief, and so on).

Because Plaintiff fails to establish that these students would have standing to sue in their own right, and has actively hindered the College's ability to assess whether elements of the standing inquiry are met by concealing their identities, Plaintiff cannot establish standing through the anonymous members.

       2.   *The Complaint fails to allege facts establishing that Ally Landau would have standing to sue in her own right.*

While the allegations involving Landau are more specific than those concerning the anonymous members, Landau's purported injury falls along the same lines. The Complaint alleges that the College failed "to publicly condemn Hamas" to her liking; that she faced opposition from and was confronted by classmates regarding her pro-Israel views after the College repeatedly provided her a platform to widely share and advocate for those views; that she felt pressured by the College with regard to the planning of an antisemitism awareness event; and that the College failed to promote May as "Jewish American Heritage Month" the same way that it promoted May as "Asian American/Pacific Islander Month." Such allegations fail to plausibly assert any concrete or particularized invasion of a legally protected interest necessary to establish standing, let alone that any such injury was caused by the College. In other words, Plaintiff has not identified any legally protected interest in demanding that Haverford or the individuals who compose the Haverford community support or promote views concerning world events that align with Landau's stated pro-Israel views. Thus, Plaintiff fails on the "injury-in-fact" element with regard to Landau.

Plaintiff also fails on the "redressability" element with regard to Landau. As discussed below, monetary damages are inappropriate in associational standing cases. True, Plaintiff also seeks injunctive relief, including requiring that the College "enforce all of its Policies," and "take action to end the hostile environment on campus," (Compl. ¶¶ 276-77), but less than a week after the Complaint was filed, Landau participated in the College's 186th Commencement, where she graduated with honors. *See* https://www.haverford.edu/commencement/commencement-program-class-2024.[8] As such, Landau is no longer an enrolled student at Haverford, and thus any alleged

---

[8] The Court may take judicial notice of material outside of the pleadings when that material is, among other things, a matter of public record not subject to reasonable dispute by the parties. *See Anspach ex rel. Anspach v. City of Phila.*, 503 F.3d 256, 273 n. 11 (3d Cir. 2007).

"injury" she suffered cannot be redressed by the injunctive relief sought and is likewise moot (at least as to Landau and any other member who is no longer a student). *See Pub. Interest Research Grp. of New Jersey, Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 117 (3d Cir. 1997) ("Plaintiffs must have standing at all stages of the litigation.") (citing *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255 (1994). As a result, Plaintiff fails to allege facts establishing that Landau or the anonymous students would have standing to sue in their own right. As such, Plaintiff has failed to establish associational standing and the Complaint should be dismissed.

> 3. *The relief requested requires the participation of Plaintiff's alleged individual members.*

The Third Circuit has held that associational standing is inappropriate where, as here, the associational plaintiff seeks monetary relief. *Pennsylvania Psychiatric Soc'y*, 280 F.3d at 284 ("Because claims for monetary relief usually require individual participation, courts have held associations cannot generally raise these claims on behalf of their members.") "Specifically, the Supreme Court has counseled 'that an association's action for damages running solely to its members would be barred for want of the association's standing to sue.'" *Id.* (quoting *United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 545-46 (1996)).

Here, Plaintiff's claims fail from the start since it is seeking monetary relief in the form of "[c]ompensatory, consequential, and punitive damages in amounts to be determined at trial" based on alleged injuries suffered by its members. (Compl. ¶ 280). Plaintiff's request for money damages requires the individual participation of its purported members and as such precludes associational standing, warranting dismissal. (And inasmuch as Plaintiff seeks injunctive relief, those claims are moot and lack the capacity for redressability, as discussed above).

Plaintiff fails to pledge facts necessary to establish the first and third elements of associational standing, and as such, the Complaint should be dismissed with prejudice.

II.    **Plaintiff's Title VI hostile environment claim fails because it does not allege that its purported members were subject to discrimination or harassment actionable under Title VI, or that Haverford's response was deliberately indifferent.**

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. While the Supreme Court has not set forth a framework for analyzing claims under Title VI, the Third Circuit has generally followed the Supreme Court's precedent under Title IX when interpreting Title VI because both statutes were enacted using Congress's authority under the Spending Clause. *See L.L. v. Evesham Twp. Bd. of Educ.*, 710 F. App'x 545, 549 n.5 (3d Cir. 2017); *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 317 (3d Cir. 2014); *Whitfield v. Notre Dame Middle Sch.*, 412 F. App'x 517, 521 n.2 (3d Cir. 2011); *see also Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998) (explaining that Title VI and Title IX "operate in the same manner, conditioning an offer of federal funding on a promise by the recipient not to discriminate, in what amounts essentially to a contract between the Government and the recipient of funds").

To state a Title VI hostile educational environment claim, a plaintiff must allege facts that show the recipient of federal funds was "deliberately indifferent" to harassment "of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victim[] of access to the educational opportunities or benefits provided by the school." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999); *see also Rullo v. Univ. of Pittsburgh*, No. 17-cv-1380, 2020 WL 1472422, at *7 (W.D. Pa. Mar. 26, 2020) (analyzing parallel claim under Title IX and citing *Davis*).

"Actual knowledge" requires that "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [institution's] behalf has actual knowledge of discrimination . . . ." *Gebser*, 524 U.S. at 290. "[T]he knowledge of the

wrongdoer himself is not pertinent to the analysis." *Id.* at 291. Further, the institution's "own deliberate indifference" must "effectively cause the discrimination." *Davis*, 526 U.S. at 642-43, 645 (quotations omitted). Institutions are not liable so long as they respond to harassment, meaning that, after receiving appropriate notice of the harassment, they conduct themselves "in a manner that is not clearly unreasonable." *Id.* at 649. "This is not a mere 'reasonableness' standard . . . [i]n an appropriate case, there is no reason why courts, on a motion to dismiss . . . could not identify a response as not 'clearly unreasonable' as a matter of law." *Id.* at 648-49

> ### A.     Plaintiff fails to allege discrimination or harassment on the basis of race, color, or national origin and Title VI does not apply.

Plaintiff bases its Title VI claim on the conclusory assertion that Haverford's conduct "created an environment that is hostile towards Jews." Putting aside the standing and organizational membership issues with that allegation, even a cursory review of Plaintiff's factual allegations reveals that the "harassment" alleged was based not its members' Jewish identities but instead those individuals' specific political views and positions on world events, namely, the Israel-Palestine conflict. Title VI protects individuals from discrimination on the basis of "race, color, or national origin," not political or personal views, even if such views are somehow influenced by a plaintiff's protected characteristic.

Courts in this district and beyond routinely dismiss Title VI claims on this basis. *See Doe v. Abington Friends Sch.*, No. CV 22-0014, 2022 WL 16722322, at *6 (E.D. Pa. Nov. 4, 2022) (dismissing Title VI claim based on alleged harassment on the basis of plaintiff's Jewish identity where allegations suggested that alleged harassment occurred based on perception that Plaintiff was racist, not based on plaintiff's Jewish identity); *Zinman v. Nova Se. Univ., Inc.*, No. 21-CV-60723, 2021 WL 4025722, at *8 (S.D. Fla. Aug. 30, 2021) (dismissing Title VI claim where the plaintiff's allegations concentrated on his personal beliefs rather than a characteristic based on

race, ethnicity, or shared ancestry), *report and recommendation adopted sub nom. Zinman v. Nova Se. Univ.*, No. 21-CIV-60723-RAR, 2021 WL 4226028 (S.D. Fla. Sept. 15, 2021), *aff'd sub nom. Zinman v. Nova Se. Univ., Inc.*, No. 21-13476, 2023 WL 2669904 (11th Cir. Mar. 29, 2023); *Lubavitch-Chabad of Illinois, Inc. v. Nw. Univ.*, 6 F. Supp. 3d 806, 816 (N.D. Ill. 2013) (granting summary judgment to defendant on Title VI claims where plaintiffs alleged that they suffered discrimination solely on the basis of their personal beliefs as opposed to race or ethnicity), *aff'd*, 772 F.3d 443 (7th Cir. 2014); *Weiss v. City Univ. of New York*, No. 17-CV-3557 (VSB), 2019 WL 1244508, at *9 n.11 (S.D.N.Y. Mar. 18, 2019) (dismissing Title VI claim to the extent plaintiff alleged discrimination based on specific personal religious beliefs as opposed to race or ethnicity); *T.E. v. Pine Bush Cent. Sch. Dist.*, 58 F. Supp. 3d 332, 355 (S.D.N.Y. 2014) (holding that Title VI only applies to allegations of antisemitic harassment when the harassment is based on the group's actual or perceived shared ancestry or ethnic characteristics, rather than solely on its members' religious practices) (citing Dear Colleague Letter from Russlynn Ali, Assistant Secretary for Civil Rights, Office for Civil Rights, U.S. Dep't of Education (Oct. 26, 2010)); *See also Zinman v. Nova Se. Univ.*, No. 21-CIV-60723-RAR, 2021 WL 1945831, at *4 (S.D. Fla. May 14, 2021) (holding that Plaintiff's Title VI claim was unlikely to succeed on the merits at the preliminary injunction stage because Plaintiff's claim was based on his personal beliefs with "no connection to race, color, or national origin"), *appeal dismissed*, No. 21-11711-JJ, 2021 WL 7160514 (11th Cir. Dec. 3, 2021), *cert. denied*, 142 S. Ct. 1684 (2022).

Here, the alleged conduct involving Landau and the anonymous members cited as the basis for Plaintiff's Title VI claim relates to their specific and personal views on the conflict in Israel and Palestine (and specifically their support for the Israeli government), not on their "shared ancestry or ethnic characteristics." Such conduct is not actionable under Title VI. Indeed, Plaintiff

concedes that, as an association, it serves those who "share a commitment to the existence of Israel as a Jewish state." (Compl. ¶ 29). This is a political position, even if informed by one's religious beliefs, and alleged harassment based on one's political position is not actionable under Title VI. Further, to the extent that Plaintiff's claims are based on allegations that its members' views have been denounced as racist (*see, e.g.*, Compl. ¶ 2 (alleging that "President Raymond has allowed to go unanswered the exclusionary demands that pro-Israel students be labeled as racist 'genocidaires'")), such an allegation, even where such labels of racism are alleged to have been incorrectly applied, "provides a clear, non-race-based motive" for a defendant's conduct. *Tannous v. Cabrini Univ.*, No. CV 23-1115, 2023 WL 6465842, at *6 (E.D. Pa. Oct. 4, 2023) (McHugh, J.), *on reconsideration in part*, No. 23-115, 2023 WL 8026634 (E.D. Pa. Nov. 20, 2023).

In *Tannous*, this Court rejected Title VII discrimination claims brought by a professor against a university based on his termination for social media posts which were deemed to be antisemitic. *Id.* at *3-6. The plaintiff alleged that due to his status as a Palestinian-American, his posts were incorrectly presumed to be antisemitic. *Id.* This Court rejected the plaintiff's attempt to equate discrimination based on race/ethnicity to discrimination based on a belief that his statements were antisemitic. *Id.* at *5 ("These concepts are distinct. Even if the belief that his statements were antisemitic is unfair or incorrect, courts considering the issue have concluded that such conduct does not give rise to a cognizable claim under Title VII because it is not based on the employee's status as a protected minority.")

The same reasoning applies here and is fatal to Plaintiff's claim. While Plaintiff asserts that "Haverford refuses to tolerate ideas about Israel that are at odds with its new political orthodoxy," creating a hostile environment for "Jewish students committed to the existence of the State of Israel as a Jewish state," (Compl. ¶ 2) even if such conclusory allegations are presumed to be true,

Plaintiff alleges no facts indicating that non-Jewish individuals espousing similar political views concerning the Israel-Palestine conflict would have been treated any differently. *See Tannous*, at *5 (dismissing claims premised on alleged discrimination based on terminated employee's Palestinian-American identity where Plaintiff failed to allege facts suggesting that the defendant would have reacted differently to similar conduct by a similarly situated non-Palestinian-American employee).

Plaintiff fails to allege facts suggesting that its members were discriminated against on the basis of their race, color, or national origin, and as such Title VI is inapplicable here and Count I should be dismissed.

> **B.**     **Plaintiff fails to allege "severe, pervasive, and objectively offensive" harassment.**

Plaintiff likewise fails to allege harassment that is sufficiently severe to be actionable under Title VI. It is "rare" for discrimination or harassment "to be sufficiently severe under Title VI and Title IX" to support a claim for hostile educational environment. *Doe v. Galster*, 768 F.3d 611, 618 (7th Cir. 2014) (finding reasonable jury could find "cumulative effects" of harassment sufficiently severe where plaintiff subjected to multiple incidents of physical violence requiring police attention and causing family to change school districts); *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 659-62, 667 (2d Cir. 2012) (severity requirement satisfied where the victim endured explicit racial slurs and physical attacks that warranted police attention, causing the victim to graduate early with a limited diploma); *Vance v. Spencer Cnty. Pub. Sch. Dist.*, 231 F.3d 253, 259 (6th Cir. 2000) (finding sufficiently severe harassment where the victim's harassers sexually propositioned her, removed her shirt, and stabbed her in the hand, causing her to complete her studies at home); *Murrell v. Sch. Dist. No. 1, Denver*, 186 F.3d 1238, 1248 (10th Cir. 1999) (finding complaint sufficiently alleged severe harassment where victim sexually was assaulted for

a month, causing hospitalization and rending the victim homebound); *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 585 (5th Cir. 2020) (finding complaint plausibly alleged severe, pervasive, and offensive harassment where dean ridiculed plaintiff every other day during school year, discouraged other students from talking to him, and attempted to convince a female student to accuse him of sexually assaulting her).

In contrast, Plaintiff alleges a handful of events concerning Landau that the complaint characterizes as antisemitic[9] harassment: (1) that President Raymond failed to publish a statement at Landau's direction which was sufficiently aligned with her views on the Israel-Palestine conflict (Compl. ¶¶ 115-117); (2) that when the College granted Landau a platform and venue, at her request, to speak about her views on the conflict, certain of her classmates protested with opposing views (*id.* ¶ 119-20); (3) that classmates with pro-Palestinian views asserted those views at the College's fall Plenary (*id.* ¶¶ 142-45); (4) that when the College granted Landau yet another platform to express her views through the all-College email system, certain of her classmates presented a counter-view directly referencing Landau's letter (*id.* ¶¶ 158-59); (5) that a College administrator attended a vigil for a Palestinian-American student who was shot and injured but did not attend Landau's talk on the Israel-Palestine conflict (*id.* ¶¶ 126; 132-33; 135); (6) that Landau felt pressured by College administrators into forgoing a planned "antisemitism awareness" event (*id.* ¶¶ 186-88); and (7) that the College recognized May as Asian American/Pacific Islander Month but not Jewish American Heritage Month. (*Id.* ¶ 249).

---

[9] It bears emphasis that the legal standards set forth in the foregoing authorities focus on alleged conduct, not labels attached to the alleged conduct. Plaintiff must allege conduct that constitutes "severe, pervasive, and objectively offensive" harassment to survive dismissal, not merely conduct that Plaintiff regards as antisemitic.

None of these events are qualitatively similar to the type of conduct found to establish the requisite severity or pervasiveness. This Court may determine as a matter of law whether conduct fails to meet the severe, pervasive, and objectively offensive standard, and it should do so here. *See Page v. City of Pittsburgh*, 114 F. App'x 52, 54 (3d Cir. 2004) (affirming district court's ruling "that there was insufficient evidence, as a matter of law, to establish severe and pervasive discrimination"). When considering Plaintiff's allegations of discrimination and harassment concerning its members, even in the light most favorable to Plaintiff, this Court should conclude that these events do not constitute severe, pervasive, and objectively offensive harassment such that Landau or the anonymous members were deprived of the educational opportunities and benefits provided by Haverford. *Davis*, 526 U.S. at 633.

In *Doe v. Princeton University*, the Third Circuit concluded that a racial epithet was insufficient to meet the requisite standard. *See* 790 F. App'x 379, 384 (3d Cir. 2019) (finding "one instance of being called a slur, while offensive, is neither severe nor pervasive"). Plaintiff does not allege that anyone used ethnic slurs against its identified members; only that it has inferred antisemitic intent based on its subjective evaluation that Haverford's administration and certain of its students have been insufficiently supportive of Israel. Other case law is in agreement; allegations of the sort alleged here do not meet the standard for the "rare" case of discrimination that rises to the extraordinary level necessary to demonstrate a hostile educational environment. *Galster*, 768 F.3d at 618-19; *see also Davis*, 526 U.S. at 650; *Whitfield*, 412 F. App'x at 521 (finding incidents of racial discrimination, including incidents of derogatory remarks and scratching plaintiff, not severe or pervasive); *Lansberry v. Altoona Area Sch. Dist.*, 318 F. Supp. 3d 739, 752-53 (W.D. Pa. 2018) (finding complaint failed to allege severe, pervasive, and objectively offensive conduct where claim was based on sporadic instances of bullying); *C.M. v.*

*Pemberton Twp. High Sch.*, CV No. 16-9456 (RMB/JS), 2017 WL 384274, at *6 (D.N.J. Jan. 27, 2017) (dismissing Title IX claim because the complaint only alleged "two seemingly isolated instances" of harassment, "not pervasive conduct").

Even if Plaintiff adequately alleged that its members were subject to conduct on the basis of a characteristic protected by Title VI (it has not), it fails to allege that such conduct rises to the requisite level of "severe, pervasive, and objectively offensive" to be actionable under Title VI. As such, Count I should be dismissed with prejudice.

### C. Plaintiff fails to allege that Haverford was deliberately indifferent to any alleged harassment of which it had actual knowledge.

Even if Plaintiff had alleged sufficiently severe and pervasive conduct that was actionable under Title VI, the Court should still dismiss Plaintiff's hostile environment claim because it does not allege facts showing that Haverford was deliberately indifferent to any alleged harassment. *See Rullo*, 2020 WL 1472422, at *7; *Davis*, 526 U.S. at 648-50. Although Plaintiff alleges that Landau specifically and the anonymous members generally were dissatisfied by the level of support for Israel shown by the College and their classmates, this Court can and should determine that as a matter of law, Haverford's response was not "clearly unreasonable." *Davis*, 526 U.S. at 649.

The Complaint specifically acknowledges that Landau's concerns were addressed repeatedly by Haverford's highest-ranking administrators, and that those individuals worked with Landau to address those issues and also to provide Landau a platform from which to share her views on the conflict in Israel and Palestine. While Plaintiff takes issue with the timing and content of the College's statements concerning Israel and Palestine, the allegations make clear that College administrators engaged in multiple conversations with Jewish members of the Haverford community in response to their related concerns. (Compl. ¶¶ 54-56). The College granted Landau a platform to deliver a presentation to the student body regarding her views on the Israel-Palestine

31

conflict. (*Id.* ¶¶ 115-19). The College further supported Landau in expressing her views by approving her use of the "all-College email system" to voice her concerns. (*Id.* ¶ 154). The College coordinated the removal of Landau's name from the "Haverford Grievances Document" at her request. (*Id.* ¶ 162). More generally, the College ended a pro-Palestinian "sit-in" on campus due to a "hostile work environment" created for College staff. (Compl. ¶ 181). Further, the Complaint is replete with examples where College administrators attended events sponsored by Jewish student-groups and engaged in dialogue on topics of concern. (*See, e.g.*, Compl. ¶¶ 212; 226).

Courts afford schools "substantial deference in cases of alleged student-on-student harassment; victims of harassment have, for example, no 'right to make particular remedial demands.'" *Dawn L. v. Greater Johnstown Sch. Dist.*, 586 F. Supp. 2d 332, 369 (W.D. Pa. 2008). (quoting *Davis*, 526 U.S. at 648)). To establish deliberate indifference, a plaintiff must show that the school's response to peer harassment amounted to "an official decision . . . not to remedy the violation[s]." *Id.* (quoting *Gebser*, 524 U.S. at 290). In sum, even if the alleged harassment Plaintiff's members were subject to were actionable under Title VI (it is not), Haverford was only required to respond in a way that is not clearly unreasonable. On the face of the Complaint, Haverford's response was not "an official decision not to remedy the alleged violations." As such, Plaintiff's claim must be dismissed.

### III.  Plaintiff fails to state a claim for breach of contract because Plaintiff fails to identify any contractual duty breached by Haverford.

To state a claim for breach of contract, a plaintiff "must set forth facts regarding (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages." *Doe v. Haverford Coll.*, No. CV 23-299, 2023 WL 5017964, at *5 (E.D. Pa. Aug. 7, 2023) (McHugh, J.) (citing *McShea v. City of Philadelphia*, 995 A.2d 334, 340 (Pa. 2010)). Under Pennsylvania law, relationships between private colleges and their enrolled

students are contractual in nature. *Kimberg v. Univ. of Scranton*, No. 06-cv-1209, 2007 WL 405971, at *3 (M.D. Pa. Feb. 2, 2007) (citing *Swartley v. Hoffner*, 734 A.2d 915, 919 (Pa. Super. Ct. 1999)). The terms of such contracts are comprised of the "written guidelines, policies, and procedures as contained in the written materials distributed to the student over the course of their enrollment in the institution." *Id.*

To survive a motion to dismiss on its breach of contract claim, Plaintiff must specifically identify the contractual terms at issue. "While Pennsylvania law allows a student to sue a private university for breach of contract, 'the allegations must relate to a **specific** and identifiable promise that the school failed to honor.'" *David v. Neumann Univ.*, 187 F. Supp. 3d 554, 558 (E.D. Pa. 2016) (quoting *Vurimindi v. Fuqua Sch. of Bus.*, 435 F. App'x 129, 133 (3d Cir. 2011)) (emphasis added). Further, it is Plaintiff's burden to "point to **specific** undertakings in the [contract] that were not provided." *Id.* (quoting *Miller v. Thomas Jefferson Univ. Hosp.*, 908 F. Supp. 2d 639, 655 (E.D. Pa. 2012), *aff'd*, 565 F. App'x 88 (3d Cir. 2014)) (emphasis added).

In interpreting the provisions and intent of a contract between a private college or university and its enrolled students, a court must also consider specific contractual terms in the larger context of a school's policies and procedures as a whole. *See Doe v. The Trustees of the Univ. of Pennsylvania*, 270 F. Supp. 3d 799, 812 (E.D. Pa. 2017) (declining to consider specific terms of a university's disciplinary procedures in isolation); *Murphy v. Duquesne Univ. Of The Holy Ghost*, 777 A.2d 418, 432 (Pa. 2001) ("Simply put, the parties' contractual intent cannot be gleaned by ignoring all but one sentence in the Contract, and then reading that sentence out of context.")

It is accordingly Plaintiff's burden to plead that Haverford violated a specific written promise made by the College. Plaintiff has not done that. Instead, Plaintiff alleges in conclusory

fashion that Haverford failed to abide by its "policies governing discrimination, the scope of expressive freedom on campus, the posting of posters, and the use of social media." Such conclusory allegations are factually unsupported and thus not entitled to the presumption of truth. Plaintiff fails to identify the specific contractual terms at issue and how the College's conduct constituted a breach of such terms.

For example, Plaintiff references Haverford's "Non-discrimination Statement" (Compl. ¶ 58) but fails to explain how the College breached any contractual obligations under that "policy." Plaintiff selectively quotes a policy on "Expressive Freedom and Responsibility," reflecting the College's commitment to "all students' rights to free inquiry, assembly, and expression" and "the right to expression of dissent through peaceful protest." (*Id.* ¶ 59). Plaintiff asserts generally that the "Expressive Freedom and Responsibility" policy is "not applied to Jewish students, or those who support the right of Israel to exist as a Jewish state." (*Id.* ¶ 61). But beyond that sweeping generalization, Plaintiff's factual allegations do not allege any instance where the College breached the provisions of that policy with regard to alleged members of the Plaintiff association. Quite the opposite, Plaintiff's *factual* allegations show that Haverford has consistently provided students of differing viewpoints with a platform to engage in such "free inquiry, assembly, and expression."

Indeed, the College (1) provided a platform for Landau, at her request, to deliver a presentation to the Haverford community on November 1, 2023 expressing her views on the conflict in Israel and Palestine (Compl. ¶¶ 117-19); and (2) granted special approval for Landau to utilize Haverford's all-College email system to send a letter to the Haverford community (and assisted her in doing so) setting forth her views on the Israel-Palestine conflict and Israel's right to exist, self-determination, and self-defense. (Compl. ¶¶ 154-56). The Complaint further details several Haverford-sponsored events on campus providing a platform for the College's Jewish

community to discuss their experiences on campus and views on the Israel-Palestine conflict. (Compl. ¶ 210 ("How do you Jew" event), ¶¶ 226-230 ("Fords' Forum"), ¶ 233 ("Supernova" movie screening)).

Plaintiff references the College's Honor Code (mislabeled as a "Speech Code") but does not attach the Honor Code in full, instead relying on cherry-picked provisions removed from context and the characterization of the Honor Code by FIRE, an external advocacy group. (*Id.* ¶¶ 62-96). Plaintiff's main issue with the College's application of the Honor Code, ironically, is that Haverford has not sufficiently censored the expression of community members who are critical of the actions of the Israel government or who voice pro-Palestinian positions. Plaintiff asserts that this represents "overt discrimination by Haverford College against Haverford's Jews who believe that Israel has a right to exists as a Jewish State." But Plaintiff fails to allege facts establishing that its alleged members have a legally cognizable right to be unbothered by opposing viewpoints on world affairs, either under their contractual relationship with Haverford or otherwise. Further, Plaintiff fails to cite any instance where an alleged member of "Jews at Haverford" was punished in violation of the College's Expressive Freedom and Responsibility policy or Honor Code.

Plaintiff cites (again, selectively) the College's Social Media Policy, and broadly asserts that the College has failed to enforce this policy in favor of Jewish students who support Israel. (*Id.* ¶¶ 81-82). Plaintiff omits, however, that the guidelines set forth in the "Haverford College Social Media Best Practices and Policy" explicitly apply only to "faculty, staff, and students **who administer or contribute to official Haverford College-related social media channels**." (Richards Decl. Ex. 4). Again, Plaintiff has failed to allege any instance where activity on an official Haverford-related social media account violated the College's Social Media Policy, much

less any instance where the College failed to enforce that policy in a way that impugned the contractual rights of Plaintiff's alleged members.

Plaintiff refers to the College's Bulletin Boards, Posting Notices, Banners, and Installation Policy ("Poster Policy"), which requires posters on campus to include the name of poster's sponsor, to allege that the College failed to enforce this policy with regard to alleged pro-Palestinian posters containing what Plaintiff considers to be antisemitic language. (*Id.* ¶¶ 83-87). Plaintiff provides no further details about the alleged anonymous posters, where the posters appeared, or how long they stayed up. Further, Plaintiff does not explain how the existence of an anonymous poster constitutes a breach of contract *between the College and Plaintiff's alleged members.*

Plaintiff also refers to the College's Plenaries held during the 2023-2024 academic year and vaguely references "rules governing Plenaries," asserting that such rules were violated. (*See, e.g.*, *id.* ¶¶ 152, 195-99, 204). But Plaintiff fails to attach the "rules governing Plenaries" and instead relies on selective excerpts from the College's Students' Association Constitution (*id.* ¶¶ 197-98) and the opinion of an alumnus who graduated from the College more than three decades ago and presumably has not participated in a Haverford Plenary since. (*Id.* ¶ 203, Ex. D). Plaintiff takes issue with the fact that, during the College's Fall Plenary on November 5, 2023, students allegedly, on balance, presented pro-Palestinian viewpoints. (*Id.* ¶¶ 143-45). Plaintiff avers that students holding contrary, pro-Israel views were not given the opportunity to speak at the Fall Plenary, but in the same breath concedes that these individuals were not "barred from speaking" due to their Jewish identity or their individually held beliefs but instead because, unlike the student espousing pro-Palestinian viewpoints, they had failed to prepare such a presentation or sign up in advance to speak at Plenary. (*Id.* ¶¶ 144, 147). Plaintiff asserts in conclusory fashion that the

Emergency Plenary violated College rules but fails to identify which rules were violated or how. (*Id.* ¶ 199). Plaintiff also fails to allege how any of its purported members were impacted by or if they even participated in the emergency Plenary. Thus, Plaintiff has not and cannot point to a contractual duty owed to its alleged members and breached by Haverford with regard to Plenary, let alone any resultant damages.

Because Plaintiff has failed to identify any specific contractual promise that Haverford failed to honor (or resultant damages) with regard to Plaintiff's alleged members, the breach of contract claim (Count II) should be dismissed with prejudice.

## **CONCLUSION**

For the foregoing reasons, and any other reasons that may appear to the Court, Haverford College respectfully requests that the Court dismiss Plaintiff's Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, Rule 12(b)(6).

Respectfully submitted,

**SAUL EWING LLP**

Date: July 15, 2024

s/ *Joshua W. B. Richards*
Joshua W. B. Richards/204315
Levi R. Schy/329199
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA  19102
(215) 972-7737 (Richards)
(215) 972-7803 (Schy)
Joshua.Richards@saul.com
Levi.Schy@saul.com
*Attorneys for The Corporation of Haverford College*

## **CERTIFICATE OF SERVICE**

I, Joshua W. B. Richards, certify that on this date I filed via the ECF system a true and correct copy of the foregoing **MOTION TO DISMISS AND ACCOMPANYING MEMORANDUM OF LAW**, which constitutes valid service on the following registered users:

Jerome Marcus
Marcus & Marcus LLC
P.O. Box 212
Merion Station, PA 19066
jmarcus@marcuslaw.us

*Attorney for Plaintiff "Jews at Haverford"*

Date: July 15, 2024                          s/ *Joshua W. B. Richards*
                                             Joshua W. B. Richards/204315
                                             Centre Square West
                                             1500 Market Street, 38th Floor
                                             Philadelphia, PA 19102
                                             (215) 972-7737
                                             Joshua.Richards@saul.com

                                             *Attorney for The Corporation of Haverford College*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| JEWS AT HAVERFORD | **:** | CIVIL ACTION NO. |
|  | **:** |  |
| Plaintiff, | **:** | No. 2:24-cv-02044-GAM |
|  | **:** |  |
| v. | **:** |  |
|  | **:** |  |
| THE CORPORATION OF | **:** |  |
| HAVERFORD COLLEGE | **:** |  |
|  | **:** |  |
| Defendant. | **:** |  |

**[PROPOSED] ORDER**

     **AND NOW**, this _____ day of _____, 2024, after consideration of Defendant The Corporation of Haverford College's Motion to Dismiss Plaintiff's Complaint, and any response thereto, it is **ORDERED** that the Motion is **GRANTED**. Plaintiff's claims against The Corporation of Haverford College are **DISMISSED WITH PREJUDICE** in their entirety.

     **BY THE COURT:**


_____
Hon. Gerald A. McHugh