**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| ALLY LANDAU, HJSB, HJSC, and JEWS AT HAVERFORD | : : : : | CIVIL ACTION NO. <br><br> No. 2:24-cv-02044-GAM |
| Plaintiffs, | : : | |
| v. | : : | |
| THE CORPORATION OF HAVERFORD COLLEGE | : : : | |
| Defendant. | : | |

## DEFENDANT THE CORPORATION OF HAVERFORD COLLEGE'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

For the reasons set forth in the Memorandum of Law filed concurrently with this Motion, Defendant the Corporation of Haverford College ("Haverford" or "the College"), moves to dismiss with prejudice the claims asserted against it by Plaintiffs Ally Landau, HJSB, HJSC, and "Jews at Haverford" in their First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Haverford respectfully requests argument on this Motion.

Respectfully submitted,

**SAUL EWING LLP**

Date: September 23, 2024

s/ *Joshua W. B. Richards*
Joshua W. B. Richards/204315
Levi R. Schy/329199
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA  19102
(215) 972-7737 (Richards)
(215) 972-7803 (Schy)
Joshua.Richards@saul.com
Levi.Schy@saul.com

*Attorneys for Haverford College*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| ALLY LANDAU, HJSB, HJSC, and JEWS AT HAVERFORD | CIVIL ACTION NO. |
| Plaintiffs, | No. 2:24-cv-02044-GAM |
| v. | |
| THE CORPORATION OF HAVERFORD COLLEGE | |
| Defendant. | |

**DEFENDANT THE CORPORATION OF HAVERFORD COLLEGE'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT**

Defendant the Corporation of Haverford College submits this Memorandum of Law in support of its Motion to Dismiss the claims asserted against it in the First Amended Complaint filed by Plaintiffs Ally Landau, HJSB, HJSC, and "Jews at Haverford" pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

# TABLE OF CONTENTS

**Page(s)**

**INTRODUCTION**.................................................................................................. 1

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**............................................. 4

   I.   Alleged facts. ....................................................................................... 4

   II.  Allegations involving Landau. ................................................................ 5

   III. Additional facts alleged. ....................................................................... 10

   IV. Relevant College policies. ..................................................................... 14

   V.  Procedural history. ............................................................................... 14

**LEGAL STANDARDS** .......................................................................................... 15

**ARGUMENT** ....................................................................................................... 16

   I.   "Jews at Haverford" lacks standing. ......................................................... 16

       A.  "Jews at Haverford" fails to establish organizational standing because it has not alleged any injury to "Jews at Haverford" as an organization. ................................... 16

       B.  "Jews at Haverford" fails to establish associational standing because Plaintiffs have not alleged facts sufficient to establish that the association's purported members would have standing to sue in their own right and the relief requested requires the participation of its alleged individual members. ........................................................... 17

   II.  HJSB and HJSC's use of pseudonyms is improper because they freely and publicly identify other students with whom they disagree. ............................................. 22

   III. Plaintiffs' Title VI hostile environment claim fails because they do not allege that any plaintiff or purported member of "Jews at Haverford" were subject to discrimination or harassment actionable under Title VI, or that Haverford's response to any alleged harassment was deliberately indifferent............................................................ 23

       A.  Plaintiffs fail to allege facts that show discrimination or harassment on the basis of race, color, or national origin. ........................................................ 24

       B.  Plaintiffs fail to allege "severe, pervasive, and objectively offensive" harassment. .. 28

       C.  Plaintiffs fail to allege facts that show that Haverford was deliberately indifferent to any alleged harassment of which it had actual knowledge. ....................................... 32

i

IV. The FAC fails to state a claim for breach of contract because Plaintiffs fail to identify any contractual duty breached by Haverford. .......................................................................... 34

V. Plaintiffs' claims should be dismissed with prejudice. ..................................................... 39

**CONCLUSION** .................................................................................................................... **40**

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Anspach ex rel. Anspach v. City of Phila.*, 503 F.3d 256 (3d Cir. 2007)....................................5, 7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................15

*Ballentine v. United States*, 486 F.3d 806 (3d Cir. 2007) ........................................................16

*Bartol v. Barrowclough*, 251 F. Supp. 3d 855 (E.D. Pa. 2017) ...............................................39

*Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247 (3d Cir. 2014)..............................................23

*Burton v. Nationstar Mortg. LLC,* 255 F. Supp. 3d 616 (E.D. Pa. 2015) .......................................4

*C.M. v. Pemberton Twp. High Sch.*, CV No. 16-9456 (RMB/JS),
   2017 WL 384274 (D.N.J. Jan. 27, 2017) ...............................................................................31

*Clark v. Burger King Corp.*, 255 F. Supp. 2d 334 (D.N.J. 2003)...............................................19

*Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347 (3d Cir. 2014).........................................18

*Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250 (3d Cir. 2010) .......................................14

*David v. Neumann Univ.*, 187 F. Supp. 3d 554 (E.D. Pa. 2016) ...............................................35

*Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999).........................................24, 30, 31, 32

*Davis v. Wells Fargo*, 824 F.3d 333 (3rd Cir. 2016) ...............................................................16

*Dawn L. v. Greater Johnstown Sch. Dist.*, 586 F. Supp. 2d 332 (W.D. Pa. 2008) .......................33

*Doe v. Abington Friends Sch.*, No. CV 22-0014, 2022 WL 16722322
   (E.D. Pa. Nov. 4, 2022).................................................................................................25

*Doe v. Galster*, 768 F.3d 611 (7th Cir. 2014) ...................................................................28, 31

*Doe v. Haverford Coll.*, No. CV 23-299, 2023 WL 5017964
   (E.D. Pa. Aug. 7, 2023)...................................................................................................34

*Doe v. Megless*, 654 F.3d 404 (3d Cir. 2011) ......................................................................22

*Doe v. Trustees of Indiana Univ.*, 101 F.4th 485 (7th Cir. 2024)..............................................23

*Doe v. The Trustees of the Univ. of Pennsylvania*, 270 F. Supp. 3d 799 (E.D. Pa. 2017).............35

*Donovan ex rel. Donovan v. Punxsutawney Area Sch. Bd.*, 336 F.3d 211 (3d Cir. 2003) ............21

*Fair Hous. Council of Suburban Phila. v. Montgomery Newspapers*,
141 F.3d 71 (3d Cir. 1998)...............................................................................17

*Forum for Acad. & Institutional Rights, Inc. v. Rumsfeld*,
291 F. Supp. 2d 269 (D.N.J. 2003) ..................................................................18

*Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998) .........................23, 24, 34

*Geesey v. Stryker Corp.*, No. 09-2988, 2010 WL 3069630 (E.D. Pa. Aug. 4, 2010) ..................15

*Hassen v. Gov't of Virgin Islands*, 861 F.3d 108 (3d Cir. 2017) ...................................15

*Kimberg v. Univ. of Scranton*, No. 06-cv-1209, 2007 WL 405971 (M.D. Pa. Feb. 2, 2007)........35

*Kost v. Kozakiewicz*, 1 F.3d 176 (3d Cir. 1993) ...............................................15

*L.L. v. Evesham Twp. Bd. of Educ.*, 710 F. App'x 545 (3d Cir. 2017) ............................23

*Lansberry v. Altoona Area Sch. Dist.*, 318 F. Supp. 3d 739 (W.D. Pa. 2018)....................31

*Lubavitch-Chabad of Illinois, Inc. v. Nw. Univ.*, 6 F. Supp. 3d 806 (N.D. Ill. 2013)...........25

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .........................................16, 18

*Murrell v. Sch. Dist. No. 1, Denver*, 186 F.3d 1238 (10th Cir. 1999) ..........................29

*Page v. City of Pittsburgh*, 114 F. App'x 52 (3d Cir. 2004).....................................30

*Pennsylvania Psychiatric Soc'y v. Green Spring Health Servs., Inc.*,
280 F.3d 278 (3d Cir. 2002)........................................................16, 17, 21

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192 (3d Cir. 1993) ..............15

*Pub. Interest Research Grp. of New Jersey, Inc. v. Magnesium Elektron, Inc.*,
123 F.3d 111 (3d Cir. 1997).............................................................21

*Rullo v. Univ. of Pittsburgh*, No. 17-cv-1380, 2020 WL 1472422
(W.D. Pa. Mar. 26, 2020)...........................................................24, 32

*Schmidt v. Skolas*, 770 F.3d 241 (3d Cir. 2014) ..............................................15

*Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577 (5th Cir. 2020)..................................29

*StandWithUs Ctr. for Legal Just. v. Massachusetts Inst. of Tech.*,
No. CV 24-10577-RGS, 2024 WL 3596916 (D. Mass. July 30, 2024)..................32, 34

*T.E. v. Pine Bush Cent. Sch. Dist.*, 58 F. Supp. 3d 332 (S.D.N.Y. 2014)......................25

*Tannous v. Cabrini Univ.*, No. CV 23-1115, 2023 WL 6465842
(E.D. Pa. Oct. 4, 2023) ...................................................................................26, 27

*Vance v. Spencer Cnty. Pub. Sch. Dist.*, 231 F.3d 253 (6th Cir. 2000) .........................................29

*Weiss v. City Univ. of New York*, No. 17-CV-3557 (VSB), 2019 WL 1244508
(S.D.N.Y. Mar. 18, 2019) ................................................................................25

*Whitfield v. Notre Dame Middle Sch.*, 412 F. App'x 517 (3d Cir. 2011) ...............................23, 31

*Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655 (2d Cir. 2012) ................................................29

*Zinman v. Nova Se. Univ., Inc.*, No. 21-CV-60723, 2021 WL 4025722
(S.D. Fla. Aug. 30, 2021) ...............................................................................25

*Zinman v. Nova Se. Univ.*, No. 21-CIV-60723-RAR, 2021 WL 1945831
(S.D. Fla. May 14, 2021) ................................................................................26

### STATE CASES

*Murphy v. Duquesne Univ. Of The Holy Ghost*, 777 A.2d 418 (Pa. 2001) ...................................35

## <u>INTRODUCTION</u>

Plaintiff "Jews at Haverford," an alleged unincorporated association, argues in this lawsuit that five of its members, Ally Landau ("Landau") and four of her classmates identified only as "HJSB," "HJSC," "HJSD," and "HJSE," (the "anonymous members"), experienced antisemitism during their time as students at Defendant the Corporation of Haverford College ("Haverford" or "the College"). The First Amended Complaint ("FAC") adds Landau, HJSB, and HJSC as co-plaintiffs but fails to add any meaningful detail concerning these individuals or their purported claims against the College.

Instead, the FAC adds dozens of paragraphs about various third party views about the war in Gaza, Plaintiffs' views about when advocating for a ceasefire constitutes actionable antisemitism, and other issues. (*See, e.g.*, FAC ¶¶ 56-103, 175-91, 362-403). And make no mistake, the College strongly agrees with Plaintiffs about at least one thing: Haverford does, and will continue, to respond to and investigate reports of harassment of members of its valued Jewish community on the basis of their faith, national origin, and their shared ancestry. *Accord* FAC ¶ 425. Plaintiffs need no judicial intervention for that relief.

But Plaintiffs' claims sweep dramatically more broadly than that. Premised on a small handful of mostly vague allegations about mostly anonymous and former Haverford students, Plaintiffs ask this to Court to hold that criticism of Israel equates to antisemitism. (FAC ¶¶ 57-58). Plaintiffs ask the Court for an injunction ordering the College to punish those whose views they disagree with when Plaintiffs are confronted with those viewpoints. (FAC ¶ 425). And Plaintiffs ask this Court not just to compel the College to speak about issues of political significance, but to compel its viewpoint as well. (*Id.*). In other words, Plaintiffs' amendments to their complaint make plain Plaintiffs' desire to litigate the merits of the war in Gaza in this Court, for the Court to say who is wrong and who is right.  That is an invitation this Court should decline.

The College is staunchly and historically committed to fostering a community where its members fervently engage in critical inquiry and inclusive, intellectual learning, both in and out of the classroom. To that end, free expression and confrontation between community members is a deeply-embedded feature of Haverford's culture and educational environment. Historically, the Haverford College Honor Code has been an integral aspect of a Haverford education, and today defines how students at the College are to engage with each other in terms of peaceful confrontation.[1] This commitment to confrontation is designed to foster an atmosphere of trust, concern, and respect, where student community members take ownership of implementing the Honor Code. Allowing for such a high level of agency among a student body representing endlessly diverse backgrounds and personal beliefs admittedly does not yield a neat and tidy process, and there is little doubt that Plaintiffs are highly critical of that atmosphere. The College recognizes that its commitment to free expression, student agency, and confrontation between community members often comes with struggle and strife, but believes strongly that the resulting community is worth such discomfort. There is a difference between conduct that offends and conduct that we litigate, a difference intended by Congress and repeatedly affirmed by the Courts. To be sure, those concepts overlap materially, but they are not the same.

As an initial matter, in spite of the case caption and the plaintiff-association's self-styled name, "Jews at Haverford" is very much *not* all Jews at Haverford. This is not a class action; Plaintiffs do not have standing to sue on anyone's behalf except themselves and their alleged members. "Jews at Haverford" asserts its claims in a representative capacity on behalf of five alleged members who are Jewish **and hold specific, pro-Israel views**. Thus, sweeping

---

[1] *See* https://honorcouncil.haverford.edu/the-code/what-is-the-code/. Plaintiffs fail to acknowledge that the College has a range of established procedures, beyond the Honor Code, for responding to community members' concerns. *See, e.g.*, https://www.haverford.edu/student-life/community-guidelines/procedures.

generalizations about Jewish-identifying Haverfordians at large, or allegations involving unnamed Haverford students or employees without alleging that such individuals are members of the plaintiff-association cannot support Plaintiffs' claims.

When those sweeping generalizations are set aside, what remains is a handful of allegations centering around two theories: (1) the College allegedly breached a purported legal duty to voice unequivocal, full-throated support for the actions of a foreign government and (2) Landau and the anonymous members were exposed to their classmates' anti-Israel, pro-Palestinian viewpoints which they considered to be antisemitic. But Plaintiffs cannot point to any right to have their political views adopted by Haverford's administration or to have the College censor the political expression by fellow community members, even if such views may be experienced as hurtful. Because the FAC has accordingly failed to establish legal harm, Plaintiffs fail to establish standing, which is fatal to their claims under Rule 12(b)(1). And because many of the Plaintiffs and/or Plaintiffs' members have graduated – and in particular Landau – there is no basis for standing for injunctive relief.

The FAC also fails to state a claim upon which relief can be granted. Plaintiffs fail to allege conduct that is actionable under Title VI for at least three reasons. *First*, the conduct Plaintiffs complain about is not based on race, color, or national origin, but instead on Plaintiffs' personal political views about Israel. *Second*, the conduct alleged, even if true, does not meet the bar of severe, pervasive, and objectively offensive harassment. And *third*, Plaintiffs' allegations make clear that the College's top administrators actively and repeatedly engaged with students on these issues, responded to concerns, and specifically supported Landau's (and other Jewish students') ability to express her views widely around campus and online, so it is impossible to conclude that

the College was "deliberately indifferent" to any alleged harassment, as required to state a claim under Title VI.

Finally, the FAC fails to identify any instance in which the College breached any alleged contract with Plaintiffs or the plaintiff-association's members. As such, even if this Court finds that Plaintiffs have established standing, Counts I and II should be dismissed, with prejudice, for failure to state a claim.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Notwithstanding Rule 8's "short and plain" statement instruction, Plaintiffs' allegations span over 400 paragraphs and 129 pages, not including an additional 150 pages of exhibits.  For purposes this motion, the College recites Plaintiffs' allegations in relevant part only.

### I.   Alleged facts.

"Jews at Haverford" alleges that it is "an unincorporated association" composed of Haverford students, faculty, alumni, and parents of students and alumni "who are Jewish and share a commitment to the existence of Israel as a Jewish state." (FAC ¶ 45). Plaintiffs account for only five associational members: Landau, a Haverford graduate, and four anonymous members: "HJSB," "HJSC," "HJSD," and "HJSE." (*Id.* ¶¶ 46-50).[2] Allegations specific to the anonymous members appear only in paragraphs 47-50 and 224 of the FAC. These paragraphs describe the anonymous members as current or former Haverford students and allege the following as the basis

---

[2] Plaintiffs have refused to disclose the identities of the anonymous members to the College, even confidentially. (*See* Declaration of Joshua W. B. Richards ("Richards Decl.") Exhibit 1). (The Court may consider material beyond the allegations in the Complaint without converting the motion to dismiss into one for summary judgment where it is "a document integral to or explicitly relied upon in the complaint." *Burton v. Nationstar Mortg. LLC,* 255 F. Supp. 3d 616, 619 (E.D. Pa. 2015) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997)) (internal quotation marks omitted)). But Plaintiffs do not show the same concern for protecting the identities of other Haverford students, particularly those with pro-Palestinian views or who identify as Palestinian-American, whom Plaintiffs explicitly and repeatedly name in their publicly-filed papers. (*See, e.g.*, FAC ¶¶ 164, 205, 284, 321).

for their involvement in this matter: they have been "affected" by demonstrations and posters on campus that they deem to be antisemitic; they have voluntarily avoided spaces on campus where anti-Israel protests may take place; they have "felt intimidated" when publicly asserting pro-Israel views; they have "been devastated" by classmates' adoption of anti-Israel views; they have "felt continually bombarded and harassed" by classmates' support for a ceasefire in the Middle East; and they have considered various College administrators to be insufficiently supportive of Israel. (*Id.*) Nowhere does the FAC suggest that any of the anonymous members made a report to any Haverford administrator that they were subjected to antisemitic harassment on campus.

## II.    Allegations involving Landau.

Plaintiffs allege more specific facts with regard to Landau. Plaintiffs allege that in the aftermath of Hamas-led attacks on Israel on October 7, 2023, the College issued a public statement on October 9, 2023 addressing the "outbreak of war in Israel and Gaza." (FAC ¶¶ 118, 167). Plaintiffs allege that John McKnight, Dean of the College, later issued a separate message to an unidentified "Jewish leader" to be shared with other students on campus. (*Id.* ¶ 119). The FAC strategically omits that on October 12, 2023 Haverford President Wendy Raymond published a letter to the College community referencing the conflict as "a time of horrific loss," and the College's efforts to mourn "the hundreds of Israeli citizens who were murdered or kidnapped by Hamas beginning on Saturday," at a "peace circle" on campus earlier that week and recognizing that "Haverford's Jewish and Palestinian students, faculty, staff, and alums" were "suffering deeply."[3] President Raymond presciently noted that these efforts were only the beginning,

---

[3] *See* "War in Israel and Gaza," Wendy Raymond, October 12, 2023, https://www.haverford.edu/president/news/war-israel-and-gaza. The Court may take judicial notice of material outside of the pleadings when that material is, among other things, a matter of public record not subject to reasonable dispute by the parties. *See Anspach ex rel. Anspach v. City of Phila.*, 503 F.3d 256, 273 n. 11 (3d Cir. 2007).

referenced "the coming months of international strife" and "challenging campus tensions," and reminded students of resources available to them, including academic and emotional support systems at the College. (*See supra* n.3).

Nevertheless, the FAC alleges that Landau was unsatisfied and asked President Raymond to issue another communication to the student body "condemning antisemitism and the Hamas terror attacks." (FAC ¶ 195). When President Raymond declined to issue an additional communication at Landau's direction, Landau requested a platform to share her personal views on the Israel-Palestine conflict; President Raymond agreed. (*Id.* ¶ 197). The College granted Landau a platform and venue to deliver a presentation on the conflict to the entire community on November 1, 2023. (*Id.* ¶ 199). Plaintiffs allege that students with pro-Palestinian views protested the event and hung posters reading "From the River to the Sea Palestine Will Be Free" outside the room where the presentation took place. (*Id.* ¶¶ 199-200). Plaintiffs allege that unidentified Jewish students chose not to attend Landau's presentation, and posits the lack of attendance was a result of the pro-Palestinian protest activity. (*Id.*) Plaintiffs allege that no one from Haverford's administration attended Landau's presentation, but in the same paragraph concede that a "friendly staff member" attended the event and, at some point, communicated to Landau's parents that they had been "concerned for [Landau's] safety." (*Id.* ¶ 201). The FAC does not allege that Landau felt or reported the same concern.

The FAC includes a series of conclusory and factually unsupported allegations about Plenary, a long-held tradition at Haverford by which the student body gathers to discuss timely issues and vote to ratify the College's Honor Code. (*Id.* ¶¶ 221-22). Plaintiffs take issue with the fact that during the College's Fall Plenary on November 5, 2023, students speaking at the Plenary,

on balance, allegedly presented pro-Palestinian viewpoints.[4] (*Id.* ¶¶ 225-29). Plaintiffs aver that students holding contrary views were not given the opportunity to speak at the Fall Plenary, but in the same breath concede that these individuals were not "barred from speaking" due to their Jewish identity or even their individually held views on the Israel-Palestine conflict, but instead because, unlike the students espousing pro-Palestinian viewpoints, they had failed to prepare such a presentation or sign up in advance to speak at Plenary. (*Id.* ¶¶ 228, 231).

Plaintiffs do not allege that Landau attended the Fall 2023 Plenary, that she specifically sought to speak at the Plenary, or was barred from doing so. Nevertheless, Plaintiffs allege that shortly after the Fall Plenary, Dean McKnight granted Landau yet another platform to present her personal beliefs and concerns regarding the Israel-Palestine conflict, this time through the all-College email system. (*Id.* ¶¶ 238-39). Plaintiffs allege that Dean McKnight not only gave Landau express permission to use the all-College email system, but assisted her in actually sending her message. (*Id.* ¶ 239). The message allegedly offered a response to the views presented at Plenary and "defended Israel's right to exist and to its self-determination and self-defense." (*Id.* ¶ 240).

On November 25, 2023, a Palestinian-American Haverford student was shot while walking in Burlington, Vermont with two other Middle Eastern men. (*Id.* ¶ 205). Plaintiffs allege that President Raymond, in a statement to the College community, denounced the shooting as a "hate

---

[4] Among the alleged "anti-Israel, pro-Palestinian" statements allegedly shared at Fall Plenary were concerns that the "Israel government" was committing genocide against Gazans and that Israel had imposed an apartheid and occupation upon Palestinians. (FAC ¶ 229). Plaintiffs recognize that students espousing such views at Plenary were careful to explain that their views were focused on disapproval of the actions of the Israel government, not Jewish people or Israelis generally, stating "Anti-Zionism is the opposition of an oppressive government that has occupied Palestine for the past 75 years . . . . Being antizionist does not mean that you are anti semitic . . . . people start to think that the linking of Jewish people to a Jewish state means that all Jewish people support Israel. . . . That is not the message we are trying to send as SJP. . . . Opposing an oppressive government is not anti semitic." (*Id.*) Another student allegedly stated "When I denounce the Israeli government, I speak only about the people in positions of power…. I will always denounce antisemitism and fascism where I see it." (*Id.*)

crime," though the text of Raymond's letter is more measured than Plaintiffs aver: "This was a hateful act of violence, regardless of whether the Vermont authorities ultimately file statutory hate crime charges against the suspect, now arrested." (*Id.* ¶ 208 (citing https://www.haverford.edu/college-communications/news/caring-one-another-following-weekend-violence)). It is difficult to understand how one can disagree with Raymond's statement that shooting strangers on the street constitutes "a hateful act of violence," regardless of the shooter's motivations.

Plaintiffs further allege that Nikki Young, Haverford's Vice President for Institutional Equity and Access, attended a student vigil for the injured Palestinian-American student on November 27, 2023 where she "expressed sympathy for Palestinians" and characterized the conflict in Israel and Palestine as "genocide committed" by Israel. (*Id.* ¶ 209). Plaintiffs allege that Young's comments prompted "Jewish students and leaders" to file bias reports against Young "but no action was taken." (*Id.* ¶ 210). Plaintiffs do not allege that Landau, the anonymous members, or any other purported members of "Jews at Haverford" heard Young's comments, filed a bias report concerning same, or were even present at the vigil. Plaintiffs also attempt to compare the College's alleged response to the shooting of one of its students (*i.e.*, President Raymond's letter of support and an administrator's presence at a vigil) with the perceived lack of support for and attendance at Landau's November 1st presentation. (*Id.* ¶¶ 209; 215-16; 218). In other words, Plaintiffs suggest that the College has failed in its duty because administrators reacted to the shooting of a student differently than they responded to world events and related debates on campus.

Plaintiffs allege that on or about November 27, 2023, certain Haverford students published a document titled the "Haverford Grievances Document" which included "two direct attacks" on

Landau. (*Id.* ¶¶ 242-43). The Grievances Document, most of which focused on Haverford's response to the conflict in Israel and Gaza, twice referenced Landau's letter sent through the all-College email system, stating a view that the letter "target[ed] members of the student body with false accusations" and that Landaus' use of the term "hijacking" constituted "hostile, charged language." (FAC Ex. B). Plaintiffs fail to explain how these references constitute "direct attacks" on Landau let alone denounce Landau "as an accessory to attempted murder." (FAC ¶ 249). President Raymond agreed to have Landau's name removed from the circulating document, and did so. (*Id.* ¶¶ 247, 249). President Raymond then allegedly met personally with Landau and offered resources, including counseling. (*Id.* ¶ 251).

Plaintiffs allege that in November 2023, Landau obtained permission from Vice President Young to dedicate a Haverford women's basketball game to antisemitism awareness, and that the College had dedicated prior athletic events to causes including diabetes awareness. (*Id.* ¶¶ 267-68). Landau then allegedly worked with Assistant Director of Athletics Jason Rash to identify February 6, 2024 as an available date for the event. (*Id.* ¶ 269). Plaintiffs allege, however, that prior to the intended event, Landau attended a meeting with Dean McKnight and Athletic Director Danielle Lynch where Dean McKnight and Director Lynch raised concerns that the intended event "might prove too antagonistic," and that, if protestors interrupted the game, Haverford could be forced to forfeit the game per NCAA rules. (*Id.* ¶¶ 270-71). Plaintiffs allege that Landau "understood" the administrators to be telling her that, if the team were forced to forfeit the game under such circumstances "the team's loss would be entirely her fault and it would be selfish of her to cost her teammates a win." (*Id.* ¶ 272). Plaintiffs do not allege that Dean McKnight or Director Lynch ever used those words or told Landau anything of the sort. The event did not go forward, though it is unclear by Plaintiffs' allegations who ultimately cancelled the event. The

FAC does not allege that the College cancelled the event, forced Landau to cancel the event, or directed her to do so. Plaintiffs allege that at the February 6, 2024 basketball game, Landau's father accused Dean McKnight of pressuring Landau herself to cancel the event and that Dean McKnight responded by suggesting that Landau may have also faced pressure from her father and "the Chabad Rabbi." (*Id.* ¶¶ 274-75).

Plaintiffs allege that, presumably in the Spring of 2024, when a Haverford administrator referenced May as Asian American/Pacific Islander Month, Landau informed the administrator that May is also Jewish American Heritage Month, but that the administrator failed to make a similar announcement regarding same. (*Id.* ¶ 333).

Finally, the FAC alleges that during the College's commencement ceremony on May 18, 2024, various students and College employees engaged in pro-Palestinian expressive activity, including holding Palestinian flags, displaying signs, and chanting. (*Id* ¶¶ 6, 340-44). Plaintiffs contradict their allegation that the College made "no effort" to temper such disruptions in the same paragraph by alleging that the College removed "troublemakers" who disrupted the ceremony. (*Id.* ¶ 341). The FAC does not allege that Landau or any other attendees were prevented from responding to such expressive activity or representing their own viewpoints. The FAC also alleges that during the commencement ceremony, a student who had espoused anti-Israel views received an award for performing arts and that a professor who had been publicly critical of Israel received a faculty award. (*Id* ¶¶ 352-57). Both award recipients were as chosen by Haverford students, not the College. (*Id.* ¶¶ 355, 360).

## III.   Additional facts alleged.

Plaintiffs' FAC is replete with allegations referencing events occurring on and off Haverford's campus with no mention of involvement by Landau, the anonymous members, or any

other alleged member of "Jews at Haverford." Plaintiffs fail to explain how any of these events relate to purported injuries suffered by the plaintiff-association's alleged members.

Plaintiffs allege that on December 5, 2023, pro-Palestinian students "took over" Founders Hall, "the main administrative office" at the center of campus, where they hung banners and "conducted antisemitic chants." (*Id.* ¶ 258-59). Plaintiffs allege that the College failed to enforce its rules with regard to the protest but that assertion is belied by Plaintiffs' concession that Dean McKnight "put an end to" the protest based on concerns that it created a "hostile work environment" for College staff who worked in the building. (*Id.* ¶¶ 264-65). Plaintiffs posit that the College's decisive action in response to the concerns for Haverford staff compared to its response to Landau's concerns demonstrates an indifference to hostility directed at Jewish students and preposterously asserts that this comparison supports the conclusion that, in the College's eyes "the Jews' suffering was of no consequence." (*Id.* 266). Not so. Plaintiffs' own pleading includes a December 13, 2023 message from President Raymond to the Haverford community clearly stating that the College ended the protest to protect "the abilities of fellow students to pursue their studies and the abilities of staff and faculty to conduct their work." (*Id.* Ex. F at 36).

Plaintiffs allege that between February 29 and March 3, 2024, an "emergency Plenary" was held devoted entirely to efforts to adopt a resolution demanding a ceasefire in the Israel-Palestine conflict and vaguely assert that "rules governing Plenaries" were violated (*Id.* ¶¶ 278-80, 288). Plaintiffs fail to attach the "rules governing Plenaries" and instead rely on selective excerpts from the College's Students' Association Constitution (*id.* ¶¶ 281-82) and the opinion of an individual who graduated from the College more than three decades ago and presumably has not participated in a Haverford Plenary since. (*Id.* ¶ 287, Ex. D). Plaintiffs concede that the ceasefire resolution did not pass due to "the refusal of Jewish students to participate." (*Id.* ¶ 288). Plaintiffs do not allege

how any of its purported members were impacted by or if they even participated in the emergency Plenary.

Plaintiffs allege in conclusory fashion that the regularly-scheduled Spring Plenary involved "significant bullying and harassment to obtain signatures" for a renewed ceasefire resolution (*id.* ¶ 291), but fails to support that assertion with any factual allegations about how students were bullied or harassed, let alone students alleged to be members of the plaintiff-association.

The FAC includes allegations regarding several other events without mention of a single plaintiff or alleged member of "Jews at Haverford," included here for completeness:

- Between March 25-28, 2024, Haverford students allegedly presented a series of lectures which Plaintiffs describe as antisemitic. (*Id.* ¶¶ 297-301).

- At several March 2024 events, President Raymond and the chair of Haverford's Board allegedly responded to questions related to antisemitism in a way that Plaintiffs consider to be wanting and offensive. (*Id.* ¶¶ 294-96; 310-12).

- Pro-Palestinian protestors allegedly attempted to install an "encampment" on Haverford's campus featuring posters that Plaintiffs deem to be antisemitic. (*Id.* ¶¶ 326-32). Despite alleging that Haverford "did absolutely nothing" to limit the encampment, Plaintiffs concede that the encampment was disbanded after three days and is no longer present on Haverford's campus.[5] (*Id.*)

- Haverford students allegedly demanded a boycott of a Jewish and Israeli-owned restaurant contracted to supply breakfast for Haverford's commencement by publicizing an image with the words "Say No to Blood Donuts." (*Id.* ¶ 38). Plaintiffs' plainly false allegation

---

[5] It bears mention that Plaintiffs appear to conflate the alleged "encampment" at Haverford with protests at different institutions by quoting a New York Times article describing the protests on Columbia University's campus. (FAC ¶ 327). Such descriptions of occurrences at an entirely different institution are irrelevant here.

that Haverford capitulated to the boycott demands is belied by their immediately following concession that the College procured the donuts and served them to Haverford employees on the morning of commencement. (*Id.* ¶ 39).

- Several members of the Haverford faculty have made personal, pro-Palestinian and anti-Israel statements and the College has failed to punish or censor those individuals. (*Id.* ¶¶ 169-70, 175-76, 182-84, 303-04, 306).

- Haverford "initiated an investigation" and ultimately "sanctioned" Professor Barak Mendelsohn in response to student complaints regarding social media posts by Mendelsohn which included his "views that were supportive of Israel, and of Zionism as a Jewish movement and against those who reflexively reject those views," and his interactions with Haverford students concerning same. (*Id.* ¶¶ 140, 180). Professor Mendelsohn is not a plaintiff nor alleged to be a member of "Jews at Haverford."

- Students and student organizations have continued to engage in pro-Palestinian advocacy on campus into the 2024-2025 academic year. (*Id.* ¶¶ 202-03).[6]

- An unnamed Jewish, "pro-Israel" individual who had accepted an offer of admission to Haverford ultimately decided to matriculate elsewhere due to perceived hostility to his pro-Israel views. (*Id.* ¶ 363). The FAC concedes, however, that this individual was reportedly personally called by a College "dean" who attempted to address his concerns and collect evidence of any potential wrongdoing. (*Id.* ¶ 365).

---

[6] In conclusory fashion, Plaintiffs assert that the stated commitment to "the liberation of Palestine through the complete dismantling of the apartheid settler colonial state of Israel, by all means necessary" by the student group, Students for the Liberation of Palestine, equates to a call for "the murder of all Jewish Israelis." (FAC ¶¶ 202-04). Such inflammatory hypotheses about the presumed hidden meaning of students' pro-Palestinian advocacy are not entitled to the presumption of truth on consideration of a motion to dismiss.

- The College facilitated a platform for Jewish students "committed to Zionism and the existence of Israel as a Jewish state," to share their concerns with student leaders responsible for Customs (Haverford's orientation) programming  and be included in developing content for Customs programming aimed at "combating harmful rhetoric" including antisemitism. (*Id.* ¶¶ 375-76; Ex. F at 2, 16, 17). None of these individuals are plaintiffs or alleged members of "Jews at Haverford."

## IV.    Relevant College policies.

Plaintiffs selectively reference several of the College's policies but decline to attach those policies in full, instead relying on conclusory allegations and Plaintiffs' own subjective understanding of those policies, which are not entitled to the presumption of truth on consideration of a motion to dismiss. The Court may consider documents attached to a Rule 12(b)(6) motion to dismiss as part of the pleadings if they are referenced in Plaintiffs' FAC and are central to their claims. *Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 253 n.3 (3d Cir. 2010) (citing *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002)). As such, the College attaches the following policies, which are discussed more specifically with regard to Plaintiffs' claims below: Expressive Freedom and Responsibility Policy (Richards Decl. Ex. 2); The Haverford College Honor Code (Richards Decl. Ex. 3); Social Media Best Practices and Policy (Richards Decl. Ex. 4); Bulletin Boards, Posting Notices, Banners, and Installation Policy (Richards Decl. Ex. 5); and The Students' Association Constitution (containing rules related to Plenary) (Richards Decl. Ex. 6).

## V.    Procedural history.

Plaintiff "Jews at Haverford" filed its initial Complaint (ECF 1) with this Court on May 13, 2024 asserting claims for hostile environment in violation of Title VI (Count I) and breach of contract (Count II). The College moved to dismiss the initial Complaint on July 15, 2024. (ECF

7). On September 9, 2024, "Jews at Haverford" filed its FAC adding Landau, HJSB, and HJSC as co-plaintiffs. (ECF 14).

## LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint that on its face is insufficient to state a claim upon which relief can be granted. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). To survive a motion to dismiss under Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim 'has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Hassen v. Gov't of Virgin Islands*, 861 F.3d 108, 115 (3d Cir. 2017) (quoting *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014)). In evaluating plausibility, the Court "disregard[s] rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements." *Id*. (citation omitted). Not all allegations are entitled to a presumption of truth; only "well-pleaded" ones. *Id*. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice.". *Geesey v. Stryker Corp*., No. 09-2988, 2010 WL 3069630, at *2 (E.D. Pa. Aug. 4, 2010) (quoting *Iqbal*, 556 U.S. at 678 (2009)).

In ruling on a Rule 12(b)(6) motion, courts may consider the complaint, exhibits attached to the complaint, matters of public record, and "an[y] undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

Under Rule 12(b)(1), a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim. Fed. R. Civ. P. 12(b)(1). In evaluating whether a complaint adequately

pleads the elements of standing, courts apply the standard of reviewing a complaint pursuant to a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

## ARGUMENT

### I.   "Jews at Haverford" lacks standing.

Plaintiffs identify a single alleged "Jews at Haverford" member: co-plaintiff and Haverford alumna Ally Laundau. (FAC ¶ 46). Plaintiffs vaguely allege the existence of four additional members, referred to only by pseudonym. (*Id.* ¶¶ 47-50). HJSB and HJSC now purport to be plaintiffs in this action and HJSD no longer attends the College. (*Id.* ¶¶ 47-48).

The party invoking federal jurisdiction bears the burden of establishing elements of standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3rd Cir. 2016) ("[T]he plaintiff must prove the court has subject matter jurisdiction."). As an alleged "unincorporated association," "Jews at Haverford" can establish standing: (1) by asserting claims that arise from alleged injuries to the organization itself (organizational standing); or (2) by asserting claims on behalf of its members (associational standing). *See Pennsylvania Psychiatric Soc'y v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 283 (3d Cir. 2002). The FAC fails to allege facts satisfying either standard and "Jews at Haverford" should be dismissed from this action.

### A.   "Jews at Haverford" fails to establish organizational standing because it has not alleged any injury to "Jews at Haverford" as an organization.

The FAC focuses on alleged harm suffered by purported members of "Jews at Haverford" and other unidentified individuals and does not assert any injury to the organization itself. (*See, e.g.*, FAC ¶ 415 (asserting the existence of a hostile environment towards "Jews, including the Jewish students who are members of the Plaintiff association"); ¶ 419 (basing breach of contract

claim on alleged contract between "the College and each of its enrolled students," as opposed to "Jews at Haverford" itself)). To establish organizational standing, the plaintiff organization must allege a "concrete and demonstrable injury to [its] activities," or that "it has devoted additional resources to some area of its effort in order to counteract discrimination." *Fair Hous. Council of Suburban Phila. v. Montgomery Newspapers*, 141 F.3d 71, 78-79 (3d Cir. 1998) (quoting *Spann v. Colonial Village, Inc.*, 899 F.2d 24, 27 (D.C. Cir. 1990)). The FAC contains no allegations concerning the plaintiff-association's activities, let alone allegations rising to the level of a concrete and demonstrable injury to "Jews at Haverford" as an association. As such, Plaintiffs fail to establish that "Jews at Haverford" has organizational standing.

> **B.      "Jews at Haverford" fails to establish associational standing because Plaintiffs have not alleged facts sufficient to establish that the association's purported members would have standing to sue in their own right and the relief requested requires the participation of its alleged individual members.**

To establish associational standing for "Jews at Haverford," Plaintiffs must allege facts establishing that: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Pennsylvania Psychiatric Soc'y*, 280 F.3d at 283 (quoting *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)). Plaintiffs fail on the first and third elements.

> *1.      The FAC fails to allege facts establishing that the anonymous members would have standing to sue in their own right.*

To satisfy the first element of associational standing, the FAC must allege facts establishing that specific alleged members of "Jews at Haverford" individually satisfy three elements: injury-in-fact, causation, and redressability:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal

17

connection between the injury and the conduct complained of—the injury has to be "fairly … trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 360 (3d Cir. 2014). (quoting *Lujan*, 504

U.S. at 560-61). In order for injury to be "particularized," it must affect the plaintiff in a personal

and individual way. *Lujan*, 504 U.S. at 560 n.1.

The FAC's allegations concerning the anonymous members lack any substantive factual

allegations necessary to establish standing. *Forum for Acad. & Institutional Rights, Inc. v.

Rumsfeld*, 291 F. Supp. 2d 269, 287-89 (D.N.J. 2003) ("A barebones allegation, bereft of any

vestige of a factual fleshing-out, is precisely the sort of speculative argumentation that cannot pass

muster where standing is contested.") (quoting *United States v. AVX Corp.*, 962 F.2d 108, 117 (1st

Cir. 1992)), *aff'd*, 446 F.3d 1317 (3d Cir. 2006). Indeed, throughout Plaintiffs' 430-paragraph

FAC, allegations referencing the anonymous members are cabined to only five paragraphs. (*See*

FAC ¶¶ 47-50; 224). Those allegations base the anonymous members' purported injuries and

related claims on their identities, each as a Jewish individual committed to the existence of Israel

as a Jewish State and their time on Haverford's campus. (*Id.*) The scant allegations concerning

each of the anonymous members are nearly identical and include that they have been upset that

their peers and classmates do not support Israel; have been "affected" by demonstrations and

posters on campus that they deem to be antisemitic; have voluntarily avoided spaces on campus

where anti-Israel protests may take place; have "felt intimidated" when publicly asserting pro-

Israel views; have "been devastated" by classmates' adoption of anti-Israel views; have "felt

continually bombarded and harassed" by classmates' support for a ceasefire in the Middle East;

and generally that they considered various College administrators to be insufficiently supportive

of Israel. (*Id.* ¶¶ 47-50). The FAC alleges that HJSD, no longer a Haverford student, chose not to

participate in Haverford's Plenaries during the 2023-2024 academic year. (*Id.* at ¶ 224). Nowhere does the FAC suggest than any of the anonymous members reported their concerns to the College.

It also bears emphasis that Plaintiffs have refused to disclose the identities of the anonymous members to the College, even confidentially,[7] frustrating the College's ability to evaluate their allegations and whether they have established standing to sue in their own right. While the Third Circuit has declined to adopt a blanket rule requiring that a plaintiff association explicitly name its members, the failure to identify members by name weighs against determining whether a plaintiff association has alleged facts which sufficiently and plausibly demonstrate that its members have suffered an injury-in-fact redressable by a favorable decision. *See Clark v. Burger King Corp.*, 255 F. Supp. 2d 334, 345 (D.N.J. 2003) (holding that organization dedicated to enforcement of Americans with Disabilities Act lacked standing to bring suit on behalf of its members for denial of handicapped access to restaurants given failure "to identify which members visited which restaurants on which dates and when such members plan to return").

While the FAC vaguely describes that the anonymous members have felt impacted by the Israel-Palestine conflict and their fellow College community members' views on the issue, sharing a college campus with individuals who voice political opinions with which one disagrees is not an "injury in fact" and the FAC fails to connect the anonymous members to any specific factual allegations supporting a claim under Title VI or for breach of contract. Such barebones allegations fail to plausibly assert any concrete or particularized invasion of a legally protected interest necessary to establish standing, let alone that any such injury was caused by the College. Further, aside from HJSD, whom Plaintiffs concede is no longer enrolled at Haverford, the College and this Court cannot determine whether each anonymous member's purported "injury" is likely to be

---

[7] *See* Richards Decl. Ex. 1.

redressed by a favorable decision if the College does not know who they are (by way of example, whether they are still an enrolled student, with respect to injunctive relief, and so on).

Because Plaintiffs fail to establish that these students would have standing to sue in their own right, and has actively hindered the College's ability to assess whether elements of the standing inquiry are met by concealing their identities, "Jews at Haverford" cannot establish standing through the anonymous members.

>   2.   *The FAC fails to allege facts establishing that Ally Landau would have standing to sue in her own right.*

Landau's purported injury falls along the same lines. The FAC alleges that the College failed "to publicly condemn Hamas" to her satisfaction; that she faced opposition from and was confronted by classmates regarding her pro-Israel views after the College repeatedly provided her a platform to widely share and advocate for those views; that she felt pressured by the College with regard to the planning of an antisemitism awareness event; that the College failed to promote May as "Jewish American Heritage Month" the same way that it promoted May as "Asian American/Pacific Islander Month," and that she witnessed pro-Palestinian expressive activity at her graduation. Such allegations fail to plausibly assert any concrete or particularized invasion of a legally protected interest necessary to establish standing, let alone that any such injury was caused by the College.  Thus, Plaintiffs fail on the "injury in fact" element with regard to Landau.

Landau also lacks standing to pursue the injunctive relief requested here, including requiring that the College "enforce all of its Policies," and "take action to end the hostile environment on campus," (FAC ¶¶ 424-25). Landau graduated in May 2024. (*Id.* ¶ 46). As such, she is no longer enrolled at Haverford and any alleged "injury" she suffered cannot be redressed by the injunctive relief sought, mooting such requests (at least as to Landau and any other member who is no longer a student). It is well settled that declaratory and injunctive relief require "a live

dispute between the parties," and that a student's claims for such relief are typically mooted by her graduation. *Donovan ex rel. Donovan v. Punxsutawney Area Sch. Bd.*, 336 F.3d 211, 216 (3d Cir. 2003) (citing *Powell v. McCormack,* 395 U.S. 486, 517–518 (1969) and *Bd. of Sch. Comm'rs of Indianapolis v. Jacobs*, 420 U.S. 128, 129 (1975) and collecting cases holding same); *see also Pub. Interest Research Grp. of New Jersey, Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 117 (3d Cir. 1997) ("Plaintiffs must have standing at all stages of the litigation.") (citing *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255 (1994).

In sum, the FAC fails to allege facts establishing that Landau or the anonymous students would have standing to sue in their own right. As such, the FAC fails to establish associational standing for "Jews at Haverford" or individual standing for any of the individually-named plaintiffs and the claims asserted against the College should be dismissed.

### 3.   *The relief requested requires the participation of the plaintiff-association's alleged individual members.*

Associational standing is inappropriate where, as here, the plaintiff-association seeks monetary relief. *Pennsylvania Psychiatric Soc'y*, 280 F.3d at 284 ("Because claims for monetary relief usually require individual participation, courts have held associations cannot generally raise these claims on behalf of their members.") "Specifically, the Supreme Court has counseled 'that an association's action for damages running solely to its members would be barred for want of the association's standing to sue.'" *Id.* (quoting *United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 545-46 (1996)).

Here, any claims by "Jews at Haverford" fail from the start since the FAC seeks monetary relief in the form of "[c]ompensatory, consequential, and punitive damages in amounts to be determined at trial" based on alleged injuries suffered by its members. (FAC ¶ 428). Such a request for money damages on the associational-plaintiff's behalf requires the individual participation of

its purported members and as such precludes associational standing, warranting the association's dismissal from this lawsuit. And, as discussed above, because Landau and the anonymous members lack standing, and at least Landau and HJSD lack standing to receive injunctive relief because their claims are moot and lack the capacity for redressability by such relief, "Jews at Haverford" lacks standing to receive injunctive relief on their behalf. "Jews at Haverford" has not alleged facts that establish it has standing to receive any of the relief requested in this lawsuit.

## II.   HJSB and HJSC's use of pseudonyms is improper because they freely and publicly identify other students with whom they disagree.

Federal Rule of Civil Procedure 10(a) "requires parties to a lawsuit to identify themselves in their respective pleadings. *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011). This rule illustrates the important requirement that judicial proceedings be open to the public because "people have a right to know who is using their courts," *id.* (quoting *Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869, 872 (7th Cir.1997)), and "defendants have a right to confront their accusers." *Id.* (citing *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir.1979)). Plaintiffs HJSB and HJSC have not requested relief from Rule 10, and even if they had, they cannot demonstrate "exceptional" circumstances required for such relief. *Id.*[8]

Most concerningly, Plaintiffs repeatedly identify by name numerous individuals with opposing views in pejorative and inflammatory terms. In the most egregious example of this double standard, Plaintiffs repeatedly invoke the name of a specific third-party student throughout the FAC *seven times*, disclose the student's social media account, and even include a photograph

---

[8] To justify proceeding under a pseudonym, a plaintiff must also show 'both (1) a fear of severe harm, and (2) that the fear of severe harm is reasonable.'" *Megless*, at 408 (quoting *Doe v. Kamehameha Sch.*, 596 F.3d 1036, 1043 (9th Cir.2010). The FAC only mentions HJSB and HJSC twice, martialing vague allegations about their discomfort with their classmates' pro-Palestinian views insufficient to make such a showing. (FAC ¶¶ 47-48). "[A] plaintiffs [sic] stubborn refusal to litigate openly by itself cannot outweigh the public's interest in open trials." *Megless*, 654 F.3d at 410-11.

of the student. (*See* FAC ¶¶ 163-64, 321, 353-54). Courts generally reject plaintiffs' anonymity concerns where they have failed to extend the same consideration to others, even defendants. As the Seventh Circuit has asked, "[w]hy should plaintiffs be free to inflict reputational harm while sheltering themselves from loss if it turns out that their charges are unfounded?" *Doe v. Trustees of Indiana Univ.*, 101 F.4th 485, 492 (7th Cir. 2024). In *Indiana University*, the court rejected the plaintiff's request for anonymity where he "did not hesitate to expose" others to the same harms prompting his request to proceed under a pseudonym. *Id.* Like in *Indiana University*, Plaintiffs should be compelled to litigate on the terms they have chosen or be stricken as parties.

III.    **Plaintiffs' Title VI hostile environment claim fails because they do not allege that any plaintiff or purported member of "Jews at Haverford" were subject to discrimination or harassment actionable under Title VI, or that Haverford's response to any alleged harassment was deliberately indifferent.**

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. The Third Circuit has generally followed the Supreme Court's precedent under Title IX when interpreting Title VI because both statutes were enacted using Congress's authority under the Spending Clause. *See L.L. v. Evesham Twp. Bd. of Educ.*, 710 F. App'x 545, 549 n.5 (3d Cir. 2017); *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 317 (3d Cir. 2014); *Whitfield v. Notre Dame Middle Sch.*, 412 F. App'x 517, 521 n.2 (3d Cir. 2011); *see also Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998) (explaining that Title VI and Title IX "operate in the same manner, conditioning an offer of federal funding on a promise by the recipient not to discriminate, in what amounts essentially to a contract between the Government and the recipient of funds").

To state a Title VI hostile educational environment claim, a plaintiff must allege facts that show a recipient of federal funds was "deliberately indifferent" to harassment "of which they have

actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victim[] of access to the educational opportunities or benefits provided by the school." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999); *see also Rullo v. Univ. of Pittsburgh*, No. 17-cv-1380, 2020 WL 1472422, at *7 (W.D. Pa. Mar. 26, 2020) (analyzing parallel claim under Title IX and citing *Davis*).

"Actual knowledge" requires that "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [institution's] behalf has actual knowledge of discrimination . . . ." *Gebser*, 524 U.S. at 290. "[T]he knowledge of the wrongdoer himself is not pertinent to the analysis." *Id.* at 291. Further, the institution's "own deliberate indifference" must "effectively cause the discrimination." *Davis*, 526 U.S. at 642-43, 645 (quotations omitted). Institutions are not liable so long as after receiving appropriate notice of the harassment, they conduct themselves "in a manner that is not clearly unreasonable." *Id.* at 649. "This is not a mere 'reasonableness' standard . . . [i]n an appropriate case, there is no reason why courts, on a motion to dismiss . . . could not identify a response as not 'clearly unreasonable' as a matter of law." *Id.* at 648-49

A.     **Plaintiffs fail to allege facts that show discrimination or harassment on the basis of race, color, or national origin.**

Plaintiffs base their Title VI claim on the conclusory assertion that Haverford's conduct "created an environment that is hostile towards Jews." Putting aside the standing and organizational membership issues with that allegation, a cursory review of Plaintiffs' factual allegations makes plain that the "harassment" alleged was based not their Jewish identities but instead on specific political views and positions on world events, namely, the Israel-Palestine conflict and the Israeli government's response to the attacks by Hamas on October 7, 2023 and resultant military operations in Gaza. Title VI protects individuals from discrimination on the basis

of "race, color, or national origin," not political or personal views, even if such views are somehow influenced by a plaintiff's protected characteristic.

Courts in this district and beyond routinely dismiss Title VI claims on this basis. *See Doe v. Abington Friends Sch.*, No. CV 22-0014, 2022 WL 16722322, at *6 (E.D. Pa. Nov. 4, 2022) (dismissing Title VI claim based on alleged harassment on the basis of the plaintiff's Jewish identity where allegations suggested that alleged harassment occurred based on perception that the plaintiff was racist, not based on the plaintiff's Jewish identity); *Zinman v. Nova Se. Univ., Inc.*, No. 21-CV-60723, 2021 WL 4025722, at *8 (S.D. Fla. Aug. 30, 2021) (dismissing Title VI claim where the plaintiff's allegations concentrated on his personal beliefs rather than a characteristic based on race, ethnicity, or shared ancestry), *report and recommendation adopted sub nom. Zinman v. Nova Se. Univ.*, No. 21-CIV-60723-RAR, 2021 WL 4226028 (S.D. Fla. Sept. 15, 2021), *aff'd sub nom. Zinman v. Nova Se. Univ., Inc.*, No. 21-13476, 2023 WL 2669904 (11th Cir. Mar. 29, 2023); *Lubavitch-Chabad of Illinois, Inc. v. Nw. Univ.*, 6 F. Supp. 3d 806, 816 (N.D. Ill. 2013) (granting summary judgment to defendant on Title VI claims where plaintiffs alleged that they suffered discrimination solely on the basis of their personal beliefs as opposed to race or ethnicity), *aff'd*, 772 F.3d 443 (7th Cir. 2014); *Weiss v. City Univ. of New York*, No. 17-CV-3557 (VSB), 2019 WL 1244508, at *9 n.11 (S.D.N.Y. Mar. 18, 2019) (dismissing Title VI claim to the extent plaintiff alleged discrimination based on specific personal religious beliefs as opposed to race or ethnicity); *T.E. v. Pine Bush Cent. Sch. Dist.*, 58 F. Supp. 3d 332, 355 (S.D.N.Y. 2014) (holding that Title VI only applies to allegations of antisemitic harassment when the harassment is based on the group's actual or perceived shared ancestry or ethnic characteristics, rather than solely on its members' religious practices) (citing Dear Colleague Letter from Russlynn Ali, Assistant Secretary for Civil Rights, Office for Civil Rights, U.S. Dep't of Education (Oct. 26, 2010)); *See*

*also Zinman v. Nova Se. Univ.*, No. 21-CIV-60723-RAR, 2021 WL 1945831, at *4 (S.D. Fla. May 14, 2021) (holding that the plaintiff's Title VI claim was unlikely to succeed on the merits at the preliminary injunction stage because it was based on the plaintiff's personal beliefs with "no connection to race, color, or national origin"), *appeal dismissed*, No. 21-11711-JJ, 2021 WL 7160514 (11th Cir. Dec. 3, 2021), *cert. denied*, 142 S. Ct. 1684 (2022).

Importantly, Plaintiffs describe themselves as Jews who "share a commitment to the existence of Israel as a Jewish state." (FAC ¶ 45). This is a political position, even if informed by one's religious beliefs, and alleged harassment based on one's political position is not actionable under Title VI. To the extent that Plaintiffs' claims are based on allegations that such views have been denounced as racist (*see, e.g.*, *id.* ¶ 14 (alleging that "President Raymond has allowed to go unanswered the exclusionary demands that pro-Israel students be labeled as racist 'genocidaires'")), such an allegation, even where such labels of racism are alleged to have been incorrectly applied, "provides a clear, non-race-based motive" for a defendant's conduct. *Tannous v. Cabrini Univ.*, No. CV 23-1115, 2023 WL 6465842, at *6 (E.D. Pa. Oct. 4, 2023) (McHugh, J.), *on reconsideration in part*, No. 23-115, 2023 WL 8026634 (E.D. Pa. Nov. 20, 2023).

In *Tannous*, this Court rejected Title VII discrimination claims brought against a university based on a professor's termination for social media posts deemed to be antisemitic. *Id.* at *3-6. The plaintiff alleged that due to his status as a Palestinian-American, his posts were incorrectly presumed to be antisemitic. *Id.* This Court rejected the plaintiff's attempt to equate discrimination based on race/ethnicity to discrimination based on a belief that his statements were antisemitic. *Id.* at *5 ("These concepts are distinct. Even if the belief that his statements were antisemitic is unfair or incorrect, courts considering the issue have concluded that such conduct does not give rise to a

cognizable claim under Title VII because it is not based on the employee's status as a protected minority.")

The same reasoning applies here. While Plaintiffs assert that "Haverford refuses to tolerate ideas about Israel that are at odds with its new **political** orthodoxy," creating a hostile environment for "Jewish students committed to the existence of the State of Israel as a Jewish state," (FAC ¶ 14 (emphasis added)) even if such conclusory allegations are presumed to be true, the FAC alleges no facts indicating that non-Jewish individuals espousing similar views concerning the Israel-Palestine conflict and actions of the Israeli government would have been treated any differently. *See Tannous*, at *5 (dismissing claims premised on alleged discrimination based on terminated employee's Palestinian-American identity where the plaintiff failed to allege facts suggesting that the defendant would have reacted differently to similar conduct by a similarly situated non-Palestinian-American employee).

The FAC devotes several pages and 48 paragraphs, in direct response to arguments set forth in Haverford's original Motion to Dismiss, asserting that their pro-Israel views fall within Title VI's protection because "Zionism is a central religious tenet of Judaism," (FAC ¶ 57) including the "establishment of a state subject to Jewish sovereignty" in Israel. (*Id.* ¶ 66). Put another way, Plaintiffs' claims depend upon the Court's agreement as a matter of law that criticism of the state of Israel or its actions equates not just to antisemitism but religious harassment warranting judicial intervention. That notion does not work in a free society, and it certainly does not work on a College campus whose purpose is in part to foster the free exchange of ideas.

By way of just one illustration, Haverford was founded in 1833 by Quakers, and continues to be guided by Quaker values, which include peace and pacifism, central tenets to Quaker faith.[9]

---

[9] *See* https://www.haverford.edu/quaker-studies-working-group/religious-society-friends.

Much of the Plaintiffs' Title VI claim is based on their classmates' advocacy for a ceasefire[10] in Gaza. If we are to accept Plaintiffs' view of Title VI, where does that lead? Must Haverford College Quakers dedicated to peace and nonviolence intervene in this litigation to ensure their Title VI rights to advocate for pacifism are also protected and not overridden by a judgment in Plaintiffs' favor? Do Haverfordians of Palestinian descent intervene to ensure that their beliefs in Palestinian rights to sovereignty and self-determination, central to their national origin or religious identity, are protected? Is that where this case is headed?

The answer is of course not, because questions of social and political views do not trigger Title VI protection. Haverford takes no stance on what constitutes the closely-held religious beliefs of any individual or group, and this Court need not make any such determination here. Title VI protects individuals from discrimination on the basis of their race, color, or national origin. It does not protect individuals from being confronted with viewpoints that differ from their own, even when such viewpoints are closely tied to or informed by religious values.

Because Plaintiffs fail to allege facts supporting a plausible conclusion that Landau or the anonymous members were discriminated against *on the basis of their race, color, or national origin*, Title VI is inapplicable here and Count I should be dismissed.

### B.    Plaintiffs fail to allege "severe, pervasive, and objectively offensive" harassment.

The FAC likewise fails to allege conduct that is sufficiently severe to be actionable under Title VI. It is "rare" for discrimination or harassment "to be sufficiently severe under Title VI and Title IX" to support a claim for hostile educational environment. *Doe v. Galster*, 768 F.3d 611, 618 (7th Cir. 2014) (finding reasonable jury could find "cumulative effects" of harassment

---

[10] The Merriam-Webster Dictionary defines "ceasefire" as "a military order to cease firing" and "a suspension of active hostilities," directly in line with Quaker values of peace and pacifism.

sufficiently severe where plaintiff was subjected to multiple incidents of physical violence requiring police attention and causing family to change school districts); *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 659-62, 667 (2d Cir. 2012) (severity requirement satisfied where the victim endured explicit racial slurs and physical attacks that warranted police attention, causing the victim to graduate early with a limited diploma); *Vance v. Spencer Cnty. Pub. Sch. Dist.*, 231 F.3d 253, 259 (6th Cir. 2000) (finding sufficiently severe harassment where the victim's harassers sexually propositioned her, removed her shirt, and stabbed her in the hand, causing her to complete her studies at home); *Murrell v. Sch. Dist. No. 1, Denver*, 186 F.3d 1238, 1248 (10th Cir. 1999) (finding complaint sufficiently alleged severe harassment where victim sexually was assaulted for a month, causing hospitalization and rending the victim homebound); *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 585 (5th Cir. 2020) (finding complaint plausibly alleged severe, pervasive, and offensive harassment where a dean ridiculed plaintiff every other day during school year, discouraged other students from talking to him, and attempted to convince a female student to accuse him of sexually assaulting her).

In contrast, the FAC alleges a handful of events concerning Landau that it characterizes as antisemitic[11] harassment: (1) that President Raymond failed to publish a statement at Landau's direction which was sufficiently aligned with her views on the Israel-Palestine conflict (FAC ¶¶ 195-97); (2) that when the College granted Landau a platform and venue, at her request, to speak about her views on the conflict, certain of her classmates protested with opposing views (*id.* ¶ 199-200); (3) that classmates with pro-Palestinian views asserted those views at the College's fall Plenary (*id.* ¶¶ 225-29); (4) that when the College granted Landau yet another platform to express

---

[11] It bears emphasis that the legal standards set forth in the foregoing authorities focus on alleged conduct, not labels attached to the alleged conduct. Plaintiffs must allege conduct that constitutes "severe, pervasive, and objectively offensive" harassment to survive dismissal, not merely conduct that Plaintiffs regard as antisemitic.

her views through the all-College email system, certain of her classmates presented a counter-view directly referencing Landau's letter (*id.* ¶¶ 242-43); (5) that a College administrator attended a vigil for a Palestinian-American student who was shot and injured but did not attend Landau's talk on the Israel-Palestine conflict (*id.* ¶¶ 209; 215-16; 218); (6) that Landau felt pressured by College administrators into forgoing a planned "antisemitism awareness" event (*id.* ¶¶ 270-72); (7) that the College recognized May as Asian American/Pacific Islander Month but not Jewish American Heritage Month. (*Id.* ¶ 333); and (8) that Landau witnessed pro-Palestinian expressive activity at her graduation (though Landau concedes that the College removed "troublemakers" who disrupted the ceremony by engaging in such conduct). (*Id.* ¶¶ 6, 340-44).

None of these events are qualitatively similar to the type of conduct found to establish the requisite severity or pervasiveness. This Court may determine as a matter of law whether conduct fails to meet the severe, pervasive, and objectively offensive standard, and should do so here. *See Page v. City of Pittsburgh*, 114 F. App'x 52, 54 (3d Cir. 2004) (affirming district court's ruling "that there was insufficient evidence, as a matter of law, to establish severe and pervasive discrimination"). When considering Plaintiffs' allegations of discrimination and harassment concerning Landau or the anonymous members, even in the light most favorable to Plaintiffs, this Court should conclude that these events do not constitute severe, pervasive, and objectively offensive harassment such that Landau or the anonymous members were deprived of the educational opportunities and benefits provided by Haverford. *Davis*, 526 U.S. at 633.

In *Doe v. Princeton University*, the Third Circuit concluded that a racial epithet was insufficient to meet the requisite standard. *See* 790 F. App'x 379, 384 (3d Cir. 2019) (finding "one instance of being called a slur, while offensive, is neither severe nor pervasive"). The FAC does not allege that anyone used ethnic slurs against Landau or the anonymous members; only that

Plaintiffs have inferred antisemitic intent[12] based on their subjective evaluation that Haverford's administration and certain of its students have been insufficiently supportive of Israel. Other case law is in agreement; allegations of the sort alleged here do not meet the standard for the "rare" case of discrimination that rises to the extraordinary level necessary to demonstrate a hostile educational environment. *Galster*, 768 F.3d at 618-19; *see also Davis*, 526 U.S. at 650; *Whitfield*, 412 F. App'x at 521 (finding incidents of racial discrimination, including incidents of derogatory remarks and scratching plaintiff, not severe or pervasive); *Lansberry v. Altoona Area Sch. Dist.*, 318 F. Supp. 3d 739, 752-53 (W.D. Pa. 2018) (finding complaint failed to allege severe, pervasive, and objectively offensive conduct where claim was based on sporadic instances of bullying); *C.M. v. Pemberton Twp. High Sch.*, CV No. 16-9456 (RMB/JS), 2017 WL 384274, at *6 (D.N.J. Jan. 27, 2017) (dismissing Title IX claim because the complaint only alleged "two seemingly isolated instances" of harassment, "not pervasive conduct").

Even if the FAC adequately alleged that Landau and the anonymous members were subject to conduct on the basis of a characteristic protected by Title VI (it has not), it fails to allege that such conduct rises to the requisite level of "severe, pervasive, and objectively offensive" to be actionable under Title VI. As such, Count I should be dismissed with prejudice.

---

[12] Throughout the FAC, Plaintiffs speak in general terms, alleging that students engaged in "antisemitic demonstrations" or repeated "Hamas talking points," without specifying the content. Elsewhere, Plaintiffs appear to equate expressions of Palestinian identity to antisemitic harassment violating Title VI. (*See, e.g.*, FAC ¶ 48 ("HJSC has been devastated by the sudden and sustained proliferation of Haverford students wearing head and shoulder coverings in a manner like that worn by Hamas terrorists."), ¶¶ 344-47 (equating the Palestinian flag to the Confederate flag)). Plaintiffs object to equivocating Jewish identity or support for Israel to claims of genocide and racism but do not hesitate to equate symbols of Palestinian identity to support for terrorists requiring judicial intervention.

**C.      Plaintiffs fail to allege facts that show that Haverford was deliberately indifferent to any alleged harassment of which it had actual knowledge.**

Even if the FAC had alleged sufficiently severe and pervasive conduct that was actionable under Title VI, the Court should still dismiss Plaintiffs' hostile environment claim because the FAC does not allege facts showing that Haverford was deliberately indifferent to any alleged harassment. *See Rullo*, 2020 WL 1472422, at *7; *Davis*, 526 U.S. at 648-50. Although the FAC alleges that Landau and the anonymous members were dissatisfied by the level of support for Israel shown by the College and their classmates, this Court can and should determine that as a matter of law, Haverford's response was not "clearly unreasonable." *Davis*, 526 U.S. at 649.

Federal courts analyzing similar Title VI claims against other schools recognize that deliberate indifference is a "stringent standard of fault" requiring more than allegations "that an institution could or should have done more." *StandWithUs Ctr. for Legal Just. v. Massachusetts Inst. of Tech.*, No. CV 24-10577-RGS, 2024 WL 3596916, at *4 (D. Mass. July 30, 2024) (citations omitted). Deliberate indifference "is not to be viewed through the lens of hindsight," and requires a plausible allegation that Haverford affirmatively chose "to do the wrong thing, or doing nothing, despite knowing what the law requires." *Id.* Plaintiffs have not met that standard here.

The FAC acknowledges that Landau's concerns were addressed repeatedly by Haverford's highest-ranking administrators, and that those individuals worked with Landau to address those issues and help Landau express her views. While Plaintiffs allege dissatisfaction with the timing and content of the College's statements concerning Israel and Palestine, the allegations make clear that College administrators engaged in multiple conversations with Jewish members of the Haverford community in response to their related concerns. (*See, e.g.*, FAC ¶¶ 117-18). The College granted Landau a platform to deliver a presentation to the student body regarding her views on the Israel-Palestine conflict. (*Id.* ¶¶ 195-99). The College further supported and indeed

assisted Landau in expressing her views by approving her use of the "all-College email system" to voice her concerns. (*Id.* ¶ 238-39). The College coordinated the removal of Landau's name from the "Haverford Grievances Document" at her request. (*Id.* ¶¶ 246, 249).

More generally, the College ended a pro-Palestinian "sit-in" on campus in order to ensure "the abilities of fellow students to pursue their studies and the abilities of staff and faculty to conduct their work." (*Id.* ¶ 265; Ex. F at 36). The College removed pro-Palestinian "troublemakers" who disrupted the College's 2024 commencement ceremony (*Id.* ¶ 341). The College facilitated a platform for Jewish students "committed to Zionism and the existence of Israel as a Jewish state," to share their concerns with student leaders responsible for Customs (Haverford's orientation) programming (*id.* ¶¶ 368-71); and Customs leaders engaged with "concerned Jewish students" to develop content for Customs programming about "combating harmful rhetoric" including antisemitism. (*Id.* ¶¶ 375-76; Ex. F at 2, 16, 17 (describing antisemitism to include "[r]equiring people, because they are Jewish, publicly to condemn [or support] Israel or Zionism")). Further, the FAC is replete with examples where College administrators attended events sponsored by Jewish student-groups and engaged in dialogue on topics of concern. (*See, e.g., Id.* ¶¶ 294; 310).

Courts afford schools "substantial deference in cases of alleged student-on-student harassment; victims of harassment have, for example, no 'right to make particular remedial demands.'" *Dawn L. v. Greater Johnstown Sch. Dist.*, 586 F. Supp. 2d 332, 369 (W.D. Pa. 2008). (quoting *Davis*, 526 U.S. at 648)). To establish deliberate indifference, a plaintiff must show that the school's response to peer harassment amounted to "an official decision . . . not to remedy the violation[s]." *Id.* (quoting *Gebser*, 524 U.S. at 290). In *StandWithUs v. M.I.T.*, the plaintiffs asserted that M.I.T.'s response to alleged acts of antisemitism on campus following the October

7th attacks on Israel violated Title VI. The court held that the plaintiffs failed to allege deliberate indifference where M.I.T. "took steps to contain the escalating on-campus protests" even if such efforts did not decisively end the issue. *StandWithUs*, at *5.

> The pain and hurt felt by plaintiffs and the Jewish and Israeli students that they seek to represent is genuine and fully understandable. But at bottom, the fault attributed to MIT is its failure to anticipate the bigoted behavior that some demonstrators – however sincere their disagreement with U.S. and Israeli policies – would exhibit as events unfolded. The transgressors were, after all, mostly MIT students whom the school (perhaps naively) thought had internalized the values of tolerance and respect for others – even those with whom one might disagree – that a modern liberal university education seeks to instill. **To fault MIT for what proved to be a failure of clairvoyance and a perhaps too measured response to an outburst of ugliness on its campus would send the unhelpful message that anything less than a faultless response in similar circumstances would earn no positive recognition in the eyes of the law.**

*Id.* (emphasis added).

Even if the alleged conduct Landau and the anonymous members were subject to were actionable under Title VI (it is not), Haverford was only required to respond in a way that is not clearly unreasonable. The FAC, makes clear that Haverford's administrators spent much of the past year actively engaging with Jewish students and others impacted by the conflict in Israel and Gaza and responding to their concerns. A far cry from "an official decision not to remedy the alleged violations." *Gebser*, 524 U.S. at 290. As such, Plaintiffs' Title VI claim must be dismissed with prejudice.

## IV.   The FAC fails to state a claim for breach of contract because Plaintiffs fail to identify any contractual duty breached by Haverford.

To state a claim for breach of contract, a plaintiff "must set forth facts regarding (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages." *Doe v. Haverford Coll.*, No. CV 23-299, 2023 WL 5017964, at *5 (E.D. Pa. Aug. 7, 2023) (McHugh, J.) (citing *McShea v. City of Philadelphia*, 995 A.2d 334, 340 (Pa. 2010)). Under Pennsylvania law, relationships between private colleges and their enrolled

students are contractual in nature. *Kimberg v. Univ. of Scranton*, No. 06-cv-1209, 2007 WL 405971, at *3 (M.D. Pa. Feb. 2, 2007) (citing *Swartley v. Hoffner*, 734 A.2d 915, 919 (Pa. Super. Ct. 1999)). The terms of such contracts are comprised of the "written guidelines, policies, and procedures as contained in the written materials distributed to the student over the course of their enrollment in the institution." *Id.*

To survive a motion to dismiss on Plaintiffs' breach of contract claim, the FAC must specifically identify the contractual terms at issue. "While Pennsylvania law allows a student to sue a private university for breach of contract, 'the allegations must relate to a **specific** and identifiable promise that the school failed to honor.'" *David v. Neumann Univ.*, 187 F. Supp. 3d 554, 558 (E.D. Pa. 2016) (quoting *Vurimindi v. Fuqua Sch. of Bus.*, 435 F. App'x 129, 133 (3d Cir. 2011)) (emphasis added). Further, it is Plaintiffs' burden to "point to **specific** undertakings in the [contract] that were not provided." *Id.* (quoting *Miller v. Thomas Jefferson Univ. Hosp.*, 908 F. Supp. 2d 639, 655 (E.D. Pa. 2012), *aff'd*, 565 F. App'x 88 (3d Cir. 2014)) (emphasis added).

In interpreting the provisions and intent of a contract between a private college or university and its enrolled students, a court must also consider specific contractual terms in the larger context of a school's policies and procedures as a whole. *See Doe v. The Trustees of the Univ. of Pennsylvania*, 270 F. Supp. 3d 799, 812 (E.D. Pa. 2017) (declining to consider specific terms of a university's disciplinary procedures in isolation); *Murphy v. Duquesne Univ. Of The Holy Ghost*, 777 A.2d 418, 432 (Pa. 2001) ("Simply put, the parties' contractual intent cannot be gleaned by ignoring all but one sentence in the Contract, and then reading that sentence out of context.") It is accordingly Plaintiffs' burden to plead that Haverford violated a specific written promise. The FAC has not done that. Instead, Plaintiffs allege in conclusory fashion that Haverford failed to abide by its "policies governing discrimination, the scope of expressive freedom on

campus, the posting of posters, and the use of social media." Such conclusory allegations are factually unsupported and thus not entitled to the presumption of truth. The FAC fails to identify the specific contractual terms at issue and how the College's conduct constituted a breach of such terms.

For example, Plaintiffs reference Haverford's "Non-discrimination Statement" (FAC ¶ 121) but fail to explain how the College breached any contractual obligations under that "policy." Plaintiffs selectively quote a policy on "Expressive Freedom and Responsibility," reflecting the College's commitment to "all students' rights to free inquiry, assembly, and expression" and "the right to expression of dissent through peaceful protest." (*Id.* ¶ 122). Plaintiffs assert generally that the "Expressive Freedom and Responsibility" policy is "not applied to Jewish students, or those who support the right of Israel to exist as a Jewish state." (*Id.* ¶ 124). But beyond that sweeping generalization, Plaintiffs' factual allegations do not allege any instance where the College breached the provisions of that policy with regard to Landau, the anonymous members, or any other alleged members of the plaintiff-association. Quite the opposite, the FAC's *factual* allegations show that Haverford has consistently provided students of differing viewpoints with a platform to engage in such "free inquiry, assembly, and expression."

Indeed, the College facilitated multiple opportunities for Landau, at her request, to widely express her views on the antisemitism, the Israel-Palestine conflict, and Israel's right to exist, self-determination, and self-defense. (FAC ¶¶ 197-99; 238-40). The FAC further details several Haverford-sponsored events on campus providing a platform for the College's Jewish community to discuss their experiences and views on the Israel-Palestine conflict. (*Id.* ¶¶ 294 ("How do you Jew" event), 310-14 ("Fords' Forum"), 317 ("Supernova" movie screening)).

The FAC references the College's Honor Code (mislabeled as a "Speech Code") but does not attach the Honor Code in full, instead relying on cherry-picked provisions removed from context and the characterization of the Honor Code by FIRE, an external advocacy group. (*Id.* ¶¶ 125-31). Plaintiffs' main issue with the College's application of the Honor Code, ironically, is that Haverford has not sufficiently censored the expression of those who are critical of the actions of the Israel government or who voice pro-Palestinian positions. The FAC asserts that this represents "overt discrimination by Haverford College against Haverford's Jews who believe that Israel has a right to exists as a Jewish State." (*Id.* ¶ 137). But Plaintiffs fail to allege facts establishing that they have a legally cognizable right to be unbothered by opposing viewpoints on world affairs, under a contractual relationship with Haverford or otherwise. Further, the FAC fails to cite any instance where a plaintiff or member of "Jews at Haverford" was punished in violation of the College's Expressive Freedom and Responsibility policy or Honor Code.

The FAC cites (again, selectively) the College's Social Media Policy, and broadly asserts that the College has failed to enforce this policy in favor of Jewish students who support Israel. (*Id.* ¶¶ 144-45). Plaintiffs omit, however, that the guidelines set forth in the "Haverford College Social Media Best Practices and Policy" apply only to "faculty, staff, and students **who administer or contribute to official Haverford College-related social media channels**." (Richards Decl. Ex. 4). Again, Plaintiffs have failed to allege any instance where activity on an official Haverford-related social media account violated the College's Social Media Policy, much less any instance where the College failed to enforce that policy in a way that impugned the contractual rights of Plaintiffs or alleged members of "Jews at Haverford."

Plaintiffs refer to the College's Bulletin Boards, Posting Notices, Banners, and Installation Policy, which requires posters on campus to include the name of poster's sponsor, to allege that

the College failed to enforce this policy with regard to alleged pro-Palestinian posters containing what Plaintiffs consider to be antisemitic language. (*Id.* ¶¶ 146-50). The FAC provides no further details about the alleged anonymous posters, where the posters appeared, or how long they stayed up. Further, the FAC does not explain how the existence of an anonymous poster constitutes a breach of contract *between the College and any of the Plaintiffs in this case or alleged members of "Jews at Haverford*."

The FAC also vaguely references "rules governing Plenaries," asserting that such rules were violated. (*See, e.g.*, *id.* ¶¶ 236, 279-83, 288). But the FAC fails to attach the "rules governing Plenaries" and instead relies on selective excerpts from the College's Students' Association Constitution (*id.* ¶¶ 281-82) and the opinion of an alumnus who graduated from the College more than three decades ago and presumably has not participated in a Haverford Plenary since. (*Id.* ¶ 287, Ex. D). Plaintiffs take issue with the fact that, during the College's Fall Plenary on November 5, 2023, students allegedly, on balance, presented pro-Palestinian viewpoints. (*Id.* ¶¶ 226-29). Plaintiffs aver that students holding contrary, pro-Israel views were not given the opportunity to speak at the Fall Plenary, but in the same breath concedes that these individuals were not "barred from speaking" due to their Jewish identity or their individually held beliefs but instead because they had failed to prepare such a presentation or sign up in advance to speak at Plenary. (*Id.* ¶¶ 228, 231). Plaintiffs assert in conclusory fashion that the Emergency Plenary violated College rules but fails to identify which rules were violated or how. (*Id.* ¶ 283). The FAC also fails to allege how any plaintiff or purported member of "Jews at Haverford" were impacted by the emergency Plenary. Thus, the FAC has not and cannot point to a contractual duty owed to Plaintiffs or the alleged members of "Jews at Haverford" that was breached by Haverford with regard to Plenary, let alone any resultant damages.

Because the FAC has failed to identify any specific contractual promise that Haverford failed to honor (or resultant damages) with regard to Plaintiffs or the alleged members of "Jews at Haverford," the breach of contract claim (Count II) should be dismissed with prejudice.

## V.     Plaintiffs' claims should be dismissed with prejudice.

Plaintiffs have had the opportunity to review Haverford's arguments in support of dismissal and amend their allegations accordingly after the College filed a substantially identical brief in support of its Motion to Dismiss Plaintiffs' original Complaint. Plaintiffs should not get a third bite at the apple when they have been made fully aware of the multiple deficiencies of their pleadings and failed to cure same. As such, dismissal with prejudice is warranted here.

In the alternative, Haverford respectfully requests an order from this Court ordering that any further amended pleadings in this litigation must comport with Rule 8(a)(2) which requires "[a] pleading that states a claim for relief" to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Bartol v. Barrowclough*, 251 F. Supp. 3d 855, 859 (E.D. Pa. 2017). As this Court has recognized, a complaint may violate this requirement where it is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* (quoting *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015)). Failure to comport with Rule 8 has the effect of failing "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 860 (quoting *Weiland,* at 792 F.3d at 1323). To underscore the issue, the FAC added 148 paragraphs over an additional 39 pages to the plaintiff-association's original pleading. **Among Plaintiffs' amendments, a specific plaintiff or alleged member of "Jews at Haverford" is mentioned only three times.** Further amendment not in compliance with Rule 8's "short and plain statement" requirement would be not only futile but is likely to place an undue burden on the College and this Court.

## <u>CONCLUSION</u>

For the foregoing reasons, and any other reasons that may appear to the Court, Haverford College respectfully requests that the Court dismiss Plaintiffs' First Amended Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, Rule 12(b)(6).

Respectfully submitted,

**SAUL EWING LLP**

Date: September 23, 2024

<u>s/ *Joshua W. B. Richards*</u>
Joshua W. B. Richards/204315
Levi R. Schy/329199
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA  19102
(215) 972-7737 (Richards)
(215) 972-7803 (Schy)
Joshua.Richards@saul.com
Levi.Schy@saul.com
*Attorneys for Haverford College*

## **CERTIFICATE OF SERVICE**

I, Joshua W. B. Richards, certify that on this date I filed via the ECF system a true and correct copy of the foregoing **MOTION TO DISMISS AND ACCOMPANYING MEMORANDUM OF LAW**, which constitutes valid service on the following registered users:

Jerome Marcus
Marcus & Marcus LLC
P.O. Box 212
Merion Station, PA 19066
jmarcus@marcuslaw.us

*Attorney for Plaintiffs Ally Landau, HJSB, HJSC, and "Jews at Haverford"*

Date: September 23, 2024

s/ *Joshua W. B. Richards*
Joshua W. B. Richards/204315
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
(215) 972-7737
Joshua.Richards@saul.com

*Attorney for The Corporation of Haverford College*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| _____ | : |  |
| ALLY LANDAU, HJSB, HJSC, and | : | CIVIL ACTION NO. |
| JEWS AT HAVERFORD | : |  |
|  | : | No. 2:24-cv-02044-GAM |
| Plaintiffs, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| THE CORPORATION OF | : |  |
| HAVERFORD COLLEGE | : |  |
|  | : |  |
| Defendant. | : |  |
| _____ |  |  |

### [PROPOSED] ORDER

**AND NOW**, this _____ day of _____, 2024, after consideration of Defendant The Corporation of Haverford College's Motion to Dismiss Plaintiffs' First Amended Complaint, and any response thereto, it is **ORDERED** that the Motion is **GRANTED**. Plaintiffs' claims against The Corporation of Haverford College are **DISMISSED WITH PREJUDICE** in their entirety.

**BY THE COURT:**

_____
Hon. Gerald A. McHugh