**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ALLY LANDAU et al., | : | |
| | : | |
| *Plaintiffs,* | : | CIVIL ACTION |
| v. | : | No. 2:24-cv-02044-GAM |
| | : | |
| THE CORPORATION OF HAVERFORD | : | ORAL ARGUMENT REQUESTED |
| COLLEGE, | : | |
| | : | |
| *Defendant.* | : | |
| | : | |

**BRIEF IN SUPPORT OF MOTION BY PLAINTIFFS "HJSB" AND "HJSC" TO
PROCEED UNDER PSEUDONYMS**

Plaintiffs "HJSB" and "HJSC" hereby submit this brief in support of their motion to

proceed under their respective pseudonyms for the remainder of this litigation and to limit

disclosure of their true names to the parties, their counsel, and to persons employed in the law

offices of their counsel. Alternatively, should the Court decline to grant Plaintiffs leave to use

their respective pseudonyms for the remainder of this litigation, then Plaintiffs request that the

Court permit them to use their pseudonyms for as long as they are enrolled at Haverford.

## I.    INTRODUCTION

The First Amended Complaint in this case ("FAC") presents the claims of the moving

Plaintiffs, and others, regarding the hostile environment at Haverford College for those, like

these Plaintiffs, who are committed to Israel and Zionism as a matter of their religious

conviction, shared national ancestry, and ethnic identity. The same hostility that makes it

necessary to bring these claims also makes it necessary to prosecute them anonymously, for the

simple reason that, if the moving Plaintiffs' names were to be known, it would be impossible for

them to have an equal educational opportunity at Haverford. For these reasons, more fully set

forth below, Plaintiffs now respectfully request of this Court permission to prosecute these claims under pseudonyms, subject to the conditions set forth in further detail below.

## II.    ARGUMENT

### A.    Pseudonymous Litigation Generally

Federal Rule of Civil Procedure 10(a) generally requires that a complaint name all parties. However, courts have long permitted parties to use pseudonyms when necessary to protect privacy and reputational interests. In *Doe v. Megless*, the Third Circuit held that a party seeking to litigate under a pseudonym must "sufficiently allege[] that he or she has a reasonable fear of severe harm from litigating without a pseudonym," and the Court endorsed a balancing test to determine whether a plaintiff's "interest and fear" outweigh the "public's strong interest in an open litigation process." 654 F.3d 404, 408-10 (3d Cir. 2011) (citations omitted). *Megless* directs district courts to consider the particular circumstances of each case and the "non-exhaustive list of factors to be weighed both in favor of anonymity and also factors that favor the traditional rule of openness." *Id.* at 409. The non-exhaustive list of *Megless* factors supporting the use of a pseudonym include:

1. the extent to which the identity of the litigant has been kept confidential;

2. the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases;

3. the magnitude of the public interest in maintaining the confidentiality of the litigant's identity;

4. Whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities;

5. the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; and

2

6. whether the party seeking to sue pseudonymously has illegitimate ulterior motives.

*Id.* The *Megless* factors that militate against the use of a pseudonym include:

1. the universal level of public interest in access to the identities of litigants;

2. whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and

3. whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated.

*Id.*

## B. The *Megless* Factors Strongly Support Permitting Plaintiffs to Litigate Pseudonymously.

The *Megless* factors identified above support the use of pseudonyms in this case. In summary: Plaintiffs' identities have been kept confidential; there are multiple strong bases for using pseudonyms; the public interest in permitting pseudonyms here outweighs the general public interest in open litigation; and Plaintiffs' motives for using pseudonyms are legitimate whereas Haverford's motives for opposing them appear illegitimate.

### 1. *Plaintiffs' identities have been kept confidential.*

First, Plaintiffs' identities have been kept confidential thus far. HJSB and HJSC have not told any Haverford students that they are Plaintiffs other than the other Plaintiffs in this case. Decl. of HJSB (Nov. 8, 2024) at ¶ 10; Decl. of HJSC (Nov. 8, 2024) at ¶ 10. HJSB has not told any Haverford employees about her involvement in this case. HJSB Decl. at ¶ 10. HJSC has disclosed that she is a Plaintiff only to one professor, who is sympathetic to her position, and in confidence. HJSC Decl. at ¶ 10. This factor weighs in favor of Plaintiffs' request for pseudonymity.

### 2. *Plaintiffs have a substantial basis to avoid disclosing their identities.*

Plaintiffs wish to avoid disclosing their identities for two reasons: First, as described in the FAC, Haverford has become an extremely hostile place for them due to their religion, and publicly connecting them to this lawsuit would dramatically exacerbate the campus' hostility for them. Public disclosure of Plaintiffs' names would likely lead to severe social stigmatization, academic harm, and potentially even threats to their safety. Second, Haverford's own policies prohibit the College from identifying personal information about them in their education records.

With respect to social stigmatization, both HJSB and HJSC have lost friends and have been shunned by other Haverford students because they are Jews who support Israel. HJSB Decl. at ¶ 5; HJSC Decl. at ¶ 5. Both Plaintiffs have been repeatedly insulted by other Haverford students who have attempted to tell them that their commitment to Israel has nothing to do with their religion. HJSB Decl. at ¶ 7; HJSC Decl. at ¶ 5. They have been shunned by Haverford students because they have taken the position that Israel has the right to exist as a Jewish state. HJSB Decl. at ¶ 5; HJSC Decl. at ¶ 5. Both Plaintiffs have also been forced to change their routines at Haverford in order to avoid confrontations with anti-Israel protesters. HJSB Decl. at ¶ 6; HJSC Decl. at ¶ 6.

Both HJSB and HJSC also fear that disclosure of their names will hurt their academic performance at Haverford. HJSB Decl. at ¶ 8; HJSC Decl. at ¶ 8. Classes at Haverford are small and communal; students are expected to work together. HJSB Decl. at ¶ 8; HJSC Decl. at ¶ 8. If this Court requires disclosure of Plaintiffs' names, both of them expect that their fellow classmates will refuse to work with them on academic assignments—and their grades will therefore suffer. *See* HJSB Decl. at ¶ 8; HJSC Decl. at ¶ 8. Further, public disclosure of Plaintiffs' names could lead to retaliation by Haverford's faculty. Both Plaintiffs have witnessed

anti-Israel commentary being injected into their courses even when the subject of these courses had no pertinence to Israel. HJSB Decl. at ¶ 7; HJSC Decl. at ¶ 7.

To understand the hostility at Haverford for Israel-supporting Jews, consider the case of the professor referenced in paragraphs 182-184 of the Amended Complaint. (ECF 14 at 58-60.) Using X (formerly known as Twitter), this professor recently posted the following inflammatory and borderline-violent rhetoric:

> Which is why the only way to deal with zionists is to stop talking to them and refuse to let them waste your time. Liberal zionists in particular. And I learned a new term, 'reluctant Zionist', and I guess there were plenty of reluctant Nazis, too. Perhaps majority of them were.

....

> Anyone who says 'what about Hamas' can go f*** themself. This *is* Zionism and if you say it is not, then you are basically contradicting yourself by saying you are a non-racist racist and you humanise others by dehumanising them — and you kill to save. GO F*** YOURSELF.

....

> By this point matter is no longer just ceasefire. The state of Israel must be dismantled and the society de-Nazified. Arms embargo, sanction, boycott, attack Zionism on all fronts. Zionism is Nazism, it is fascism. Zionists are racists.

....

> I will forever remember who in my little world are silent on this genocide or even tacitly support it, with whatever excuse they have managed to convince themselves of, and I will never forgive them. I know their names and I know their faces. Never forgive. No reconciliation.
>
> ….
>
> Zionism is fundamentally a modern racist ideology that has next to nothing to do with Judaism as an ancient religion.

(ECF 14 at 60.)[1] As long as Haverford is employing individuals like this to teach and influence its students, it is not safe for Plaintiffs to identify themselves.

It is important to understand that Haverford *knows* that its Jewish students are being stigmatized. On April 9, 2024, President Wendy Raymond issued a written public statement acknowledging the "growing concern about antisemitism on our campus." Decl. of Jerome M. Marcus (Nov. 8, 2024) at ¶4 and Exhibit B thereto. In that statement, President Raymond stated that "some behaviors of Haverford students and colleagues have resulted in experiences of disregard, shunning, or worse." She acknowledged that "[a] number of Jewish students [had] told [her] that they did not attend Plenary[2] three weekends ago because they did not feel they could vote honestly in that public space without feeling further disrespected for holding a minority viewpoint."

These displays of hostility to Judaism and Israel have continued in the academic year that began since the filing of this case. On September 30, 2024, the Anti-Defamation League (ADL)

---

[1] These statements were not all made together or on the same day.

[2] "Plenary" is an event in which Haverford's Student Body gathers to discuss and vote to ratify the Honor Code. All Haverford students are asked to gather as a community.

held a lecture at Haverford called "Antisemitism 101." The lecture was marred by disruptive

protests, including loud banging on the windows and walls of the room hosting the event

throughout its duration, and several interruptions by audience members. *See  The Anti-*

*Defamation League Gives "Antisemitism 101" Workshop at Haverford, Student Activists Stage*

*Disruption,* found at https://bicollegenews.com/2024/10/21/the-anti-defamation-league-gives-

antisemitism-101-workshop-at-haverford-student-activists-stage-disruption/, referenced at J.

Marcus Decl. at ¶5, Exhibit B.   The individuals causing these disruptions had to be removed by

campus security authorities. *Id.*  At the conclusion of the event, and to ensure their physical

safety, campus security had to escort the ADL personnel out.  *Id*.

Interviewed by the *The Bi-College News* about the ADL lecture, Dean of the College

John McKnight stated that "disruption inside the room and then of course some of the banging

on the windows and walls outside the building again shifted the dynamic from one of awareness-

raising and educational exchange and dialogue towards more *feelings of questioning safety and*

*security*, and now people feeling like there's *hostility directed towards them as individuals or as*

*a group* and so that's the part that I regret." See Exhibit B to J. Marcus Decl. ¶5 (emphasis

added). Haverford's President, Wendy Raymond, was present for the entire event and did

nothing to stop the riotous noise outside, or the disruptions inside, or to discipline any student

who participated in any of these attacks on the ADL's presentation.  *Ibid*.

Haverford is in no position to argue that its Jewish students are not in harm's way.

Courts commonly find that a fear of religious persecution or harassment—and even the

mere disclosure of private religious beliefs—are valid justifications to shield the identity of a

plaintiff. *See Doe v. Loyola Univ. Chicago*, 100 F.4th 910, 913 (7th Cir. 2024) ("the sort of

retaliation that might warrant secrecy is a kind that is unjustified by the facts—such as animus

toward people with unpopular religious beliefs"); *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004) (affirming district court order granting pseudonymity in case that would require plaintiffs to reveal their religious beliefs); *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981) (reversing district order denying pseudonymity when plaintiffs feared disclosure of their religious beliefs, as religion is "perhaps the quintessentially private matter"); *Navy SEAL 1 v. Austin*, No. 21-2429, 2022 WL 520829, *1 (M.D. Fla. 2022) (finding pseudonymity proper when plaintiffs would otherwise have to disclose their sincere religious beliefs); *Doe 1 v. NorthShore Univ. HealthSystem*, No. 21-5683, 2021 WL 5578790, *9 (N.D. Ill. 2021) (granting pseudonymity when plaintiffs legitimately feared that public disclosure of their "quintessentially private religious beliefs" would make them "targets of intensified and focused scorn and humiliation"); *Doe v. Princeton Univ.*, No. 19-7853, 2019 WL 5587327, *4 (D.N.J. 2019) (identifying religious beliefs as a highly personal subject matter supporting pseudonymity); *Doe v. Dordoni*, No. 16-74, 2016 WL 4522672, *3 (W.D. Ky. 2016) (identifying the plaintiff would show that he had converted to another religion, giving him a rational fear of serious personal injury or death); *Yacovelli v. Moeser*, No. 02-596, 2004 WL 1144183, *6-9 (M.D.N.C. 2004) (granting pseudonymity to student-plaintiffs who objected to public university's academic assignment on religious grounds).

Aside from the harm that would likely follow from public disclosure of Plaintiffs' names, such disclosure would also violate Haverford's Student Records Policy. This policy prohibits the College from releasing a student's personally identifiable information without the student's prior consent. *See* Exhibit C to J. Marcus Decl., at 5. The policy states:

> Haverford College will not release personally identifiable information contained in education records or allow access to those records without prior consent of the student. Personally identifiable information is defined as first and last names (or first initial and

last name) in combination with any one of the following: social
security number, name(s) of students family members, address(es)
of students family members, Haverford College ID number, race,
gender, religion or any other information that would make it
possible to trace the student's identity. Other types of personally
identifiable information include, but are not limited to: advising
records, disciplinary records, medical or psychiatric records,
transcripts, letters of recommendation and records (high school
transcript, SAT scores etc). Basically, anything that contains
enough demographic or other information that points to a single
student.

Haverford College will not disclose personally identifiable
information without a written, signed and dated consent which
specifies to whom the disclosure is being made, the purpose of the
disclosure and what records are to be disclosed.

*Ibid*. The Student Records Policy lists six exceptions under which the College may release

personally identifiable information—none of which include litigation filed against the College.

*See id.* The College's disclosure of Plaintiffs' names in litigation filings would violate its own

policy, and would separately amount to a breach of contract.[3]

Accordingly, Plaintiffs have several strong bases to avoid disclosure of their names in

this litigation. In particular, Plaintiffs have shown a reasonable fear of severe harm—a type of

harm that is amply recognized by the case law—if they are forced to litigate in their own names.

      3.     *There is a strong public interest in maintaining the confidentiality of*
                *Plaintiffs' identities, which outweighs the universal public interest in open*
                *courts.*

The third *Megless* factor is "the magnitude of the public interest in maintaining the

confidentiality of the litigant's identity." *Megless*, 654 F.3d at 409. This factor supports

---

[3] A college has a contractual obligation to its students to abide by its own stated policies. *See Reardon v. Allegheny College*, 926 A.2d 477, 480 (Pa. Super. Ct. 2007) (Pennsylvania courts "review the agreement between the parties concerning disciplinary procedures[] contained within a portion of the student handbook…as we would any other agreement between two private parties."); *Swartley v. Hoffner*, 734 A.2d 915, 919 (Pa. Super. Ct. 1999) ("[T]he relationship between a private educational institution and an enrolled student is contractual in nature; therefore, a student can bring a cause of action against said institution for breach of contract where the institution ignores or violates portions of the written contract.").

pseudonymity if "other similarly situated litigants [would] be deterred from litigating claims that the public would like to have litigated." *Megless*, 654 F.3d at 410. Conversely, *Megless* requires the Court to consider the "universal level of public interest in access to the identities of the litigants." *Id.* at 409.

There is a general public interest in open courts. However, this interest is present in all civil litigation and cannot outweigh the factors in support of pseudonymity if they are found to "tip in favor of plaintiff's use of a pseudonym." *Doe v. Provident Life & Accident Ins. Co.*, 176 F.R.D. 464, 469 (E.D. Pa. 1997). Plaintiffs' lawsuit is in the public interest: They are seeking to prosecute Haverford's violations of Title VI, a statute banning discrimination on the basis of race, color, or national origin under any program or activity receiving federal financial assistance. *See* 42 U.S.C. § 2000d. If HJSB and HJSC are forced to litigate this case under their own names, other potential plaintiffs who are aggrieved by antisemitism at Haverford and other universities would likely be deterred from pursuing important civil rights litigation against them. While it is true that one individual plaintiff in this case, Ally Landau, is suing in her own name, she graduated from Haverford in May 2024, and thus she is no longer studying and living in Haverford's hostile atmosphere.

Accordingly, the public interest in maintaining the confidentiality of Plaintiffs' names outweighs the universal public interest in open courts.

> 4.    *There is no particularly strong interest in knowing Plaintiffs' identities beyond the universal public interest in open courts.*

The fourth *Megless* factor supporting the use of a pseudonym is "[w]hether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities." *Megless*, 654 F.3d at 409. On the other side, *Megless* requires the court to consider "whether, because of the subject matter of this litigation,

the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained." *Id.*

Plaintiffs are young college students; their public exposure beyond Haverford's small campus is minimal. HJSB Decl. at ¶¶ 2, 11; HJSC Decl. at ¶¶ 2, 11. They are private figures, and there is no particularly strong interest in knowing their identities beyond the universal public interest in open courts. *See* HJSB Decl. at ¶ 11; HJSC Decl. at ¶ 11.  Knowledge of Plaintiffs' identities would not affect the public's understanding of this litigation. *See Stegall*, 653 F.2d at 186 ("Party anonymity [will] not obstruct the public's view of the issues joined or the court's performance in resolving them."); *Doe v. Evans*, 202 F.R.D. 173, 176 (E.D. Pa. 2001) ("although the public certainly has an interest in the issues…Doe's complaint raises, protecting her identity will not impede the public's ability to follow the proceedings").

Accordingly, there is no particularly strong interest in knowing Plaintiffs' identities beyond the universal public interest in open courts.

> 5.    *Plaintiffs will be forced to reconsider their participation in this case if they are ordered to identify themselves.*

The fifth *Megless* factor is "the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified." *Megless*, 654 F.3d at 409. Due to the religious harassment and social and academic harm that would follow from disclosure of Plaintiffs' identities, they will be forced to reconsider their participation in this case if the Court orders them to litigate under their own names—especially if they cannot remain pseudonymous while they remain enrolled at Haverford. *See* HJSB Decl. at ¶¶ 4-10, 12; HJSC Decl. at ¶¶ 4-10,12.

> 6.    *Plaintiffs do not have illegitimate ulterior motives in seeking to litigate pseudonymously—but Haverford's motive for its opposing position appears to be illegitimate.*

11

*Megless* also considers "whether the party seeking to sue pseudonymously has illegitimate ulterior motives" and, on the other side, "whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated." *Megless*, 654 F.3d at 409. Plaintiffs have no illegitimate ulterior motives in seeking to litigate pseudonymously. As stated above, Plaintiffs are legitimately and reasonably concerned that litigating in their true names would trigger antisemitic harassment and social and academic harm.

In Haverford's Motion to Dismiss Plaintiffs' First Amended Complaint, the College argues that the people have a right to know who is using the courts and that defendants have a right to confront their accusers. (ECF 17 at 30).[4] Plaintiffs acknowledge the general rule on open litigation, but they have rebutted it in their arguments above. Haverford will also have the right to confront its accusers, as Plaintiffs' counsel will identify HJSB and HSJC to Haverford's counsel and to the Court (under seal) if Haverford's pending Motion to Dismiss is denied in any respect. The attached proposed order, if granted, would require Plaintiffs to identify themselves in this manner.

Haverford's primary stated objection to Plaintiffs using pseudonyms is that they allegedly "repeatedly identify by name numerous individuals with opposing views in pejorative and inflammatory terms," including a "specific third-party student." (ECF 17 at 30-31.) Haverford argues that courts "generally reject plaintiffs' anonymity concerns where they have failed to extend the same consideration to others, even defendants." (ECF 17 at 31.) *Megless* does not mention this consideration, and Haverford attempts to support it only by citing *Doe v. Trustees of*

---

[4] Prior to filing this motion, Plaintiffs' counsel asked Haverford's counsel whether they would contest it (including the alternative relief of Plaintiffs using pseudonyms only for as long as they remain enrolled at Haverford) and—if so—to provide any rationale beyond what they stated on pages 22-23 of their memorandum in support of their Motion to Dismiss (ECF 17). Haverford's counsel responded that they could not state with certainty whether they would oppose the motion, and they did not provide a rationale in the event that they chose to oppose it.

*Indiana Univ.*, 101 F.4th 485, 492 (7th Cir. 2024). However, the *Indiana* case does not rest on

the plaintiff's decision to identify others in his complaint. *Indiana* merely critiques the plaintiff's

desire to use a pseudonym to protect his reputation when he named other individuals in his

complaint—particularly when the plaintiff had already "used secrecy to deceive another entity."

*Indiana Univ.*, 101 F4th at 492. The actual holding denying pseudonymity in *Indiana* is that the

district court abused its discretion by permitting the plaintiff to use a pseudonym "without

finding that he is a minor, is at risk of physical harm, or faces improper retaliation (that is,

private responses unjustified by the facts as determined in court)." *See id.* at 493.

Moreover, as the FAC makes clear, the "specific third-party student"[5] whose identity

Haverford refers to in its moving papers received nothing but applause in response to his

identification in Plaintiffs' original complaint. During Haverford's May 2024 commencement—

following the filing of the original complaint—the College chose to give this individual a

prestigious award even after, and indeed *because,* he bragged on social media about tearing

down Chabad posters on campus. (ECF 14 at 52-53 (¶¶ 353-356), 107-108 (¶¶ 353-356).) His

identity could not reasonably have been kept confidential even if the Amended Complaint did

not identify him. On May 18, 2024, the College itself publicly identified this student in an online

version of its Commencement Program. *See* J. Marcus Decl. at ¶8.  Plaintiffs' identification of

this individual in their pleadings injured no one, and was not in any way improper.

The other individuals named in the Amended Complaint are Haverford administrators,

faculty, and staff that knew about or participated in the discrimination that Plaintiffs are alleging

or they are otherwise contextually relevant. Further, it is routine and unremarkable to name high-

---

[5] On information and belief, this individual graduated from Haverford in May 2024, and is therefore no longer a
student.

level administrators accused of playing a direct role in discrimination for the purpose of giving adequate notice to a defendant.[6] Further, even if these individuals were only identified by their title at Haverford (e.g. "President," "Dean of the College," "Provost"), they would be easily identifiable.

Haverford's motives for opposing pseudonymity appear to be illegitimate. As noted above, Haverford's President knows there is a "growing concern about antisemitism" on its campus, that Jews on campus are being "disrespected," "shunned," or "worse," and that Jews are avoiding specific events on campus so that they are not "disrespected for holding a minority viewpoint." *See* Exhibit A to J. Marcus Decl. Further, Dean McKnight knows that a recent lecture addressing antisemitism on campus attracted so much hostility that attendees were concerned for their "safety and security." *See* Exhibit B to J. Marcus Decl.. Given that the College knows about the harm that antisemitic forces are causing on its campus, one has to question why the College wishes to subject Plaintiffs to the risk of retaliation by seeking to unmask them. We suspect that Haverford is keenly aware of its liability in this case, and its strategy for avoiding liability is to subject Plaintiffs to such a high risk of harm that they will be deterred from participating in this case. Accordingly, we believe that Haverford's motives for opposing pseudonymity are illegitimate.

### III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request leave to continue using their pseudonyms for the remainder of this litigation and to limit disclosure of their true names to the parties, their counsel, and to persons employed in the law offices of their counsel. Alternatively,

---

[6] Notably, Haverford also repeatedly complains that the Amended Complaint is "vague" and that it fails to provide adequate notice of the claims against it.  (ECF 17 at 9, 27, 30, 47.)

should the Court decline to grant Plaintiffs leave to use their respective pseudonyms for the remainder of this litigation, then Plaintiffs request that the Court permit them to use their pseudonyms for as long as they are enrolled at Haverford.

Respectfully submitted,

Jerome M. Marcus
PA Attorney ID 50708
Lori Lowenthal Marcus
PA Attorney ID 5338
THE DEBORAH PROJECT
P.O. Box 212
Merion Station, PA 19066
(610) 880-0100 (tel.)
(610) 664-1559 (fax)

*Counsel for Plaintiffs*

Date: November 8, 2024

**<u>CERTIFICATE OF SERVICE</u>**

I, Jerome M. Marcus, hereby certify that on the date set forth below, the foregoing

document will be filed electronically and made available for viewing and downloading from the

ECF system. Service will be made electronically on the following persons:

Jerome M. Marcus
jmarcus@marcuslaw.us

Joshua W.B. Richards
joshua.richards@saul.com

Levi R. Schy
levi.schy@saul.com

Jerome M. Marcus

Date: November 8, 2024