**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ALLY LANDAU, HJSB, HJSC, and JEWS AT HAVERFORD | : : : : | CIVIL ACTION NO. No. 2:24-cv-02044-GAM |
| Plaintiffs, | : : | |
| v. | : : | |
| THE CORPORATION OF HAVERFORD COLLEGE | : : : | |
| Defendant. | | |

**HAVERFORD COLLEGE'S REPLY IN SUPPORT OF ITS**
**MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

**INTRODUCTION**

Plaintiffs' Opposition ("Opp.") to Haverford's Motion to Dismiss ("Motion" or "MTD") focuses principally on two themes: Plaintiffs' alleged personally-held religious beliefs and the alleged experience of a range of nonparties and their impact on Plaintiffs' description of the culture of Haverford's campus. For different reasons, neither has a material impact on the question of whether Plaintiffs have stated a claim in this lawsuit.

As explained in the College's Motion, "Haverford takes no stance on what constitutes the closely-held religious beliefs of any individual or group, and this Court need not make any such determination here." (MTD at 28). Plaintiffs' efforts to suggest otherwise distract from the real issue: whether Plaintiffs have alleged facts that support a plausible conclusion that they were exposed to unlawful harassment because of their immutable status as ethnically Jewish (since Title VI protects against discrimination on the basis of race and national origin, not religion) or merely alleged that they were criticized because of the opinions about Israel and Gaza that they allege that they have espoused.

Instead of focusing on the governing legal standards, Plaintiffs spend a great deal of their Opposition describing the experiences of nonparties in terms that often stray far outside (or contradict) the allegations of the First Amended Complaint ("FAC"). But as explained below, Plaintiffs cannot show that they have been exposed to a hostile environment, to which the College has been deliberately indifferent, by discussing the experiences of others.

As explained in the College's Motion and below, Plaintiffs have failed to state a claim of a hostile environment under Title VI (Count I) or breach of contract (Count II) against the College. Plaintiffs fail to allege harassment on the basis of race, color, or national origin that would bring their claims within the purview of Title VI. Plaintiffs also fail to allege severe, pervasive, and objectively offensive harassment as is required to sustain a Title VI hostile environment claim.

And even if Plaintiffs did allege actionable harassment under Title VI, their allegations confirm that Haverford's response to any actionable harassment was not deliberately indifferent. Each of those deficiencies is, independently, fatal to Plaintiffs' Title VI claim. Plaintiffs likewise fail to cite any support from case law or the College's written policies establishing any contractual obligation breached by Haverford, and thus their breach of contract claim should be dismissed as well.

## ARGUMENT

**I.     Plaintiffs have failed to address the fatal deficiencies of their Title VI claim.**

In its Motion to Dismiss, the College argued that Plaintiffs failed to allege facts supporting a conclusion that: (1) they were subject to harassment on the basis of their race, color or national origin, (2) any Plaintiff experienced harassment that is severe, pervasive, and objectively offensive, and (3) Haverford was deliberately indifferent to any such harassment of which the College had notice. Because these deficiencies cannot be cured by amendment (and because Plaintiffs have had ample opportunity to make such amendments in light of Haverford's original motion), Plaintiffs' Title VI claims should be dismissed with prejudice.

**A.     Plaintiffs have failed to show how their FAC alleges harassment on the basis of race, color, or national origin.**

Title VI prohibits discrimination on the basis of "race, color, or national origin." Courts around the country (as well as the Department of Education Office for Civil Rights ("OCR")[1])

---

[1] In support of their position, Plaintiffs argue that OCR "has determined that attacks on Zionism constitute attacks on Jews' shared ancestry and ethnic identity." (Opp. at 25). But that both overstates OCR's legal guidance and bears little on the Court's analysis here. Administrative interpretation of Title VI is just that – how a federal agency enforces the law. It is not binding on courts in civil claims, nor, in a post-*Chevron* legal landscape, are such interpretations afforded any deference. *See Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2273 (2024) (holding that, under the Administrative Procedure Act, courts "may not defer to an agency interpretation of the law simply because a statute is ambiguous"). In any event, Plaintiffs' reliance on agency guidance is misplaced, as they ignore OCR's clear statements that speech criticizing the government or policies of a specific country (using criticism of "the government of Israel's treatment of non-Jewish people" as an illustration) "would not likely implicate Title VI". *See* Dear Colleague Letter: Protecting Students from Discrimination, such as Harassment, Based on Race, Color, or National Origin, Including Shared Ancestry or Ethnic Characteristics, p. 17, Office for Civil Rights, U.S. Dep't of Education

2

have made clear an individual's religious identity – that is, their status as a Jew, a Christian, a Muslim, a Sikh, and so on – is only covered under Title VI insofar as that religious identity is inextricably intertwined with their race, color, or national origin. (MTD at 25-26). The status of belonging to a certain ethnic group is what is protected by Title VI, not one's specific religious practices or views within that group. *See* 42 U.S.C. § 2000d (enumerating protections for discrimination on the basis of race, color, and national origin, but not religious practice).

By focusing so acutely on their personally held religious beliefs (as opposed to an ethnic identity), Plaintiffs have illustrated why their allegations are not actionable under Title VI. Plaintiffs' allegations make clear that they and alleged members of the plaintiff organization have not been targeted because of their color, race, or national origin. Instead, Plaintiffs allege, and argue in their Opposition, that they were allegedly harassed based on their specific, personally-held, views about Israel – views that any individual could hold, regardless of race, color, or national origin. Indeed, Plaintiffs concede the possibility that for individuals who don't share Plaintiffs' exact beliefs, "the existence or non-existence of the Jewish state is, indeed, merely political." (Opp. at 24 n.3). By Plaintiffs' logic, if an areligious Haverford student experienced the exact same alleged treatment in response to his support for Israel as a Jewish state and Israel's treatment of Gaza, Title VI would provide legal recourse to Plaintiffs, but not to their areligious classmate (which suggests the inverse could be true as well). That position is difficult to square with the antidiscrimination purposes of the civil rights statutes.

In sum, Plaintiffs' allegations and Opposition confirm that the characteristic for which they allege to have been "harassed" is their set of personal views on Israel, its geographic boundaries, government policies, and military actions in Gaza. Even if those views were actually religious in

---

(May 7, 2023), *available at* https://www.ed.gov/sites/ed/files/about/offices/list/ocr/letters/colleague-202405-shared-ancestry.pdf (accessed Nov. 22, 2024).

nature, criticizing those views is not discrimination on the basis of race, color, or national origin, and it is not actionable under Title VI.

Plaintiffs' Opposition likewise fails to meaningfully engage with Haverford's arguments and authority setting the bounds of Title VI. Instead of contending with the disconnect between political views on Israel and national origin discrimination, Plaintiffs deflect, relying on immaterial factual distinctions in the authority cited by Haverford. But the case law is clear: individual religious beliefs are not protected under Title VI. For example, in *Zinman*, the plaintiff, a Jewish student, asserted that the defendant's mask mandate as enforced against him was discriminatory in violation of Title VI because the mandate violated his specific religious beliefs which he attributed to Judaism. *See Zinman v. Nova Se. Univ.*, Inc., No. 21-CV-60723, 2021 WL 4025722, at *1 (S.D. Fla. Aug. 30, 2021). The court rejected that argument because Title VI does not apply to personal religious beliefs:

> [T]his issue pertains to a religious belief, not a racial characteristic. If the Court were to accept Plaintiff's argument, then one who discriminates against a Jewish person would automatically be liable for discrimination based on race, religion, and national origin, without any regard to what the nature of the discriminatory act was. Such a broad and overgeneralized position, however, is untenable.

*Id.* at *8.[2]

Plaintiffs also misread case law from this Court that is on all fours. In *Tannous v. Cabrini University*, the plaintiff, a university professor of Palestinian descent, was fired for public comments he made that were critical of Israel and characterized by some as antisemitic. 697 F.

---

[2] Other cases cited in Haverford's Motion stand for the same proposition. *See Lubavitch-Chabad of Illinois, Inc. v. Nw. Univ.*, 6 F. Supp. 3d 806, 816 (N.D. Ill. 2013) ("Title VI does not provide for protection against discrimination on the basis of religion—only race, color, or national origin."); *Weiss v. City Univ. of New York*, No. 17-CV-3557 (VSB), 2019 WL 1244508, at *9 n.11 (S.D.N.Y. Mar. 18, 2019) ("Religious views are not a protected category under Title VI.") The religious beliefs discussed in these cases are varied, but the courts considering these issues have nonetheless consistently held that alleged discrimination on the basis of specific beliefs (even if assumed to be closely-held or religious) cannot serve as a basis for a Title VI claim. Plaintiffs' Opposition ignores *Doe v. Abington Friends School*, decided by this Court and cited in Haverford's Motion. (MTD at 25).

4

Supp. 3d 350, 355-58 (E.D. Pa. 2023), *on reconsideration in part*, 702 F. Supp. 3d 317 (E.D. Pa. 2023). The plaintiff alleged that he was discriminated against and subjected to a hostile work environment under Title VII because his public statements about Israel were assumed to be antisemitic due to his "color, race, and ethnicity," and specifically, his Palestinian heritage. *Id.* Plaintiffs here have made similar allegations, asserting that their pro-Israel views have been labeled as racist and supportive of genocide. (*See, e.g.* FAC ¶¶ 14, 141, 304, 312, 380, 384).

Plaintiffs rely heavily on these allegations to support their Title VI claim, arguing that by being labeled as such, they are being targeted due to their status as Jews. But *Tannous* dispels that notion. There, this Court rejected the argument that by labeling his views on the Israel-Palestine conflict as antisemitic, the plaintiff was being targeted on the basis of his Palestinian identity.

> [Plaintiff] alleges that his employer wrongfully accused him of antisemitism because he is Palestinian-American. But, in so doing, [Plaintiff] equates a termination due to his race or ethnicity – invidious distinctions prohibited by law – with a termination due to a belief that his statements were antisemitic. These concepts are distinct. Even if the belief that his statements were antisemitic is unfair or incorrect, courts considering the issue have concluded that such conduct does not give rise to a cognizable claim under Title VII because it is not based on the employee's status as a protected minority.

*Tannous*, 697 F. Supp. 3d at 360 (internal citations omitted); *see also id.* at 359-60 ("[W]hile falsely accusing someone of being a racist is morally wrong, such conduct does not support a *prima facie* discrimination claim under Title VII.") (internal citations and quotes omitted). This Court also reasoned that the plaintiff's discrimination claim failed because he did not allege facts suggesting that the defendant university "would have reacted differently to a similarly situated non-Palestinian-American employee." *Id.* at 360.

The same applies here. Alleged harassment attacking Plaintiffs' views cannot support a theory that Plaintiffs have been targeted due to their race, color, or national origin as required to invoke Title VI, because the criticism of their views "provides a clear, non-race-based motive" for

the alleged conduct. *Id.* at 362. Plaintiffs fail to address this argument in their Opposition, instead focusing on language by the Court that it is "objectively reasonable" for an employer to be concerned about inflammatory language in their employees' public statements. (Opp. at 25-26). But that ignores the central holding of the case. Plaintiffs, like the plaintiff in *Tannous*, have failed to connect alleged harassment based on their pro-Israel views to harassment on the basis of race, color, or national origin. As such, their Title VI claims should be dismissed with prejudice.

> **B.    Plaintiffs have failed to allege severe, pervasive, and objectively offensive harassment.**

In its Motion to Dismiss, the College argued that Plaintiffs failed to allege facts, which, if true, would constitute conduct that is sufficiently severe, pervasive, and objectively offensive to be actionable under Title VI. Plaintiffs' argument in opposition relies on readily distinguishable case law.

First, Plaintiffs suggest that *Kestenbaum v. Harvard* supports their claim. It does not. *Kestenbaum* involved allegations that a law student and teaching fellow "assaulted a Jewish student" but was permitted to maintain his fellowship and teaching position at the university; that pro-Palestinian protestors physically "blockaded Jewish students in a study room;" and that Jewish students were "physically assaulted." No. CV 24-10092-RGS, 2024 WL 3658793, at *1-2 (D. Mass. Aug. 6, 2024).[3] Comparable allegations of physical violence and restraint are not at issue here.

Plaintiffs likewise wrongly suggest that *Frankel v. Regents of the University of California* supports their claim, but that case is even further afield than *Kestenbaum*. First of all, *Frankel* addressed only the plaintiffs' First Amendment Free Exercise claim, a claim not at issue in this

---

[3] Notably, the Court in *Kestenbaum v. Harvard* did not address whether alleged harassment based on an individual's support for Israel is actionable under Title VI.

6

case. No. 2:24-CV-04702-MCS-PD, 2024 WL 3811250, at *2-3 (C.D. Cal. Aug. 13, 2024). *Frankel* involved three specific, identified plaintiffs who each alleged specific instances where they were denied entrance to a part of campus because they refused to denounce their religious views. The plaintiffs also alleged that pro-Palestinian protestors installed an encampment on campus that "was rimmed with plywood and metal barriers," bolstered by "tents, canopies, wooden shields, and water-filled barriers," and "established checkpoints and required passersby to wear a specific wristband to cross them." *Id.* Comparable allegations are not at issue here, nor do the Plaintiffs in this case specifically allege what each Plaintiff experienced, as the plaintiffs did in *Frankel*.

Because Plaintiffs fail to allege severe, pervasive, and objectively offensive harassment actionable under Title VI, their Title VI claim should be dismissed with prejudice.

  **C.**   **Plaintiffs have failed to allege deliberate indifference by Haverford.**

Instead of addressing the many examples cited in Haverford's brief from the FAC in which the College expended significant effort and resources responding to concerns about alleged antisemitic conduct on campus, Plaintiffs rely on conclusory arguments that the College and its administrators "did nothing." But the Court need look no further than Plaintiffs' own pleading to contradict that unsupported conclusion. Limited examples of the College's efforts, as alleged by Plaintiffs, are repeated below:

- The College granted and facilitated a platform for Landau to deliver a presentation to the student body regarding her views on the Israel-Palestine conflict. (FAC ¶¶ 195-99).

- The College supported and assisted Landau in sending a letter to the entire College community voicing her concerns and advocating for her position. (FAC ¶¶ 238-39).

7

- The College President met with Landau and her parents to address concerns about the "Haverford Grievances Document" and coordinated the removal of Landau's name from that document in response to those concerns. (FAC ¶¶ 246, 249).

- The College ended a pro-Palestinian "sit-in" on campus to ensure "the abilities of fellow students to pursue their studies and the abilities of staff and faculty to conduct their work." (FAC ¶ 265, Ex. F at 37).

- The College removed pro-Palestinian "troublemakers" who disrupted Haverford's 2024 commencement ceremony. (FAC ¶ 341).

- The College facilitated the involvement of Jewish students "committed to Zionism and the existence of Israel as a Jewish state" in developing Customs (orientation) programming which included a presentation about "combating harmful rhetoric" including antisemitism. (FAC ¶¶ 368-71, 375-76, Ex. F at 2, 16, 17).

Plaintiffs make clear in their FAC and again in their Opposition that they consider the College's response to be insufficient because, among other things, Haverford declined to publish specific statements at Landau's direction; failed to react to campus events in Plaintiffs' preferred manner, or delivered awards at graduation (as voted on by members of the student body) to individuals whom Plaintiffs consider to be undeserving. But courts afford schools "substantial deference in cases of alleged student-on-student harassment; victims of harassment have, for example, no 'right to make particular remedial demands.'" *Dawn L. v. Greater Johnstown Sch. Dist.*, 586 F. Supp. 2d 332, 369 (W.D. Pa. 2008) (quoting *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999)). Rather, deliberate indifference requires "an official decision by the recipient [of federal funds] not to remedy the violation[s]." *Id.* (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)).

Plaintiffs have failed to allege facts that meet that stringent standard and they fail to cite any legal authority suggesting any other standard should apply. In fact, Plaintiffs wholly ignore *StandWithUs v. M.I.T.*, cited by Haverford (MTD at 32-34), holding that, under very similar circumstances, the plaintiffs failed to allege deliberate indifference where the defendant university took steps, even if arguably ineffective, to address the alleged issues. No. CV 24-10577-RGS, 2024 WL 3596916 (D. Mass. July 30, 2024). Because Plaintiffs have failed to allege deliberate indifference as required to sustain their Title VI claims, dismissal of such claims with prejudice is appropriate.

II. **Plaintiffs may not plead their claims by aggregating their individual allegations or relying on allegations that have no connection to Plaintiffs.**

Plaintiffs' argument that any alleged incident involving any member of the Haverford community, whether on-campus, off-campus, or over the internet, can support a hostile environment claim brought by any Haverford student, is wrong.[4] Plaintiffs of course fail to cite any legal authority supporting the proposition that a plaintiff can adequately state a Title VI hostile environment claim by relying on vague allegations of conduct involving unidentified individuals without alleging how the plaintiff was impacted by or even aware of such conduct. Such a sweeping imposition of legal risk on the College is unsupported by the law and should be rejected.[5]

---

[4] By way of limited example, Plaintiffs continue to reference allegations that a student who had been admitted to and enrolled at Haverford ultimately chose not to attend the College based on his interactions in a "chat group" with other incoming students. (Opp. at 7, 33). Beyond conceding that this individual is neither an enrolled Haverford student, plaintiff in this case, or member of "Jews at Haverford," Plaintiffs offer no allegation that any individual Plaintiff or alleged member of the plaintiff association was impacted by or even aware of this alleged incident. Thus, this and similar allegations that fail to allege any impact or awareness by a Plaintiff or member of the plaintiff association are irrelevant to this litigation and should be ignored.

[5] The cases cited by Plaintiffs provide no support for their novel theory. For example, the Title VII hostile environment claim in *Sharp v. S&S Activewear, L.L.C.* was based on allegations that managers played "sexually graphic, violently misogynistic" music "[b]lasted from commercial-strength speakers" in the plaintiffs' enclosed workplace. 69 F.4th 974, 977 (9th Cir. 2023). Plaintiffs purport to quote from *Reeves v. C.H. Robinson Worldwide, Inc.*, but counsel is unable to locate the quoted language anywhere in that opinion. In any event, that case involved a hostile environment claim by a specific plaintiff based on allegations of offensive conduct which the plaintiff specifically alleged to have witnessed and experienced first-hand. *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798 (11th Cir. 2010). Link

Plaintiffs assert that because "Haverford is a small and intimate campus," each and every incident alleged in the FAC should automatically be considered to have been universally known and experienced, without limitation. (Opp. at 31). Not so. *Berryman v. SuperValu Holdings, Inc.*, 669 F.3d 714, 719 (6th Cir. 2012) (holding that the "public nature" of alleged harassment does not warrant an assumption that a plaintiff was aware of such events). Just because a hostile environment claim is to be analyzed considering the totality of the circumstances "does not stand for the broader proposition that a group of plaintiffs may aggregate all of their claims regardless of whether they were aware of one another's experiences or not" because "[i]mplicit in the consideration of the totality of the circumstances is that a plaintiff was aware of the harassment that was allegedly directed toward other [individuals]." *See Berryman,* 669 F.3d at 718. Because the individual Plaintiffs' claims cannot be supported by alleged incidents where a specific Plaintiff or member of "Jews at Haverford" is not alleged to have been specifically aware of or impacted by the alleged incident, allegations regarding such incidents should be ignored.

### III. Plaintiffs have failed to establish standing to pursue their claims.

Where, like here, an action is brought by multiple plaintiffs and their standing is challenged, "the Court must inquire into the standing of each plaintiff or class of plaintiffs." *City of Philadelphia v. Klutznick*, 503 F. Supp. 663, 671 (E.D. Pa. 1980) (citing *Warth v. Seldin*, 422 U.S. 490, 502 (1975)). Because Plaintiffs cannot aggregate their individual allegations to satisfy their pleading requirements for either claim, the anonymous members' allegations must stand on their own and, as discussed in Haverford's Motion, the five paragraphs containing vague and non-

---

*v. Trinity Glass Int'l, Inc.* was based on evidence provided by two plaintiffs about harassment in the workplace that they experienced. No. CIV.05-6342, 2007 WL 2407101 (E.D. Pa. Aug. 22, 2007). *L. T. v. Eleanor Murray Fallon Middle Sch.* involved a minor plaintiff and allegations of several specific instances where plaintiff was specifically targeted by instances of racial harassment. No. 24-CV-00110-TSH, 2024 WL 3678014 (N.D. Cal. Aug. 5, 2024).

10

specific allegations concerning the anonymous members fail to allege facts establishing that they would have standing to sue in their own right. (MTD at 17-21). Landau also lacks standing because she has not alleged that she suffered an injury in fact and she lacks standing to pursue the injunctive relief sought in the FAC. (*Id.* at 21-22). It follows that Jews at Haverford lacks standing because none of its alleged members would have standing to sue in their own right and Jews at Haverford lacks standing to pursue the injunctive or monetary relief sought on its alleged members' behalf. (*Id.* at 21-22). The fact that Plaintiffs have refused to disclose the identities of the anonymous members has further frustrated the ability of Haverford and the Court to evaluate whether Plaintiffs have satisfied their obligation to establish standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("The party invoking federal jurisdiction bears the burden of establishing [standing].")

### IV.    Plaintiffs fail to address the fatal deficiencies of their purported breach of contract claim.

In its Motion to Dismiss, Haverford argued that the FAC failed to identify, as required by Pennsylvania law, a "specific and identifiable promise" set forth in Haverford's written materials that was breached by the College or how any alleged breach resulted in damages with regard to any specific Plaintiff or member of "Jews at Haverford." (MTD at 36-39). Plaintiffs fail to address these deficiencies in their Opposition.

Instead of engaging with the actual text of the policies, Plaintiffs present their own subjective interpretations of the College's policies and other imagined contractual obligations. But Plaintiffs are not entitled to their conclusory allegations and legal conclusions regarding the College's contractual obligations, particularly in light of express, written documents establishing those obligations. *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993) (holding that courts may consider documents attached to a motion to dismiss when the plaintiff's claims are based on such documents because "[o]therwise, a plaintiff with a

11

legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied"); *see also Kortyna v. Lafayette Coll.*, No. CV 15-4625, 2017 WL 1134129, at *12 (E.D. Pa. Mar. 27, 2017), *aff'd*, 726 F. App'x 934 (3d Cir. 2018) ("A plaintiff cannot maintain a claim by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement [did not support the claim].") (internal cites and quotes omitted).

In any event, Plaintiffs have not established a contractual right to dictate how the College responds to events on campus, dictate the content of the College's campus-wide and public communications, dictate who receives awards at graduation (and certainly not for whom their classmates vote to receive such awards), or dictate the College's programming and contents thereof. Plaintiffs fail to point to any specific written promise by Haverford suggesting otherwise, nor do Plaintiffs support their claim with any legal authority.[6]

Plaintiffs have failed to carry their burden to state a claim for breach of contract, and have failed to address the issues raised in Haverford's Motion. As such, their breach of contract claim should be dismissed with prejudice.

### V.    Plaintiffs are not permitted to amend their pleading through their Opposition Brief, and any attempts to do so should be rejected.

Plaintiffs devote a significant portion of their Opposition to repeating – and attempting to expand – the allegations in their FAC. Plaintiffs' arguments that they have stated a claim are further complicated by their reliance on facts argued in their Opposition but found nowhere in their FAC. Plaintiffs of course are not permitted to amend their pleading via their Opposition, and thus the

---

[6] Plaintiffs also fail to support any argument that their purported breach of contract claim can be asserted by aggregating allegations involving different Plaintiffs, non-plaintiffs, and wholly unidentified individuals (nor can they). Thus, the bare bones allegations asserted by or on behalf of the anonymous students or other unnamed, non-party students fail to state a claim for breach of contract and should be dismissed.

12

Court should disregard any such attempts. *See Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."); *Curry v. Devereux Found.*, 541 F. Supp. 3d 555, 560 (E.D. Pa. 2021) (disregarding facts not alleged in complaint in considering motion to dismiss).

For example, Plaintiffs improperly inject into their Opposition facts about an antisemitism awareness event on campus involving the Anti-Defamation League, purportedly occurring weeks after the FAC was filed. (Opp. at 36-37, Ex. B). Plaintiffs also argue that the College, and Dean McKnight specifically, unilaterally cancelled an antisemitism awareness component to a women's basketball game, (Opp. at 11, 18, 32), but the FAC contains no such allegations, and specifically alleges that it was Landau herself who cancelled the event. (FAC ¶¶ 46, 275). Plaintiffs argue that they have alleged that a Professor Ha explicitly "denounced the Plaintiffs" (Opp. at 10), though the FAC is devoid of any allegation that Professor Ha made any statement referencing or targeting any specific individual (let alone a specific Plaintiff). Plaintiffs falsely attribute language about targeting professors with specific beliefs to Haverford officials (Opp. at 11, 31), when in reality, the FAC shows that the quoted language is actually from a statement made by an individual, unaffiliated with the College, during a Zoom with Columbia University students, referencing a Columbia professor, and is thus entirely irrelevant to Haverford. (FAC ¶ 189). Finally, Plaintiffs suggest in their Opposition that the FAC alleges that at an encampment set up by pro-Palestinian protestors, "no students who did not share the protestors' agenda were admitted." (Opp. at 29). Again, no such allegation exists in the FAC, let alone an allegation that any specific Plaintiff or member of "Jews at Haverford" attempted to gain and/or was denied access to the alleged "encampment." (*See, e.g.*, FAC ¶¶ 325-329).

13

Plaintiffs have had ample opportunity to allege facts in support of their case, including the benefit of amendment in response to Haverford's arguments set forth in its prior motion to dismiss the original complaint. Plaintiffs' attempts to amend and alter those allegations via their Opposition brief are improper and should be rejected.

## CONCLUSION

For the foregoing reasons, the reasons set forth in Haverford's primary brief, and any other reasons that may appear to the Court, Haverford College respectfully requests that the Court dismiss Plaintiffs' First Amended Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, Rule 12(b)(6).

Respectfully submitted,

**SAUL EWING LLP**

Date: November 22, 2024

s/ *Joshua W. B. Richards*
Joshua W. B. Richards/204315
Levi R. Schy/329199
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA  19102
(215) 972-7737 (Richards)
(215) 972-7803 (Schy)
Joshua.Richards@saul.com
Levi.Schy@saul.com
*Attorneys for Haverford College*

## CERTIFICATE OF SERVICE

I, Joshua W. B. Richards, certify that on this date I filed via the ECF system a true and correct copy of the foregoing **REPLY IN SUPPORT OF MOTION TO DISMISS**, which constitutes valid service on the following registered users:

Jerome Marcus
Marcus & Marcus LLC
P.O. Box 212
Merion Station, PA 19066
jmarcus@marcuslaw.us

*Attorney for Plaintiffs Ally Landau, HJSB, HJSC, and "Jews at Haverford"*


Date: November 22, 2024                s/ *Joshua W. B. Richards*
                                       Joshua W. B. Richards/204315
                                       Centre Square West
                                       1500 Market Street, 38th Floor
                                       Philadelphia, PA 19102
                                       (215) 972-7737
                                       Joshua.Richards@saul.com

                                       *Attorney for The Corporation of Haverford College*