IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALLY LANDAU, HJSB, HJSC, and JEWS AT HAVERFORD, | : : | |
| Plaintiffs, | : : | Civil Action No. 2:24-cv-02044 (GAM) |
| v. | : : | |
| THE CORPORATION OF HAVERFORD COLLEGE, | : : : | |
| Defendant, | : | |

SURREPLY MEMORAMDUM
IN OPPOSITION TO MOTION TO DISMISS

Haverford's Reply Brief in support of its Motion to Dismiss Plaintiffs' First Amended Complaint effectively abandons its principal argument that Title VI excludes the harms for which Plaintiffs seek relief. Haverford's remaining arguments are unpersuasive and inconsistent even with the authority Haverford itself musters in its Reply.

Haverford's first brief represented to this Court that Plaintiffs brought this lawsuit merely because others "disagree" with their "political views." *See* Haverford Brief in Support of its Motion to Dismiss the First Amended Complaint at 1-3, 19, 24-28. Haverford waxed poetic over the daylight between "criticism of the state of Israel or its actions" supposedly emanating from "critical inquiry and inclusive, intellectual learning" and *bona fide* "antisemitism" and "religious harassment warranting judicial intervention," *id.* at 2, 27, and argued that Title VI does "not protect [Plaintiffs] from being confronted with viewpoints that differ from their own, even when such viewpoints are closely tied to or informed by religious values." *Id.* at 28. This, Plaintiffs showed in their Opposition, is wrong for two reasons.

First, this case does not concern mere "disagreement": it is about a deliberate and concerted effort—implicating fellow students, professors, and administrators at Haverford—to delegitimize, denounce, shun, harass, exclude, and attack Plaintiffs and anyone else brave enough to explore the abiding connection between Israel and the Jewish People. Haverford offers absolutely no answer in its Reply to the extensive collection of concrete allegations in the Amended Complaint showing that this case has nothing to do with open-minded, critical thinking. We are talking here about Haverford's President and senior staff dignifying repeated student and faculty demands that Plaintiffs be censored and banned from campus for expressing viewpoints that are central to their identity as Jews, as well as a plethora of other organized incidents and events, up to and including the College's graduation ceremony, attacking all people

1

who share the Plaintiffs' fundamental commitments. *See generally* Opposition Br. at 9-19. Haverford now appears to admit that all this can only be described as "harassment." Reply at 2-7. And Haverford cannot persuasively distinguish calls for censorship and expulsion on its campus from threats of "physical violence" and Jewish students being "denied entrance to a part of campus" elsewhere, Reply at 6-7, because both of the latter have in fact been alleged here. *See* Amended Compl. ¶¶ 30, 47, 154, 202-04, 298, 329, 377, 392-93.[1]

Second, Haverford continues to tell this Court that "merely political" and "personal views about Israel" are at issue. Reply Br. at 3. Thus, Haverford contends that the case should be dismissed because it concerns only "criticism of [Plaintiffs'] views," which "'provides a clear, non-raced based motive' for the alleged conduct." *Id.* at 5-6 (quoting *Tannous v. Cabrini University*, 697 F. Supp.3d 350, 362 (E.D. Pa. Oct. 4, 2023)).[2] But the Amended Complaint, and Plaintiffs' Opposition, show that this is wrong. What is at issue is not Plaintiffs' policy positions on "Israel, its geographic boundaries, government policies, and military actions in Gaza," *id.* at 3—in fact, Plaintiffs do not necessarily share any single point of view on these or other

---

[1] Nor does Haverford identify *any* disciplinary consequences it imposed on serial wrongdoers, let alone measures comparable to the "evolving and progressively punitive response" Judge Stearns found to be "not … clearly unreasonable" in *StandWithUs v. MIT*, 2024 WL 3596916, at *5 (D. Mass. July 30, 2024) (recognizing how MIT "began by suspending student protestors from non-academic activities" and "suspending one of the most undisciplined of the pro-Palestine student groups," then "warned students of [further] impending disciplinary action," and finally, when its "attempt to peacefully clear the encampment proved futile, [MIT] suspended and arrested trespassing students").

[2] Remarkably, Haverford claims that *Tannous* is "on all fours," Reply at 4, without once acknowledging that in that case the *plaintiff* drew attention to himself by publicly stating "that Israel should be 'eradicated' and characterizing it as a 'Nazi' state," such that this Court found "it would be objectively reasonable for any employer to be concerned about such a choice of language, regardless of the author's ethnic identity." 697 F. Supp. 3d at 360. Haverford has not identified *any* statements on the part of Jews at Haverford (or anyone else) "cast in [such] a particularly inflammatory tone," *id.* at 361, that "it would be objectively reasonable" for Haverford to condone the ongoing campaign to denounce all Zionists as racist and genocidal.

2

important political questions. Instead, Plaintiffs have been attacked for a core manifestation of who they are as Jews, namely, their Zionism: "a central religious tenet of Judaism; a religious belief, and source of ethnic and national identity," as well as "an element of the ethnic and ancestral identity of the Plaintiffs in this case and of a great many other Jews throughout the world, whether they are religiously observant or not." Amended Compl. ¶¶ 57-58. The Amended Complaint alleges this in careful detail, showing that Plaintiffs' ethnic identity and shared ancestry – as *Plaintiffs* understand those things, not as Haverford purports to define them – are what is constantly being denounced, shunned, and excluded from Haverford's learning environment. By continuing to ignore how the label "Zionist" has become interchangeable for "racist" on Haverford's campus—not *in spite of* its intrinsic connection to Jewish identity, but precisely *because of* that connection—Haverford further betrays Plaintiffs with an antisemitic double standard. *See id.* ¶¶ 60-61, 112.

Haverford's Reply makes no effort to come to terms with this. All Haverford can say is that, because the Supreme Court has reversed *Chevron,* the Court can ignore the statements of the Department of Education's Office for Civil Rights to the effect that the commitment to Israel is, as Plaintiffs allege, an element of Jews' ethnic identity and shared ancestry. Reply at 2 n.1.

There is in fact no reason to ignore the OCR's statements, which have been consistently reiterated under both Democratic and Republican administrations, and which clearly say what Plaintiffs are saying here: that the commitment to Israel is an element of the ethnic identity and shared ancestry of Jews, and therefore that harassment on the basis of that commitment constitutes a violation of Title VI. *See* Amended Compl. ¶¶ 406-13; Opposition at 25 & n.5.

Even putting the OCR's statements aside, Haverford completely ignores Plaintiffs' demonstration that Rule 12, and the jurisprudence governing judicial respect for each person's

3

own definition of his or her beliefs, are independently sufficient to dispose of Haverford's argument. The Amended Complaint clearly alleges that Plaintiffs' ethnic identity and shared ancestry include the commitment to Israel, and Plaintiffs' Opposition demonstrated that the rules governing assessment of a Motion to Dismiss require that Plaintiffs' allegations be accepted as true at this stage of the case. Haverford completely ignores this argument.

Lastly, Haverford claims that Plaintiffs fail to state a hostile environment claim and lack standing on the theory that not every individual Plaintiff or member of Jews at Haverford was personally and individually victimized by each of the hostile acts and statements described by the Complaint. Haverford's own cases, and binding Circuit precedent, make clear that this is wrong.

*Berryman v. SuperValu Holdings, Inc.*, 669 F.3d 714 (6th Cir. 2012), cited in Haverford's Reply Brief at 10, forecloses Haverford's argument. There, the Sixth Circuit "rejected [] a myopic view of harassment that would limit claims only to those things that are directed at or witnessed by a particular plaintiff," and instead reaffirmed "a totality-of-the-circumstances test" under which "courts **should aggregate hostile work environment claims**, considering even those claims that were **not directed at a particular plaintiff** and those claims that **a particular plaintiff did not witness**." *Id*. at 718 (emphasis added). *Berryman* recognizes that as long as "a plaintiff was aware of the harassment that was allegedly directed toward other employees," the plaintiff has the right to invoke such harassment as evidence of a hostile environment. *Ibid.*[3] Third

---

[3] Haverford calls the Court's attention to the fact that a quotation in Plaintiffs' brief does not appear in *Reeves v. C.H. Robinson Worldwide, Inc*., 594 F.3d 798 (11th Cir. 2010). Haverford is correct; the quotation appears in the case cited immediately before the quote, *Sharp v. Activewear, L.L.C.*, 69 F.4th 974, 978 (9th Cir. 2023), rather than *Reeves,* which appears immediately after it. But *Reeves* stands for exactly the proposition that Plaintiffs invoke here, and that Haverford asks this Court to reject: "words and conduct that are sufficiently gender-specific and either severe or pervasive may state a claim of a hostile work environment, even if the words are not directed specifically at the plaintiff." 594 F.3d at 811.

4

Circuit law is the same on hostile environment claims under federal civil rights law. *See Nitkin v. Main Line Health*, 67 F.4th 565, 572 n.4 (3d Cir. 2023) ("[C]ourts may look to conduct directed at individuals other than the plaintiff in determining whether a hostile work environment exists."); *Hurley v. Atl. City Police Dep't*, 174 F.3d 95, 110 (3d Cir. 1999) ("[A] plaintiff may show that, while she was not personally subjected to harassing conduct, her working conditions were nevertheless altered as a result of witnessing a defendant's hostility towards other women at the workplace.").

There can be no question that each of the Plaintiffs and members of Jews at Haverford whose experiences are described and at issue in the Amended Complaint were aware of the incidents described in the pleading. *See* Amended Compl. ¶¶ 18-19, 46-50, 52-53. The Amended Complaint alleges the direct involvement of some of the Plaintiffs in certain of these events, and alleges clearly that all Plaintiffs, and members of Jews at Haverford whose experiences are before this Court, are aware of the remainder of these incidents. Few of these events involved private conversations behind closed doors, and reports of the handful of such private incidents were soon shared between and among Plaintiffs. *Ibid.*; Opposition at 31. Thus, Plaintiffs' collective awareness of these events in the aggregate is entirely plausible and, as Plaintiffs will prove at the appropriate time, indeed created a hostile learning environment for each of them.

Finally, Haverford continues to overlook its contractual promise that "the College's campus will be a place free of discrimination." Opposition at 39; *see* Amended Compl. ¶ 121 ("Haverford College is committed to providing an … educational environment free from all forms of unlawful discrimination because of race, color, [] religion, [] national origin, ancestry, citizenship, … or any other characteristic protected by law.") (quoting Haverford's Non-discrimination Statement). There is nothing vague or uncertain about Haverford's "specific and

5

identifiable promise" not to unlawfully discriminate against its students, including Plaintiffs. *Voltarelli v. Immaculata Univ.*, 614 F. Supp. 3d 158, 163 (E.D. Pa. 2022). Because Plaintiffs have plausibly alleged intentional discrimination under Title VI, they have also alleged a breach of this contractual promise. *See Astaraee v. Villanova Univ.*, 509 F. Supp. 3d 265, 271-75 (E.D. Pa. 2020) (McHugh, J.) (finding breach of contract claim plausible based on "the plain language of the Handbook" and observing that "Plaintiff has the right to develop [the relevant] facts in discovery before facing dismissal" on parallel Title VI claim for intentional discrimination).

For these reasons and those set forth in Plaintiffs' Memorandum in Opposition to Haverford's Motion to Dismiss the First Amended Complaint, the Court should deny that motion.

DATED: December 2, 2024                                                                     Respectfully submitted,

Jerome M. Marcus, PA Attorney ID 50708<br>
Lori Lowenthal Marcus, PA Attorney ID 5338<br>
THE DEBORAH PROJECT<br>
P.O. Box 212<br>
Merion Station, PA. 19066<br>
Voice: 610.880.0100<br>
FAX: 610.664.1559