IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALLY LANDAU, HJSB, HJSC, and JEWS AT HAVERFORD | : : : | CIVIL ACTION |
| v. | : : | No. 24-2044 |
| THE CORPORATION OF HAVERFORD COLLEGE | : : : | |

**McHUGH, J.**                                                                                            **December 13, 2024**

**MEMORANDUM**

### I.   Relevant Background

On May 13, 2024, Plaintiff "Jews at Haverford," which purports to be an association of individuals associated with Haverford College, initiated this Title VI action against Defendant Haverford College.  An amended complaint followed, adding Haverford Alumni Ally Landau and current students "HJSB" and "HJSC" as individual plaintiffs to the lawsuit.  Am. Compl., ECF 14, ¶¶ 45-50.  Plaintiffs generally contend that Haverford College both enables and perpetuates a hostile educational environment for its Jewish students and faculty who support the state of Israel, in violation of Title VI and assorted contractual promises between the school and its students.  Am. Compl. at 123-127.

Plaintiffs HJSB and HJSC now move to proceed under pseudonym in this case.  Pls.' Mot. for Pseudonym, ECF 24.  Haverford, to its credit, does not oppose the Plaintiffs' request to proceed under pseudonym in all public-facing filings.  Def.'s Resp. Mot. for Pseudonym, ECF 25, at 4 ("Def.'s Resp.).

But Haverford's consent does not end the inquiry, because open courts are a cornerstone of the U.S. judiciary.  Since pseudonyms interfere with the public's right to access judicial

proceedings, such motions must only be granted in exceptional circumstances. *See Doe v. Drexel Univ.,* No. 23-3555, 2023 WL 8373166, at *1 (E.D. Pa. Dec. 4, 2023) (citing *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011)). Therefore, although all parties agree that some plaintiffs may proceed under pseudonym in public-facing documents, this Court still must conduct a careful analysis.

## II. Standard of Review

It is an essential quality of U.S. Courts that proceedings are public. *See Daubney v. Cooper,* 109 Eng. Rep. 438, 441 (K.B. 1829). Federal Rule of Civil Procedure 10(a) encapsulates this principle by requiring that parties identify themselves. Fed. R. Civ. P. 10(a). But, in exceptional cases, courts in this Circuit allow plaintiffs to proceed anonymously. *Drexel Univ.,* 2023 WL 8373166, at *1. These cases typically involve deeply personal matters, such as "abortion, birth control, transsexuality, mental illness, welfare rights of illegitimate children, AIDS, and homosexuality." *Doe v. Borough of Morrisville*, 130 F.R.D. 612, 614 (E.D. Pa. 1990).

To determine whether there are exceptional circumstances warranting anonymity, courts must exercise their discretion to "balance a plaintiff's interest and fear [of disclosure] against the public's strong interest in an open litigation process." *Megless,* 654 F.3d at 408. In *Megless,* the Third Circuit adopted a nine-factor, non-exhaustive balancing test. *Id.* at 409-10 (endorsing the nine-factor test first articulated in *Doe v. Provident Life & Acc. Ins. Co*., 176 F.R.D. 464 (E.D. Pa. 1997)); *see also Doe v. Coll. of N.J.*, 997 F.3d 489, 495 (3d Cir. 2021).

The nine, non-exhaustive factors include:

(1) the extent to which the identity of the litigant has been kept confidential;

(2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases;

2

(3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity;

(4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities;

(5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified;

(6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives;

(7) the universal level of public interest in access to the identities of the litigants;

(8) whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigants' identities, beyond the public's interest which is normally obtained; and

(9) whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated.

*Megless*, 654 F.3d at 409-410 (internal citations omitted).

The first six factors generally favor anonymity, whereas the final three factors generally favor disclosure. The *Megless* test requires a "fact-specific, case-by-case analysis." *Coll. of N.J.*, 997 F.3d at 495.

### III. Discussion

Considering the foregoing principles, I will address each factor in turn.

#### A. The *Megless* Factors

##### 1. Plaintiffs' identities remain anonymous.

Courts first consider whether the litigants' identities have been kept confidential. The record suggests that they have. Neither HJSB nor HJSC have told any other Haverford student that that they are plaintiffs in this case. Decl. of HJSB (Nov. 8, 2024), ¶ 10, ECF 24-9; Decl. of HJSC (Nov. 8, 2024), ¶ 10, ECF 24-8. HJSB has not told any Haverford employees about her

3

participation in the case, and HJSC has only told one trusted professor about her involvement in confidence. *Id.* Haverford has also represented that even they cannot identify the anonymous plaintiffs. Def.'s Resp., at 3. Thus, this factor weighs in favor of pseudonymity.

### 2. *Plaintiffs narrowly show a reasonable fear of severe harm.*

The second consideration is whether Plaintiffs have a substantial basis on which to avoid disclosing their identities. For this factor to support anonymity, Plaintiffs must show "1) a fear of severe harm, and 2) that the fear of severe harm is reasonable." *Megless*, 654 F.3d at 408 (citing *Doe v. Kamehameha Sch./Bernice Pauahi Bishop Estate*, 596 F.3d 1036, 1043 (9th Cir. 2010)). "That a plaintiff may suffer embarrassment or economic harm is not enough." *Megless*, 654 F.3d at 408.

I start by identifying the harm that Plaintiffs fear and then evaluate whether it is sufficiently severe. Plaintiffs' alleged fears can be broken down into three categories: social stigmatization, academic harm, and threats to physical safety.

Plaintiffs first allege that if they were to reveal their identities, they would be subject to social ostracism. Plaintiffs state that they have already been shunned by peers who are aware of their beliefs about Israel, and fear that this isolation would only intensify. Pls.' Mot. for Pseudonym, at 4.

Plaintiffs next allege that their academic performance is in jeopardy. Plaintiffs contend that most classes at Haverford are "communal," where students are "expected to work together." Pls.' Mot. for Pseudonym, at 4. Plaintiffs allege that if the anonymous students' identities were known, it is likely that their classmates would refuse to engage with them, detrimentally impacting the anonymous students' academic experiences. Further, Plaintiffs allege that certain members of Haverford's faculty may penalize the students should they become aware of the students' beliefs

4

about Israel. *Id.* For example, Plaintiffs allege that one professor expressed that that he "would not provide any recommendations for students seeking to study either in Israel or about anything related to Judaism." Am. Compl. ¶ 303. This same professor purportedly referred to Jewish students who oppose his views and support the state of Israel as "racist genocidaires." *Id.* ¶ 304. This professor has allegedly not faced any penalty for these remarks. *Id.* ¶ 305. If these allegations are true, and if Plaintiffs were aware of these remarks, their ability to participate fully in their coursework could well be hindered by significant self-censorship and anxiety.

Courts in this Circuit do not recognize purely social and reputational harms, without more, as valid bases to prevail on this factor. *See Doe v. Princeton Univ.*, No. 20-4352, 2020 WL 3962268, at *3 (D.N.J. July 13, 2020) (A plaintiff's "fear of social stigmatization, loss of employment opportunity, or loss of educational opportunity are insufficient to support a plaintiff's request for anonymity."); *see also Doe v. Univ. of Pennsylvania,* No. 23-1613, 2024 WL 2575702, at *2 (3d Cir. May 24, 2024) (interlocutory appeal) (Plaintiff's allegation that proceeding under her true identity would limit her ability to be accepted to medical school or secure future employment was insufficient to show a threat of "severe harm."); *cf. Doe v. Weintraub,* No. 23-3252, 2023 WL 7928680, at *3 (E.D. Pa. Nov. 16, 2023) (a threat of severe harm existed where Plaintiff risked criminal prosecution if his identity were revealed during litigation.).

Here, in addition to the social and reputational fears alleged, Plaintiffs also express fear for their physical safety. In support, Plaintiffs reference an alleged incident where rowdy protestors disrupted a presentation on campus by the Anti-Defamation League entitled "Antisemitism 101." Pls.' Mot. for Pseudonym, at 6-7.[1] According to Plaintiffs, the night before the presentation,

---

[1] Plaintiffs attempt to amend their First Amended Complaint through their Memorandum in Opposition to the pending Motion to Dismiss by appending the facts of the Anti-Defamation League ("ADL") Incident. Pls.' Opp'n. to Mot. to Dismiss. This is not permitted. For purposes of the Motion to Proceed Under

protestors snuck into the room and zip tied all the blinds in the up position "to better intimidate those who assembled." Pls.' Opp'n. to Mot. to Dismiss, Ex. B, ECF 23, at 1. Plaintiffs further allege that during the presentation, a "mob" formed outside the presentation room, "screaming at the tops of their lungs, using bullhorns, banging on pots and pans, and pounding on the windows."[2] *Id.* Inside the presentation room, several masked students ripped off their sweatshirts and read messages from a prepared script, refusing to stop when confronted by John McKnight, Dean of the College. *Id.* at 2. Multiple staffers allegedly ran around the room in an effort to address the chaos, and the disrupting students were escorted out by campus security. *Id.*

For better or worse, confrontational and disruptive protests are a hallmark of much campus activism. That said, several factors here lend credence to Plaintiff's allegations of fear. First, the topic of the presentation, antisemitism, was on its face not political, focusing on attitudes towards Jews, not the nation of Israel. Second, the presenter, the Anti-Defamation League, is a respected nonpartisan, nonprofit, with a mission to combat hate and promote tolerance. Admittedly, that mission sometimes requires the League to take positions about Israel. Its stated position, however, is that criticism of Israel is an important component of public discourse, and it does not seek to forestall such criticism unless it deems it antisemitic. Stated differently, in objective terms, the League is by no means an *alter ego* of the Netanyahu administration, and efforts to block a presentation on antisemitism have an overtone that is personal, rather than political in nature. Finally, the presence of masked protesters in the room, who defied the authority of Haverford

---

Pseudonym, where Plaintiffs also reference the Anti-Defamation League Event Disruption, I will consider the facts as pled because they speak to Plaintiffs' alleged fear. Pls.' Mot. for Pseudonym. But these added facts will not be permissible for the purpose of evaluating the merits of the pending Motion to Dismiss.

[2] This incident bears some resemblance to events alleged in a similar lawsuit on Harvard University's campus, where Plaintiff alleges that demonstrators "blockaded Jewish students in a study room." *See Kestenbaum v. President & Fellows of Harvard Coll.,* No. 24-10092, 2024 WL 3658793, at *2 (D. Mass. Aug. 6, 2024).

administrators and had to be removed by campus security, with a chanting group of protestors outside, would reasonably be viewed as a form of intimidation going far beyond the "normal" chaos of a confrontational campus protest.

I conclude that Plaintiffs' fears regarding their physical safety, when aggregated with their social and academic concerns, narrowly satisfy the threshold showing of a threat of severe harm. And given the volatility of the Israeli-Palestinian conflict on campuses nationwide,[3] I deem these fears reasonable.

Consequently, this factor weighs in favor of anonymity, albeit only slightly.

> 3. *Similarly situated litigants would not be deterred from pursuing their own claims.*

Courts must also consider whether other similarly situated litigants would be deterred from litigating claims in the public interest if the litigants were forced to reveal their names.

Typically, courts in this Circuit have only granted motions to proceed under pseudonym in narrow circumstances involving deeply personal topics such as abortion, sexual assault, and sexual orientation. *Borough of Morrisville*, 130 F.R.D. at 614. Conversely, courts have denied requests for pseudonymity in cases involving discrimination on the basis of sex and race, where personal topics are surely at stake but do not reach the same level of intimacy as the previously enumerated issues. *See e.g., Coll. of New Jersey,* 997 F.3d at 497 (3d Cir. 2021) (affirming the district court's denial of anonymity where a professor alleged discrimination on the basis of sex, national origin, and pregnancy); *Univ. of Pennsylvania*, 2024 WL 2575702, at *2 (3d Cir. May 24, 2024) (denying anonymity where student challenged alleged race-based discrimination); *Doe v. Cnty. of Lehigh*,

---

[3] In *Doe v. Triangle Donuts,* Judge Leeson of this court considered a transgender plaintiff's allegations of past threats of violence, verbal harassment from fellow employees, and the background of "widespread discrimination" against transgender individuals to determine that the plaintiff had sufficiently demonstrated a reasonable fear of "severe harm." *Doe v. Triangle Doughnuts, LLC,* No. 19-5275, 2020 WL 3425150, at *4 (E.D. Pa. June 23, 2020).

7

No. 20-3089, 2020 WL 7319544, at *1 (E.D. Pa. Dec. 11, 2020) (denying anonymity where plaintiff alleged that she was subject to a hostile work environment on the basis of sex in violation of Title VII); *Doe v. Guess*, *Inc.*, No. 20-4545, 2020 WL 5905440, at *4 (E.D. Pa. Oct. 6, 2020) (denying anonymity where an openly gay employee alleged discrimination in employment on the basis of his sexual orientation).

The present case considers religious discrimination, a topic that courts within this Circuit have not recognized as intrinsically private. It is far from clear that declining Plaintiffs' request here would discourage other litigants from asserting religious discrimination claims. Religious faith may be a private matter, but religion is generally practiced publicly, and the motion here represents an exception, not the rule. Thus, this factor weighs against anonymity.

### 4. *The outcome of the case depends on the facts.*

Fourth, courts consider whether the facts of the case are relevant to the outcome of the claim. Where a matter is "purely legal," there is an "atypically weak interest" in the identities of the parties. *See Provident Life*, 176 F.R.D. at 467-68. Here, however, the facts of the case are of central relevance. The case depends on what Plaintiffs experienced and how various actors at Haverford responded. Because the ultimate outcome of this case hinges on its facts, this factor weighs against anonymity.

### 5. *The claim could be resolved on the merits without the anonymous plaintiffs' participation.*

Fifth, the court consider whether the claim would be resolved on the merits if litigants are denied anonymity. The Plaintiffs state that if their motion is denied, HJSB and HJSC would "be forced to reconsider their participation in this case." Pls.' Mot. for Pseudonym, at 11. But even if HJSB and HJSC were to decide against moving forward in this case, the case itself would proceed, as two named Plaintiffs remain. Plaintiffs do not contend that HJSB and HJSC are necessary

parties to the proceeding. Because the case could still be resolved on the merits should HJSB and HJSC ultimately decide to withdraw, this factor weighs against anonymity.

### 6. *Anonymous plaintiffs' motives are legitimate.*

There is nothing in the record to suggest that HJSB and HJSC's motives are illegitimate. Instead, Plaintiffs seek anonymity due to the alleged hostile environment they describe at length in their complaint, and the specific fears they articulate in this motion. Although the merits of Plaintiffs' larger claim are unclear at this juncture, I am convinced that there is a reasonable basis for Plaintiffs' concern that litigating in their true names "would trigger antisemitic harassment and social and academic harm."[4] Pls.' Mot. for Pseudonym, at 12. Haverford does not argue otherwise. This factor therefore weighs in favor of anonymity.

### 7. *The public has a significant interest in public proceedings.*

The Third Circuit has acknowledged "the universal interest in favor of open judicial proceedings." *Megless*, 654 F.3d at 411; *see also Coll. of N.J.*, 997 F.3d at 496 ("As we have noted, the public's interest in open judicial proceedings always runs counter to a litigant's interest in anonymity—the question is whether the interest in anonymity outweighs the public's interest."). Necessarily, this factor favors disclosure.

### 8. *The public has no special interest in anonymous plaintiffs' identities.*

Next, I consider whether the subject of the litigation heightens the public interest beyond the public's interest which normally exists. HJSB and HJSC are young college students, not public figures, which decreases the public's interest in knowing their identities. *See Doe v. Genesis HealthCare,* 535 F.Supp.3d 335, 341 (E.D. Pa. 2021) (finding that a plaintiff's status as a private figure decreases the public's interest in knowing the plaintiff's identity). In objective terms, it is

---

[4] If facts revealed through discovery cast doubt on Plaintiffs' motives, this ruling may be reconsidered.

the "nature of the allegations" and Haverford's actions "that would be of interest to the public," not Plaintiffs' individual identities. *See Doe v. Lyft, Inc.,* No. 23-3990, 2023 WL 8702729, at *4 (E.D. Pa. Dec. 15, 2023). Permitting public access to the proceedings with HJSB and HJSC referenced pseudonymously would therefore strike an "appropriate balance" between the public interest in this case, and HJSB and HJSC's desire to litigate a matter that they believe would place a target upon their backs. *Id.* (citing *Doe v. Rutgers*, No. 18-12952, 2019 WL 1967021, at *4 (D.N.J. Apr. 30, 2019)). This factor thus supports anonymity.

   9. *Haverford does not oppose the motion.*

Finally, Haverford does not oppose HJSB and HJSC's request to proceed under pseudonym for the duration of this litigation, and this factor weighs in favor of pseudonymity.

### B. Balancing Test

Ultimately, I find that five factors weigh in favor of anonymity, and four factors weigh against it. I note, however, that the balance is extremely close, with factor two only narrowly tipping the scale toward allowing the use of pseudonyms. Despite the closeness of the issue, I place some weight on the uniquely volatile backdrop of this case as described in my analysis of factor two above. Due to the particularly contentious and identity-bound nature of the Israel-Palestine conflict in this moment of international reckoning, I am convinced that Plaintiffs may unnecessarily pay a price if forced to reveal their identities, a result to be avoided where the issue is one of civil rights.

### C. All Plaintiff identities must be immediately disclosed to Defendant

Plaintiffs further object to disclosing their identities to Haverford, and argue that if disclosure is required, it should be delayed until after the pending motion to dismiss is resolved.

There is no basis for this. Permission to proceed under pseudonym is a unique exception with narrow applicability. It does not undermine the fundamental premise that parties must know against whom they are litigating to thoroughly understand the claims asserted and properly defend themselves. Here, Plaintiffs' identities are extremely relevant to salient factual questions even at this early stage of litigation. For example, without knowledge of Plaintiffs' identities, Haverford has no way to discern what each student personally experienced, whether each student provided notice of alleged harassment to any Haverford employees, or whether the anonymous students were individually aware of other alleged harassment elsewhere on campus. Plaintiffs encourage the Court to fill in the gaps and simply presume that because Haverford is, compared to some institutions, a small campus, everything is common knowledge. Pls.' Opp'n to Mot. to Dismiss, at 35.[5] But this approach is untenable for a discrimination claim based upon a hostile environment theory, which hinges on proof of widespread harassment, and, where claims are aggregated as Plaintiffs seek to do here, on individual knowledge of the conduct alleged to have created that environment. Therefore, Plaintiffs must disclose the anonymous parties' identities immediately to allow Haverford to properly litigate the present action.

Additionally, Plaintiffs maintain that because HJSD and HJSE are non-party witnesses, their identities need not be revealed until discovery commences. This might carry more weight if Plaintiffs did not also list HJSD and HJSE in the "Parties" section of their Amended Complaint, with little distinction from the students whom they accept as parties. Am. Compl. at 18. If counsel now represents that they are not parties, placement within the "Parties" section of a complaint is curious. *Id.* at 18-23. Whether they are parties or not, Plaintiffs cite HJSD and HJSE's allegations as facts supportive of the purported discrimination. In the final analysis, therefore, their status is

---

[5] This page number refers to the page number designated by ECF, not the page number embedded in the document.

irrelevant. If HJSD and HJSE are parties as the current complaint represents, their identities must be disclosed on that basis. *Id*. If they are not parties, but witnesses, then contrary allegations in the Complaint should be stricken. Nonetheless, their identity must be revealed at the appropriate time as part of self-effectuating discovery under FRCP 26(a).

## IV. Conclusion

For the reasons discussed, Plaintiffs' Motion to Proceed Under Pseudonym is granted in part and denied in part. An order will be issued allowing the unnamed individual plaintiffs to proceed under pseudonym in all public-facing filings to this action. Plaintiffs must clarify whether HJSD and HJSE are parties. The identities of all parties shall be revealed to Haverford at this time, with limitations placed on Haverford's ability to disclose such identities beyond counsel and Haverford employees involved in the defense of this action. The identities of all witnesses must be disclosed to Haverford at the appropriate time consistent with Plaintiffs' obligations under the Federal Rules of Civil Procedure.

/s/ Gerald Austin McHugh
United States District Judge
