# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| ──────────────────────── | : |  |
| ALLY LANDAU, HJSB, HJSC, and JEWS AT HAVERFORD | : | CIVIL ACTION NO. |
|  | : | No. 2:24-cv-02044-GAM |
| Plaintiffs, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| THE CORPORATION OF HAVERFORD COLLEGE | : |  |
|  | : |  |
| Defendant. | : |  |
| ──────────────────────── |  |  |

### HAVERFORD COLLEGE'S REPLY IN SUPPORT OF ITS
### MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

## INTRODUCTION

Instead of focusing on the governing legal standards articulated in this Court's prior Opinion dismissing Plaintiffs' claims, or taking head on the application of those standards raised in Haverford's Motion to Dismiss (ECF 37, "Motion" or "MTD"), Plaintiffs' Opposition (ECF 44, "Opp.") leans into summaries of the alleged experiences of nonparties in terms that stray far outside (or contradict) the allegations of the Second Amended Complaint (ECF 35, "SAC"). As explained below and in the College's Motion, Plaintiffs have not, on their third attempt, pleaded facts necessary to state a claim of a hostile environment under Title VI (Count I) or breach of contract (Count II) against the College.

*First*, Plaintiffs fail to allege facts that demonstrate harassment on the basis of race, color, or national origin that would bring their claims within the purview of Title VI. *Second*, Plaintiffs fail to allege severe and/or pervasive harassment that was objectively offensive, as is required to sustain a Title VI hostile environment claim. And *third*, even if Plaintiffs had alleged actionable harassment under Title VI, their allegations confirm that Haverford's response was not deliberately indifferent. Each of those deficiencies is, independently, fatal to Plaintiffs' Title VI claim. Finally, because Plaintiffs likewise fail to cite any support from case law or the College's actual policies establishing any contractual obligation breached by Haverford, their breach of contract claim should be dismissed with prejudice alongside their Title VI claim.

## ARGUMENT

### I.    Plaintiffs are not permitted to aggregate individual or non-plaintiffs' allegations to attempt to meet the pleading standard.

In its prior Opinion dismissing Plaintiffs' claims, this Court recognized that no Third Circuit authority authorizes "multiple Plaintiffs [to] aggregate individual instances of harassment to establish a hostile environment." (ECF 33 at 9; *see also* MTD at 25). Plaintiffs' Opposition

sidesteps that instruction and persists in arguing that aggregation is appropriate. It is not. Plaintiffs cite not a single case where *any* court has permitted aggregation of similar allegations involving unspecified students on a college campus or in support of a Title VI claim. The Court need not go any further down that path.

But Plaintiffs' arguments fail on their own terms, too. (*See* Opp. at 25-26 (citing *Berryman v. SuperValu Holdings, Inc.*, 669 F.3d 714 (6th Cir. 2012))). As this Court has instructed, even if Plaintiffs *were* permitted to aggregate their claims, they must allege "*individual* knowledge on behalf of *each* Plaintiff" by setting forth "clear factual pleadings as to **who** knew **what** and **when** they knew it." (ECF 33 at 10-11 (emphases added)). In doing so, this Court declined to consider Plaintiffs' allegations involving separate and/or unspecified individuals in the aggregate based on Plaintiffs' conclusory assertion that, because of the intimate nature of the community, alleged events occurring on campus, off-campus, and online were universally experienced. (*Id.*)

On amendment, Plaintiffs fail to allege those basic facts: the who, what, and when as to the experiences of specific individual Plaintiffs or alleged members of "Jews at Haverford." Instead, they merely repeat throughout their SAC what is substantively the same conclusory assertion of universal knowledge from their prior pleading: that because certain unspecified members of "Jews at Haverford" regularly interact, "all Plaintiffs," were, at unspecified times, "aware" of or "learned of" unspecified alleged conduct which they deem offensive. (*See, e.g.*, SAC ¶¶ 57, 72, 78, 86, 101, 113, 127, 131, 133, 135, 140, 151, 163).

By way of limited example, Plaintiffs allege that after the College hosted a movie screening about the October 7th Hamas attacks at an Israeli music festival, unidentified "Haverford protestors" demanded that President Raymond apologize for inviting "Zionists" to campus. (SAC ¶ 129). Plaintiffs do not allege that any Plaintiff or alleged member of "Jews at Haverford" attended

the screening or witnessed the demand, nor do they allege any facts about how, when, or where the purported demand was communicated. They only allege that "Plaintiffs were all aware of the demand" and that President Raymond allegedly "said nothing to suggest that such a demand was improper." (SAC ¶ 131). Setting aside the implausibility that any Plaintiff could definitively know what President Raymond has not said, the SAC fails to specify whether "Plaintiffs" refers to the individual Plaintiffs in this case, the plaintiff organization, or any of its alleged members,[1] (a detail critical to their Title VI hostile environment claim, as "Jews at Haverford" purports to include "students, as well as faculty, alumni, and parents of students"). But as argued in Haverford's Motion and conceded by Plaintiffs' Opposition, alleged events experienced by non-students cannot constitute actionable harassment under Title VI. (MTD at 26-27; Opp. at 27 n. 10 ("Plaintiffs agree that parents and community members have no Title VI interest.")). Further, Plaintiffs fail to allege any facts about when or how the unspecified individuals became aware of President Raymond's alleged non-response to the demand.

Plaintiffs attempt to explain this failure to allege sufficient facts by relying on the Court's permission to proceed under a pseudonym in this litigation, suggesting that they will only allege facts necessary to meet the legal standards of their claims "[w]hen [they] can do so without compromising [their] anonymity." (Opp. at 25-26). This Court has only permitted plaintiffs "HJSB" and "HJSC" to proceed in this litigation without publicly disclosing their full names. (*See* ECF 29). Plaintiffs have not been granted leave to skirt the applicable legal standards and proceed

---

[1] The loose application of the term "Plaintiff" to individuals who may or may not be actual parties to this case is a recurring theme in Plaintiffs' filings in this litigation, further failing to put the College on notice of the specific claims against it and making it impossible for their claims to be properly assessed by Haverford or the Court. (*See, e.g.*, SAC ¶ 60 (referencing "Plaintiff Barak Mendelsohn," though Professor Mendelsohn is not an individual Plaintiff); *see also* ECF 29 at 10-12 (directing Plaintiffs to strike allegations that incorrectly identify non-plaintiff witnesses or alleged members of "Jews at Haverford" as "parties" because "Plaintiffs' identities are extremely relevant to salient factual questions even at this early stage of litigation")).

on the basis of factually-devoid assertions that fail to put Haverford on proper notice of the claims against it or otherwise fail to state a claim.  Indeed, this Court has held:

> **Permission to proceed under pseudonym is a unique exception with narrow applicability. It does not undermine the fundamental premise that parties must know against whom they are litigating to thoroughly understand the claims asserted and properly defend themselves.** Here, Plaintiffs' identities are extremely relevant to salient factual questions even at this early stage of litigation. For example, without knowledge of Plaintiffs' identities, **Haverford has no way to discern what each student personally experienced, whether each student provided notice of alleged harassment to any Haverford employees, or whether the anonymous students were individually aware of other alleged harassment elsewhere on campus.** Plaintiffs encourage the Court to fill in the gaps and simply presume that because Haverford is, compared to some institutions, a small campus, everything is common knowledge. **But this approach is untenable for a discrimination claim based upon a hostile environment theory, which hinges on proof of widespread harassment, and, where claims are aggregated as Plaintiffs seek to do here, on individual knowledge of the conduct alleged to have created that environment.**

(ECF 29 at 11 (emphases added) (internal citations omitted)).

Plaintiffs also fail to cite any legal authority supporting the proposition that a plaintiff can adequately state a Title VI hostile environment claim by relying on vague allegations of conduct involving unidentified individuals without alleging facts regarding how a specific plaintiff was impacted by such conduct. (MTD at 31-32 (citing case law holding that a plaintiff must allege sufficient facts showing how alleged harassment impacted their ability to receive an education)). Such a sweeping imposition of legal risk on the College is unsupported by the law and should be rejected.[2] Because Plaintiffs' claims cannot be supported by alleged incidents where a specific

---

[2] The cases cited by Plaintiffs provide no support for their novel theory. For example, the Title VII hostile environment claim in *Sharp v. S&S Activewear, L.L.C.* was based on allegations that managers played "sexually graphic, violently misogynistic" music "[b]lasted from commercial-strength speakers" in the plaintiffs' enclosed workplace. 69 F.4th 974, 977 (9th Cir. 2023). Plaintiffs purport to quote from *Reeves v. C.H. Robinson Worldwide, Inc.*, but counsel is unable to locate the quoted language anywhere in that opinion. In any event, that case involved a hostile environment claim by a specific plaintiff based on allegations of offensive conduct which the plaintiff specifically alleged to have witnessed and experienced first-hand. 594 F.3d 798, 803-06 (11th Cir. 2010). *Link v. Trinity Glass Int'l, Inc.* was based on evidence provided by two plaintiffs about harassment in the workplace that they personally experienced. No. CIV.05-6342, 2007 WL 2407101, at *1-3 (E.D. Pa. Aug. 22, 2007).

Plaintiff or member of "Jews at Haverford" is not alleged to have been specifically aware of or impacted by the incident, allegations regarding such incidents should be ignored.

## II.     Plaintiffs have failed to address the fatal deficiencies of their Title VI claim.

In its Opinion dismissing Plaintiffs' prior pleading, this Court held that Plaintiffs' allegations failed to sufficiently allege facts supporting a conclusion that alleged "criticism of Israel or promotion of the Palestinian cause" occurring on and off Haverford's campus constitutes harassment based on the race, color, or national origin of a specific Plaintiff or alleged member of "Jews at Haverford," as required to plead a Title VI hostile environment claim. (ECF 33 at 7-8).

This Court also identified certain specific deficiencies in Plaintiffs' prior pleading requiring dismissal and specific directions for how to address those deficiencies. (*See, e.g.*, *id.* at 11, 13-14). As noted in Haverford's Motion, Plaintiffs' amendments have failed to rectify those deficiencies, as well as additional fatal deficiencies not addressed by the Court's Opinion. The SAC still fails to allege facts supporting a conclusion that any Plaintiff or specific member of "Jews at Haverford" was subject to actionable harassment under Title VI or that Haverford was deliberately indifferent to any such harassment of which the College had notice. Plaintiffs' Opposition does not address these deficiencies.

### A.     Plaintiffs have failed to allege deliberate indifference by Haverford.

Plaintiffs resort again in their Opposition to mischaracterizations of Haverford's Motion and conclusory assertions that Haverford and its administrators "did nothing." But the Court need look no further than Plaintiffs' own pleadings to contradict that unsupported conclusion. A non-exhaustive list of examples of the College's efforts, as alleged by Plaintiffs and cited in Haverford's Motion (ECF 37 at 22-23) but unaddressed by Plaintiffs' Opposition, include:

- The College hosted "teach-ins" and other campus events elevating views aligned with those allegedly held by Plaintiffs. (SAC ¶¶ 62, 152).

- The College hosted the Anti-Defamation League ("ADL") for a presentation titled "Anti-Semitism 101," which multiple top administrators including the President and Dean of the College attended and supported. (*Id.* ¶¶ 79, 81).

- The College devoted resources and facilitated multiple opportunities for Landau to elevate her views to the campus community regarding the Israel-Palestine conflict. (*Id.* ¶¶ 97-98; *see also* ECF 14 "FAC" ¶¶ 195-199).

- President Raymond met with Landau's parents to address their concerns about the "Haverford Grievances Document" and coordinated the removal of Landau's name from that document in response to those concerns. (SAC ¶ 103).

- The College caused a student group to change the name of an event which Plaintiffs consider to be antisemitic. (SAC ¶¶ 118-119).

- The College hosted a screening of a movie about the October 7th attacks at the Nova Festival in Israel. (SAC ¶ 129).

- The College investigated complaints that posters advertising an event for Jewish students were torn down. (SAC ¶ 154).

- The College ended a pro-Palestinian "sit-in" on campus. (FAC ¶ 265, Ex. F at 37).

- The College removed pro-Palestinian protestors who disrupted Haverford's 2024 commencement ceremony. (FAC ¶ 341).

- The College facilitated the involvement of Jewish students "committed to Zionism and the existence of Israel as a Jewish state" in developing Customs (orientation) programming which included a presentation about "combating harmful rhetoric" including antisemitism. (SAC ¶¶ 141-145; *see also* FAC ¶¶ 368-371, 375-376, Ex. F at 2, 16, 17).

6

Plaintiffs also argue that they have pled the requisite notice to Haverford and resulting deliberate indifference because they have alleged the existence of "numerous bias reports" that were "routinely ignored." (Opp. at 49). But this Court has made clear that to sufficiently allege that Haverford had notice of alleged harassment, they must "set forth clearly, for each instance . . . **who** complained **to whom**, if so, about **what**, and **when**." (ECF 33 at 11 (emphases added)). Plaintiffs' vague references to "bias reports" submitted by unspecified individuals at unspecified times do not satisfy this standard. (*See id.* at 11 n.14 (holding that allegations that unidentified individuals "brought complaints" were insufficient to allege notice)).

Plaintiffs have repeatedly made clear that they consider the College's response to be insufficient, not because the College failed to act, but because Haverford's response was not to their liking because it was not sufficiently punitive. (*See* Opp. at 47 (asserting that Haverford's actions were disproportionately focused on listening to and supporting "the Plaintiffs," as opposed to being "directed at" unspecified individuals alleged to have engaged in harassment)).[3] But courts afford schools "substantial deference in cases of alleged student-on-student harassment; victims of harassment have, for example, no 'right to make particular remedial demands.'" *Dawn L. v. Greater Johnstown Sch. Dist.*, 586 F. Supp. 2d 332, 369 (W.D. Pa. 2008) (quoting *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999)). Rather, deliberate indifference requires "an official decision by the recipient [of federal funds] not to remedy the violation[s]." *Id.* (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)).

---

[3] Plaintiffs assert, implausibly, that Haverford "praised" conduct that they take issue with, citing the College "award[ing] a prize" to a student who allegedly engaged in such conduct. (Opp. at 47-48). But by Plaintiffs' logic, Haverford's award to Landau, as cited in Haverford's Motion and in the publicly available 2024 commencement program, must then be an endorsement of her pro-Israel views. (MTD at 17 n.18)). Of course, neither of these things are true, but the Opposition fails to contemplate this contradiction.

Plaintiffs have failed to allege facts that meet that stringent standard or cite any legal authority suggesting any other standard should apply.

Plaintiffs ignore the central holding in *StandWithUs Center for Legal Justice v. M.I.T.*, cited by Haverford (MTD at 21-24), that a plaintiff fails to allege deliberate indifference where the defendant university took steps, *even if arguably ineffective*, to address the alleged issues. 742 F. Supp. 3d 133, 142 (D. Mass. 2024) *appeal filed* (1st Cir. Sept. 5, 2024). Plaintiffs assert that holding does not apply here because Haverford, a different institution with different policies, serving a different population, and responding to different incidents, did not take precisely the same actions MIT did in responding to events on *that* campus. But the standard for deliberate indifference is not "that an institution could or should have done more" or whether Haverford's response aligned with Plaintiffs' preferences. *Id.* At best, and even presuming for the sake of argument that Plaintiffs' have alleged actionable harassment, Haverford was merely required to respond in a way that was not clearly unreasonable to such alleged harassment of which it had notice and substantial control over the harasser and context in which the alleged harassment occurred. Haverford did so, and Plaintiffs have failed to allege sufficient facts to raise a plausible inference to the contrary. As such, dismissal of Plaintiffs' Title VI claims with prejudice is appropriate.

> **B.    Plaintiffs have failed to allege facts supporting a plausible conclusion that they were subjected to severe and/or pervasive harassment that was objectively offensive.**

In its Motion, the College argued that Plaintiffs failed to allege facts, which, if true, would constitute conduct that is sufficiently severe, pervasive, and objectively offensive to be actionable under Title VI. Plaintiffs' response focuses entirely on whether "and" or "or" is the proper conjunction to connect those elements necessary to allege actionable conduct under Title VI. (Opp.

at 22-23).[4] But Plaintiffs focus on a distinction without a difference because, under either standard, their allegations fail to pass muster.

As discussed fully above and in Haverford's Motion, aside from specific allegations referencing Landau, Plaintiffs fail to allege whether any specific Plaintiff or member of "Jews at Haverford" was subjected to or actually experienced the incidents alleged in the SAC. As such, their allegations cannot be considered in the aggregate. Plaintiffs must allege that race, color, or national origin-based harassment, and Haverford's deliberate indifference to same, resulted in a specific Plaintiff or alleged member of "Jews at Haverford" being physically denied access to a Haverford resource or, absent physical exclusion, resulted in "a concrete, negative effect" on their "ability to receive an education." (MTD at 31-32).[5] This Court has also confirmed that Plaintiffs must allege that "they experienced harassment that was 'so severe, pervasive, and objectively offensive' that *it deprived the victim of access to an educational activity or benefit*." (ECF 33 at 8 (quoting *Davis*, 526 U.S. at 633) (emphasis added)). Curiously, Plaintiffs again focus on the margins, *i.e.* whether the standard is that a plaintiff was denied "equal" access. (Opp. at 23). But again, this is a distinction without a difference because Plaintiffs fail to sufficiently allege that they were subject to harassment based on their race, color, or national origin such that they were denied

---

[4] Plaintiffs' assertion that this is a well-settled question ignores the nuance involved, which is recognized in the cases on which Plaintiffs rely. *See Canaan v. Carnegie Mellon Univ.*, No. CV 23-2107, 2024 WL 5145899, at *11 (W.D. Pa. Dec. 17, 2024) ("*Davis* certainly supports application of the severe-pervasive-**and**-objectively-offensive standard in some instances, like in cases addressing student-on-student harassment claims which present unique factual circumstances related to notice of violative conduct, the context in which known harassment occurs, and authority to take remedial action." (emphasis added)) (citing *Davis*, 526 U.S. at 642-47). This Court has also explained in this case that factors considered in assessing a hostile environment claim include "the frequency of the harassing conduct, its severity, **and** whether it was physically threatening or humiliating, or instead an offensive utterance." (ECF 33 at 9 (emphasis added) (citing *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 205 (3d Cir. 2001))).

[5] Plaintiff's Opposition fails to address Haverford's argument that they have alleged no instance where a specific Plaintiff or member of "Jews at Haverford" sought access to a Haverford resource but was physically excluded due to Haverford's deliberate indifference. (MTD at 31).

access to *any* educational benefits or activities, regardless of whether such access is measured against other, similarly situated Haverford students or in a vacuum.

Plaintiffs' Opposition relies on distinguishable case law and fails to meaningfully address Haverford's cited legal authority. First, Plaintiffs point to *Gartenberg v. Cooper Union* (ECF 44 at 23), but the alleged facts upon which liability was based in that case are inapposite to those alleged here and *Gartenberg*'s legal holdings support Haverford's position. *Gartenberg* was brought by specifically identified, individual plaintiff-students who allegedly experienced the specific instances alleged in their complaint. There, the court held that, even for a private college, "[i]mposing civil liability on institutions based on their failure to censor or punish offensive speech raises significant constitutional concerns" and thus courts must "exercise special caution when applying [anti-discrimination law] to matters involving traditionally protected areas of speech." *Gartenberg v. Cooper Union for the Advancement of Sci. & Art*, No. 24 CIV. 2669 (JPC), 2025 WL 401109, at *8-10 (S.D.N.Y. Feb. 5, 2025) (quoting *Honeyfund.com Inc. v. Governor*, 94 F.4th 1272, 1282 (11th Cir. 2024)), *reconsideration denied*, No. 24 CIV. 2669 (JPC), 2025 WL 602945 (S.D.N.Y. Feb. 25, 2025). "Regardless of whether this expression is better characterized as righteous protest in support of a noble cause, as the vulgar celebration of terrorism and antisemitism, or as something in-between, it is not a proper basis on which to impose civil liability[.]" *Id.* at *15. The court further held that the alleged expressive conduct including "protest slogans, fliers, and other expressions" which "related to the ongoing Israeli-Palestinian conflict and touched upon topics like Zionism, colonialism, and racism," was insufficient to state a Title VI hostile environment claim.[6] *Id.* at (citing ECF 33).

---

[6] The plaintiffs in *Gartenberg* alleged that during an on-campus protest, pro-Palestinian protestors "chanted slogans such as '[i]t is right to rebel, Israel go to Hell,' '[f]rom the river to the sea, Palestine will be free,' '[g]lobalize the intifada from New York to Gaza,' '[t]here is only one solution: intifada revolution,' '[r]esistance is justified when

Further, the potential for Title VI hostile environment liability only arises when the conduct alleged veers into "targeted, personal harassment aimed at a particular person." *Id.* at *11. The facts in *Gartenberg* which the court held met that standard are incomparable to those here. In *Gartenberg*, on-campus protest activity devolved into threatening conduct when pro-Palestinian demonstrators shoved past campus security guards and stormed a campus building in search of Cooper Union's president, obstructing hallways and classrooms. *Id.* at *1-3. The president directed NYPD officers on the scene to stand down, but also hid from the demonstrators in her locked office and eventually escaped the building through a back exit while Jewish students remained inside. *Id.* at *3-4. The demonstrators then targeted a specific group of Jewish students who had taken refuge in the building's library and who were visible through internal windows, forcing their way to and surrounding the library while banging on the internal locked doors and windows and demanding to be let in while the Jewish students who were trapped in the library, some wearing traditional Jewish attire, called the police out of fear for their safety. *Id.* at *3-4.

The SAC alleges no facts plausibly suggesting that any specific Jewish students, let alone any Plaintiff or member of "Jews at Haverford," were personally targeted, physically threatened, or confined to an enclosed space or otherwise subjected to circumstances similar to those alleged in *Gartenberg*. To the contrary, notwithstanding Plaintiffs' attempt to draw a comparison between *Gartenberg* and their allegations concerning the ADL event,[7] the SAC alleges that protestors stood

_____

people are occupied,' and '[h]ey hey, ho ho, Israel has got to go.'" *Gartenberg*, 2025 WL 401109, at *3. Such expressive conduct was deemed not actionable under a Title VI hostile environment claim. *Id.* at *15.

[7] Plaintiffs compare their allegations to those in *Gartenberg*, asserting that *Gartenberg* only involved "three weeks of protests, rather than the still-continuing 16 month saga at issue in this case." (Opp. at 32). Plaintiffs thus further misrepresent the holding in *Gartenberg*, which made clear that it was the allegedly harassing conduct directed at a specific and identifiable group of Jewish students trapped in a campus library that was actionable under Title VI, not the expressive conduct occurring during the "three weeks of protests," (*id.*) which the court specifically held did not constitute "true threats, incitement, fighting words, obscenity, or any other category of traditionally unprotected speech under the Supreme Court's First Amendment jurisprudence." *Gartenberg*, 2025 WL 401109 at *15.

outdoors near the room where the ADL event was held "banging on cowbells and pots" and using a bullhorn to chant slogans supportive of Palestine and critical of Israel while the program continued indoors with the College's top administrators in attendance.[8] (SAC ¶¶ 80-81). While Plaintiffs allege that four attendees interrupted the event, they also allege that Dean McKnight intervened to allow the remainder of the event to proceed without interruption. (*Id.* ¶ 81). Plaintiffs do not allege that any other attendees disrupted the event after Dean McKnight's intervention, or that the alleged conduct inside or outside caused the event to end prematurely.

This is a far cry from *Gartenberg*, where competing protests between Jewish, pro-Israel and pro-Palestinian students and faculty allegedly devolved into pro-Palestinian protestors shoving past campus security and cornering Jewish students who were forced to lock themselves in the campus library and call for police assistance while the protestors rattled doors attempting to gain access to the library, all while the university's president hid in her office, escaped through a back exit, and instructed police officers to stand down. *See Gartenberg* at *3-4, 18.

Plaintiffs also suggest that *Kestenbaum v. President and Fellows of Harvard College* supports their claim. It does not. *Kestenbaum* involved allegations that a law student and teaching fellow "assaulted a Jewish student" but was permitted to maintain his fellowship and teaching position at the university; that pro-Palestinian protestors physically "blockaded Jewish students in a study room," targeted and followed the individual Plaintiff around campus, and that Jewish students were "physically assaulted." 743 F. Supp. 3d 297, 303-04 (D. Mass. 2024).[9] Comparable allegations of physical violence and restraint are not at issue here.

---

[8] Plaintiffs do not identify any of the protestors, nor do they allege that any of the protestors outside were identified to the College, but Plaintiffs' allegations indicate that among the protestors were student members of the organization, JVP, or Jewish Voice for Peace. (SAC ¶ 82).

[9] Notably, the Court in *Kestenbaum* did not address whether alleged harassment based on an individual's support for Israel is actionable under Title VI.

Plaintiffs likewise wrongly suggest that *Frankel v. Regents of University of California* supports their claim, but that case is even further afield than *Gartenberg* or *Kestenbaum*. First of all, *Frankel* only addressed the plaintiffs' First Amendment Free Exercise claim, a claim not at issue here. 744 F. Supp. 3d 1015, 1020-22 (C.D. Cal. 2024), *appeal dismissed*, No. 24-5003, 2024 WL 4803385 (4th Cir. Aug. 26, 2024). *Frankel* involved three identified, individual plaintiffs who each alleged specific instances where they were denied entrance to a part of campus because they refused to denounce their religious views. *Id.* The *Frankel* plaintiffs also alleged that pro-Palestinian protestors installed an encampment on campus that "was rimmed with plywood and metal barriers," bolstered by "tents, canopies, wooden shields, and water-filled barriers," and "established checkpoints and required passersby to wear a specific wristband to cross them." *Id.* Comparable allegations are not at issue here.

In any event, the SAC does not allege that a single individual Plaintiff was present for or witnessed the alleged expressive conduct at the ADL event. While Plaintiffs vaguely allege that unspecified members of "Jews at Haverford" were present, they fail to specify if these individuals were students, faculty, alumni, parents, or otherwise. (SAC ¶ 86). They vaguely allege that "all Plaintiffs" eventually learned of the incident at an unspecified time, but fail to allege any facts about how the event impacted any specific Plaintiff. (*Id.*)[10] Because Plaintiffs fail to allege facts plausibly suggesting that they were subject to severe, pervasive, and/or objectively offensive harassment actionable under Title VI, their claim should be dismissed with prejudice.

---

[10] The only specific member alleged to have been in attendance was a faculty member. (SAC ¶ 83). As Plaintiffs concede, Landau was not present for the ADL event, nor was she a student at the time. (SAC ¶ 86). As such, allegations concerning this event are irrelevant to any claims asserted by Landau in her individual capacity.

**C.    Plaintiffs have failed to show how their SAC alleges harassment on the basis of race, color, or national origin rather than their viewpoint.**

Title VI prohibits discrimination on the basis of "race, color, or national origin." Courts around the country have made clear an individual's religious identity – that is, their status as a Jew, a Christian, a Muslim, a Sikh, and so on – is only covered under Title VI insofar as that religious identity is inextricably intertwined with their race, color, or national origin. (MTD at 37-39). Membership in a certain ethnic or shared-ancestry group is what is protected by Title VI, not one's specific religious practices or views within that group. *See* 42 U.S.C. § 2000d (enumerating protections for discrimination on the basis of race, color, and national origin, but not religious practice).

Plaintiffs base their claim on purported harassment based on "the Jewish commitment to Israel." (SAC ¶ 1; Opp. at 44)[11] By focusing so acutely on their personally held beliefs (as opposed to an ethnic identity), Plaintiffs have illustrated why their allegations are not actionable under Title VI. Instead, Plaintiffs allege, and argue in their Opposition, that they were allegedly harassed based on their specific, personally-held views about Israel – views that any individual could hold, regardless of race, color, or national origin.

Indeed, Plaintiffs have conceded that for individuals who don't share Plaintiffs' exact beliefs, "the existence or non-existence of the Jewish state is, indeed, merely political," (ECF 23 at 24 n.3) and "not all Jewish students at Haverford share their commitment to Israel." (SAC ¶ 9 n.3). By Plaintiffs' logic, if an areligious Haverford student experienced the exact same alleged treatment in response to his support for Israel as a Jewish state and Israel's treatment of Gaza, Title VI would provide legal recourse to Plaintiffs, *merely because of their identities*, but not to their

---

[11] Plaintiffs vacillate between alleging harassment based on a "commitment to Israel" and "Zionism," but both concepts are subject to wide ranging debates regarding their meaning, and neither are an immutable characteristic based one's race, color, or national origin as opposed to one's own, personally held opinions and beliefs.

areligious classmate (which suggests the inverse could be true as well). The concept that one person holding a particular view is protected while a person of a different religion who holds that same view is not protected isn't *protection* from discrimination – it *is* discrimination. Plaintiffs' views on this matter are not supported by the law, and for good reason. Plaintiffs' allegations and Opposition confirm that they cannot identify any alleged incident where hostility to a "commitment to Israel" was targeted at them based on a shared ancestry or ethnic identity behind that commitment rather than the specific views themselves. Even if those views can be religious in nature, criticizing those views is not discrimination on the basis of race, color, or national origin, and it is not actionable under Title VI.

Instead of contending with the disconnect between views on Israel and race or national origin discrimination, Plaintiffs cite in their Opposition to factually distinguishable case law involving alleged conduct not at issue here. (*See* Opp. at 44 (citing *Canaan*, *Kestenbaum*, *Frankel*)). But none of those cases directly addresses whether expressive conduct like that alleged here is actionable under Title VI. *Gartenberg* suggests that the answer is no.[12]

Plaintiffs also ignore case law from this Court that is on all fours. In *Tannous v. Cabrini University*, the plaintiff, a university professor of Palestinian descent, was fired for public comments he made that were critical of Israel and characterized by some as antisemitic. 697 F. Supp. 3d 350, 355-58 (E.D. Pa. 2023), *on reconsideration in part*, 702 F. Supp. 3d 317 (E.D. Pa.

---

[12] Plaintiffs fail to address case law cited in Haverford's Motion for the proposition that the expressive conduct alleged here does not constitute race, color, or national origin harassment under Title VI. (*See* MTD at 37 n.25 (citing *Zinman v. Nova Se. Univ.*, Inc., No. 21-CV-60723, 2021 WL 4025722, at *8 (S.D. Fla. Aug. 30, 2021) (Rejecting argument that mask mandate violated Title VI because it violated plaintiffs specific religious beliefs attributed to Judaism), *report & recommendation adopted*, No. 21-CIV-60723-RAR, 2021 WL 4226028 (S.D. Fla. Sept. 15, 2021), *aff'd*, No. 21-13476, 2023 WL 2669904 (11th Cir. Mar. 29, 2023); *Lubavitch-Chabad of Illinois, Inc. v. Nw. Univ.*, 6 F. Supp. 3d 806, 816 (N.D. Ill. 2013) ("Title VI does not provide for protection against discrimination on the basis of religion—only race, color, or national origin."), *aff'd*, 772 F.3d 443 (7th Cir. 2014); *Weiss v. City Univ. of New York*, No. 17-CV-3557 (VSB), 2019 WL 1244508, at *9 n.11 (S.D.N.Y. Mar. 18, 2019) ("Religious views are not a protected category under Title VI.")).

2023). The plaintiff alleged that he was discriminated against and subjected to a hostile work environment under Title VII because his public statements about Israel were assumed to be antisemitic due to his "color, race, and ethnicity," and specifically, his Palestinian heritage. *Id.*

Plaintiffs here have made similar allegations, asserting that they have been targeted due to their status as Jews because their pro-Israel views have allegedly been labeled as racist and supportive of genocide. (*See, e.g.*, SAC ¶¶ 1, 49, 54, 79, 125, 149). But *Tannous* dispels that notion. There, this Court rejected the argument that by labeling his views on the Israel-Palestine conflict as antisemitic, the plaintiff was being targeted on the basis of his Palestinian identity.

> [Plaintiff] alleges that his employer wrongfully accused him of antisemitism because he is Palestinian-American. But, in so doing, [Plaintiff] equates a termination due to his race or ethnicity – invidious distinctions prohibited by law – with a termination due to a belief that his statements were antisemitic. These concepts are distinct. Even if the belief that his statements were antisemitic is unfair or incorrect, courts considering the issue have concluded that such conduct does not give rise to a cognizable claim under Title VII because it is not based on the employee's status as a protected minority.

*Tannous*, 697 F. Supp. 3d at 360 (internal citations omitted). The plaintiff's discrimination claim failed because he did not allege facts suggesting that the defendant university "would have reacted differently to a similarly situated non-Palestinian-American employee." *Id.* at 360.

The same applies here. Alleged harassment attacking Plaintiffs' views cannot support a theory that Plaintiffs have been targeted due to their race, color, or national origin as required to invoke Title VI, because the criticism of their views "provides a clear, non-race-based motive" for the alleged conduct. *Id.* at 362. Plaintiffs, like the plaintiff in *Tannous*, have failed to connect alleged harassment based on their pro-Israel views to harassment on the basis of race, color, or national origin. As such, their Title VI claims should be dismissed with prejudice.

III.    **Plaintiffs fail to address the fatal deficiencies of their purported breach of contract claim.**

This Court has held that, to state a breach of contract claim against Haverford, Plaintiffs' allegations must "relate to a specific and identifiable promise that the school failed to honor. (ECF 33 at 15 (quoting *David v. Neumann Univ.*, 187 F. Supp. 3d 554, 558 (E.D. Pa. 2016)). Haverford argued in its Motion that the SAC failed to identify any contractual promise in Haverford's written materials that was breached by the College or to allege how any purported breach resulted in damages with regard to any specific Plaintiff or alleged member of "Jews at Haverford." (MTD at 39, 44). Plaintiffs fail to address these deficiencies in their Opposition.

Instead of engaging with the actual text of the College's policies in place and published on the College's website or otherwise promulgated to the College community as final, adopted policies, and despite this Court's admonition regarding the same tack in their prior briefing, (*see* ECF 33 at 16 ("Such sleight of hand erodes not just the plausibility of the claims advanced but also Plaintiffs' credibility")), Plaintiffs present their own subjective interpretations of the College's policies and other invented contractual obligations.[13] But Plaintiffs are not entitled to the presumption of truth as to their conclusory allegations and legal conclusions regarding the College's contractual obligations, particularly in light of express, written documents to the contrary. *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993) (holding that courts may consider documents attached to a motion to dismiss when the plaintiff's claims are based on such documents because "[o]therwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied"); *see also Kortyna v. Lafayette Coll.*, No. CV 15-4625, 2017 WL 1134129, at

---

[13] Plaintiffs tellingly have not identified any version of the purported "policy" in Exhibit A that is not clearly marked as a draft proposal or which shows any effective or adoption date.

*12 (E.D. Pa. Mar. 27, 2017) ("A plaintiff cannot maintain a claim by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement [did not support the claim].") (internal cites and quotes omitted), *aff'd*, 726 F. App'x 934 (3d Cir. 2018).

Plaintiffs' Opposition spills several pages of ink over well-established legal standards for considering a Rule 12(b)(6) motion in an attempt to argue that their blatantly implausible assertion that the document titled "Policy Proposal" (with watermarks on each page indicating it is an internal document and which leaves blank a reserved space for approval or effective dates) is actually an official policy adopted by the College during the alleged events of the SAC must be unquestioningly accepted as true. Not so. Plaintiffs make no attempt to address the arguments and legal authority cited in Haverford's Motion that the presumption of truth is not absolute and only applies to a plaintiff's "*well-pleaded* factual allegations," not conclusory assertions devoid of factual enhancement, and that determining plausibility requires a court to "draw on its experience and common sense." (MTD at 41 (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130-31 (3d Cir. 2010) and *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009)).

Further, Plaintiffs fail to address the core issue—the Court need not accept any factual representation by the College on this topic because Plaintiffs' assertion is directly contradicted by the face of the document attached as Exhibit A to their SAC. "In Pennsylvania, '[c]ontract interpretation is a question of law that requires the court to ascertain and give effect to the intent of the contracting parties as embodied in the written agreement.'" *Humans & Res., LLC v. Firstline Nat'l Ins. Co.*, 512 F. Supp. 3d 588, 594 (E.D. Pa. 2021) (quoting *Dep't of Transp. v. Pennsylvania Indus. for the Blind & Handicapped*, 886 A.2d 706, 711 (Pa. Cmwlth. Ct. 2005)). It is well established that "[w]hen a writing is clear and unequivocal, its meaning must be determined by its

contents alone," and courts should not "distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity." *Id.* at 595 (citing Pennsylvania law).

Here, Exhibit A clearly and unequivocally shows that the text represents only a proposed, draft policy. Plaintiffs' assertion that a proposed policy clearly titled "**PROPOSAL**," each page of which is marked with a notice that it is an internal document belonging to a specific Haverford department, and which plainly states that it has never been approved or effective (SAC Ex. A) could impose any contractual obligations on Haverford is the exact sort of "strained contrivance" that courts applying Pennsylvania contract law have rejected in light of a clear and unequivocal writing to the contrary.[14]

Plaintiffs attempt to support their argument with references to purported screen captures of the "Wayback Machine," which they assert shows the website for the Office of the President on June 24, July 21, August 15, and November 7, 2024. (ECF 44 at 13-14). The Opposition does not address the existence of the proposed policy in Exhibit A or whether it was present on the website at all during the 2023-2024 academic year, when the vast majority of the incidents alleged in the SAC (and indeed *all* of the incidents alleged in Plaintiffs' prior pleadings) occurred. Setting aside that Plaintiffs cannot insert additional allegations or amend their pleading by way of their Opposition brief (*see Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988), or that contract interpretation is a matter of law for this court to determine based solely on the purported contractual text, even if these new exhibits could be considered, they only further support Haverford's position, confirming that the proposed policy had not been adopted but was

---

[14] Plaintiffs puzzlingly assert that "[o]n the basis of nothing more than its counsel's affidavit . . . Haverford insists it currently has no Anti-Discrimination, Harassment, and Bias Policy at all." (Opp. at 13). That is incorrect and is unsupported by the record in this litigation. The College's arguments with regard to Exhibit A are based solely on the text of the Exhibit and the College's publicly available website. Haverford's Motion includes no affidavit by its counsel setting forth any assertions about Exhibit A. Further, at no point has Haverford suggested that it does not have an anti-discrimination policy—it is Plaintiffs' burden to identify a contractual duty breached by Haverford.

"currently in a phase of community consultation." (Opp. at 14). The Opposition entirely fails to address these issues.

In any event, Plaintiffs fail to contend with the fact that they have not established a contractual right to dictate how the College responds to events on campus, the content of the College's campus-wide and public communications, or the College's programming. Further, Plaintiffs cannot point to a contractual promise by Haverford that no act of discrimination or harassment would ever occur on its campus or that other students or community members would, in every case, be disciplined in response to conduct which Plaintiffs believe constitutes harassment. (*See* MTD at 42-43). Plaintiffs' Opposition fails to respond to this argument.

Plaintiffs also fail to support any argument that their purported breach of contract claim can be asserted by aggregating allegations involving different Plaintiffs, non-plaintiffs, and wholly unidentified individuals (nor can they). As this Court has held, "a plaintiff may not enforce a policy to which they are merely a third party, such as a promise from the college to some other student, absent a specific intention to grant third party enforcement authority." (ECF 33 at 15-16 (citing *Guy v. Liederbach*, 459 A.2d 744, 751 (1983))). Thus, the bare bones allegations asserted by or on behalf of the anonymous students or other unnamed, non-party students fail to state a claim for breach of contract and should be ignored.

Plaintiffs have failed to carry their burden to state a claim for breach of contract, and have failed to address the issues raised in Haverford's Motion. As such, their breach of contract claim should be dismissed with prejudice.

## IV.    Plaintiffs are not permitted to amend their pleading through their Opposition Brief, and any attempts to do so should be rejected.

Plaintiffs devote a significant portion of their Opposition to recharacterizing – and attempting to expand – the allegations in their SAC. Plaintiffs are not permitted to amend their

pleading via their Opposition, a concept that should be triply-true on their third attempt to plead their claims, and the Court should disregard any such attempts. *See Zimmerman*, 836 F.2d at 181 ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."); *Curry v. Devereux Found.*, 541 F. Supp. 3d 555, 559-60 (E.D. Pa. 2021) (disregarding facts not alleged in complaint in considering motion to dismiss).

By way of limited example, Plaintiffs attach as Exhibit 2 to their Opposition a chart which they assert "identifies each of the events of harassment" and "identifies the SAC paragraphs alleging when each Plaintiff learned of each event." (Opp. at 25-26). Setting aside the ambiguity of Plaintiffs' use of the terms "Plaintiff" or "Plaintiffs" inclusive of individuals who are decidedly not plaintiffs or capable of receiving relief here (*e.g.*, Professor Mendelsohn), there is no avoiding the unfortunate conclusion that Exhibit 2 inaccurately presents the allegations of the SAC. Select examples are identified below:

- For several alleged incidents, Plaintiffs' chart asserts that the SAC alleges that "all Plaintiffs" learned of the event "by May 13, 2024" or "by Sept. 9, 2024." No such factual allegations appear in the cited SAC paragraphs. (*Compare* SAC ¶¶ 34-36, 40, 55, 130, 155, 164 *with* Opp. Ex. 2 (citing same)).

- Plaintiffs' chart asserts that they have alleged "Political Science Department postings glorifying Oct. 7 attacks." (Opp. Ex. 2). Not so. (*See* SAC ¶ 46 (alleging that an unidentified Jewish student wrote on the "Political Science Department messaging service" about social media posts "within the Haverford and Bryn Mawr College community")).

- Plaintiffs' chart asserts that Richard Freedman wrote a letter to President Raymond which received no response. (Opp. Ex. 2). No such allegation exists in the SAC. (SAC ¶ 83).

Plaintiffs have had three opportunities to plead sufficient facts to support their claims. They cannot fill the gaps in their pleadings with exhibits or charts or declarations alleging new facts and mischaracterizing the operative Complaint.

## **CONCLUSION**

For the foregoing reasons, the reasons set forth in Haverford's primary brief, and any other reasons that may appear to the Court, Haverford College respectfully requests that the Court dismiss Plaintiffs' Second Amended Complaint with prejudice[15] pursuant to Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

**SAUL EWING LLP**

Date: April 4, 2025

s/ *Joshua W. B. Richards*
Joshua W. B. Richards/204315
Levi R. Schy/329199
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA  19102
(215) 972-7737 (Richards)
(215) 972-7803 (Schy)
Joshua.Richards@saul.com
Levi.Schy@saul.com
*Attorneys for Haverford College*

---

[15] *See In re: Domestic Drywall Antitrust Litig.*, No. 13-2437, 2016 WL 3453147, at *4 (E.D. Pa. June 22, 2016) (holding that dismissal with prejudice was warranted where "Defendants have already expended resources filing motions to dismiss in response to each of Plaintiffs' three complaints," and "Plaintiffs have thus had two opportunities to amend their complaint to respond to Defendants' argument").

## **CERTIFICATE OF SERVICE**

I, Joshua W. B. Richards, certify that on this date I filed via the ECF system a true and correct copy of the foregoing **REPLY IN SUPPORT OF MOTION TO DISMISS**, which constitutes valid service on the following registered users:

Jerome Marcus
Marcus & Marcus LLC
P.O. Box 212
Merion Station, PA 19066
jmarcus@marcuslaw.us

*Attorney for Plaintiffs Ally Landau, HJSB, HJSC, and "Jews at Haverford"*

Date: April 4, 2025

s/ *Joshua W. B. Richards*
Joshua W. B. Richards/204315
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
(215) 972-7737
Joshua.Richards@saul.com

*Attorney for The Corporation of Haverford College*