## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEWS AT HAVERFORD, | : | |
| ALLY LANDAU, | : | |
| HJSB and HJSC, | : | |
| | : | Civil Action No. 2:24-cv-02044(GAM) |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| THE CORPORATION OF | : | |
| HAVERFORD COLLEGE, | : | |
| | : | |
| Defendant. | : | |

## DEFENDANT HAVERFORD COLLEGE'S ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT

Defendant The Corporation of Haverford College ("Haverford" or the "College"), by and through its undersigned counsel, hereby answers and submits affirmative defenses to the Second Amended Complaint of Plaintiffs "Jews at Haverford," Ally Landau, "HJSB," and "HJSC" (collectively, "Plaintiffs"), as follows below. At the outset, the College notes that it has included the headings from Plaintiffs' Second Amended Complaint in this Answer. To the extent such headings are deemed to be factual averments, their contents are denied.

The College also notes that the Court's dismissal with prejudice of Plaintiffs' Title VI claims (*see* ECF 52) renders the overwhelming majority of paragraphs in Second Amended Complaint which do not relate to allegations of specific complaints made pursuant to Haverford policies by a specific Plaintiff or individual identified as a member of "Jews at Haverford" as paragraphs not requiring a response from the College. To the extent such paragraphs are deemed to require a response, the averments therein are denied.

## I.    INTRODUCTION

1.    Denied. The averments of this paragraph contain conclusions of law and/or relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied. Further answering, Haverford lacks sufficient information to determine the truth or falsity of the averments of this paragraph which refer to unspecified incidents or individuals and they are accordingly denied.

2.    Denied. The averments of this paragraph contain conclusions of law and/or relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied. Further answering, Haverford lacks sufficient information to determine the truth or falsity of the averments of this paragraph which refer to unspecified incidents or individuals and they are accordingly denied.

3.    Denied. The averments of this paragraph contain conclusions of law and/or relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied. Further answering, Haverford lacks sufficient information to determine the truth or falsity of the averments of this paragraph which refer to unspecified incidents or individuals and they are accordingly denied. The averments of this paragraph including quoted language refer to written email correspondence, the contents of which speak for themselves and any characterization thereof is denied.

4.    Denied.

5.    Denied. The averments of this paragraph contain conclusions of law and characterizations of Plaintiffs' claims to which no response is required. To the extent that the averments are deemed factual, they are denied.

## II.    JURISDICTION AND VENUE

6.      Denied.  The averments of this paragraph contain conclusions of law and/or relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

7.      Admitted in part, denied in part. It is admitted that Haverford is located and does business in the Eastern District of Pennsylvania. The remaining averments of this paragraph contain conclusions of law to which no response is required.  To the extent that such averments are deemed factual, they are denied.

8.      Admitted in part, denied in part. It is admitted that Haverford is located in the Eastern District of Pennsylvania. The remaining averments of this paragraph contain conclusions of law to which no response is required.  To the extent that such averments are deemed factual, they are denied.

## III.    PARTIES

9.      Haverford lacks sufficient information to determine the truth or falsity of the averments of this paragraph. As such, the averments of this paragraph are denied.

10.     Haverford lacks sufficient information to determine the truth or falsity of the averments of this paragraph. As such, the averments of this paragraph are denied.

11.     Haverford lacks sufficient information to determine the truth or falsity of the averments of this paragraph. As such, the averments of this paragraph are denied.

12.     Admitted in part and denied in part. It is admitted only that Ally Landau was an enrolled student at Haverford when this action was initiated and that Landau graduated from the College on May 18, 2024.  Haverford lacks sufficient information to determine the truth or falsity

of the averments of this paragraph concerning the purported membership of "Jews at Haverford," and the remaining averments of this paragraph are accordingly denied.

13.    Admitted in part and denied in part. It is admitted that the individual identified in this paragraph as "HJSB" was an enrolled student at Haverford at the time Plaintiffs filed the Second Amended Complaint, and that the Court has permitted "HJSB" to proceed under a pseudonym in this litigation. It is denied that "HJSB" is a current student at Haverford. Haverford lacks sufficient information to determine the truth or falsity of the remaining averments of this paragraph and they are accordingly denied.

14.    Admitted in part and denied in part. It is admitted that the individual identified in this paragraph as "HJSC" is an enrolled student at Haverford, and that the Court has permitted "HJSC" to proceed under a pseudonym in this litigation. Haverford lacks sufficient information to determine the truth or falsity of the remaining averments of this paragraph and they are accordingly denied.

15.    Denied.  The averments of this paragraph contain conclusions of law to which no response is required.  To the extent that the averments are deemed factual, they are denied.

16.    Admitted that Haverford is a liberal-arts college located near Philadelphia, and that the College typically enrolls under 1,500 students each year. The remaining averments of this paragraph contain conclusions of law and/or relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

IV.    **HAVERFORD POLICIES ON DISCRIMINATION AND HARASSMENT**

A.    **Nondiscrimination**

17.    Admitted in part and denied in part. It is admitted only that Haverford policy, including but not limited to the College's Non-discrimination Statement, prohibits discrimination

on the basis of certain characteristics, including those protected by state, local, and federal law. It is specifically denied that the purported "Anti-Discrimination, Harassment, and Bias Policy" referenced in this paragraph and attached to the Second Amended Complaint as Exhibit A is or ever has been an official policy adopted by Haverford or that any statements in that document constitute enforceable promises by Haverford. Any remaining averments of this paragraph are denied. By way of further response, the purported "Bias Policy" referenced in this paragraph and attached to the Second Amended Complaint as Exhibit A reflects a draft version of proposed policy language that the College administration was considering in the context of an internal review process and had been made available for community comment and feedback as a part of that internal review process, but was never adopted and never went into effect as a College policy.

18.    The averments of this paragraph contain conclusions of law and/or relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

19.    The averments of this paragraph contain conclusions of law and/or relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

20.    The averments of this paragraph contain conclusions of law and/or relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

**B.    Anti-Discrimination, Harassment, and Bias**

21.    Denied. It is specifically denied that the purported "Bias Policy" referenced in this paragraph and attached to the Second Amended Complaint as Exhibit A is or ever has been an official policy adopted by Haverford, or was "in effect during the 2023-2024 academic year." It is

further specifically denied, to the extent implied, that any statements in that document constitute enforceable promises by Haverford. The remaining averments of this paragraph refer to a written document, the contents of which speak for themselves and any characterization thereof is denied. By way of further response, the purported "Bias Policy" referenced in this paragraph and attached to the Second Amended Complaint as Exhibit A reflects a draft version of proposed policy language that the College administration was considering in the context of an internal review process and had been made available for community comment and feedback as a part of that internal review process, but was never adopted and never went into effect as a College policy.

22.    Denied. It is specifically denied, to the extent implied, that the purported "Bias Policy" referenced in this paragraph and attached to the Second Amended Complaint as Exhibit A is or ever has been an official policy adopted by Haverford, or was in effect at any time relevant to the allegations of the Second Amended Complaint. It is further specifically denied that any statements in that document constitute enforceable promises by Haverford. By way of further response, the purported "Bias Policy" referenced in this paragraph and attached to the Second Amended Complaint as Exhibit A reflects a draft version of proposed policy language that the College administration was considering in the context of an internal review process and had been made available for community comment and feedback as a part of that internal review process, but was never adopted and never went into effect as a College policy.

23.    Denied. It is specifically denied, to the extent implied, that the purported "Bias Policy" referenced in this paragraph and attached to the Second Amended Complaint as Exhibit A is or ever has been an official policy adopted by Haverford, or was in effect at any time relevant to the allegations of the Second Amended Complaint. It is further specifically denied that any statements in that document constitute enforceable promises by Haverford. By way of further

response, the purported "Bias Policy" referenced in this paragraph and attached to the Second Amended Complaint as Exhibit A reflects a draft version of proposed policy language that the College administration was considering in the context of an internal review process and had been made available for community comment and feedback as a part of that internal review process, but was never adopted and never went into effect as a College policy.

24.      Denied. It is specifically denied, to the extent implied, that the purported "Bias Policy" referenced in this paragraph and attached to the Second Amended Complaint as Exhibit A is or ever has been an official policy adopted by Haverford, or was in effect at any time relevant to the allegations of the Second Amended Complaint. It is further specifically denied that any statements in that document constitute enforceable promises by Haverford. By way of further response, the purported "Bias Policy" referenced in this paragraph and attached to the Second Amended Complaint as Exhibit A reflects a draft version of proposed policy language that the College administration was considering in the context of an internal review process and had been made available for community comment and feedback as a part of that internal review process, but was never adopted and never went into effect as a College policy.

25.      Denied. It is specifically denied, to the extent implied, that the purported "Bias Policy" referenced in this paragraph and attached to the Second Amended Complaint as Exhibit A is or ever has been an official policy adopted by Haverford, or was in effect at any time relevant to the allegations of the Second Amended Complaint. It is further specifically denied that any statements in that document constitute enforceable promises by Haverford. By way of further response, the purported "Bias Policy" referenced in this paragraph and attached to the Second Amended Complaint as Exhibit A reflects a draft version of proposed policy language that the College administration was considering in the context of an internal review process and had been

made available for community comment and feedback as a part of that internal review process, but was never adopted and never went into effect as a College policy.

26.     Denied. The averments of this paragraph contain conclusions of law and/or relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

## C.     Honor Code

27.     Admitted in part, denied in part. It is admitted that the Haverford Honor Code includes certain expectations related to student conduct and life at the College, as well as procedures under which certain issues related to the Honor Code's expectations may be addressed. It is denied, as stated, that the Honor Code is "overseen by students on the Honor Council." By way of further response, while students on the Honor Council may be involved in administering the Honor Code, the Honor Code is not exclusively administered by students. It is specifically denied that the purported "Anti-Discrimination, Harassment, and Bias Policy" referenced in this paragraph and attached to the Second Amended Complaint as Exhibit A is or ever has been an official policy adopted by Haverford or that any statements in that document constitute enforceable promises by Haverford. Any remaining averments of this paragraph are denied.

28.     Denied.

29.     The averments of this paragraph contain conclusions of law and/or relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

30.     Denied.  The averments of this paragraph contain conclusions of law to which no response is required.  To the extent that the averments are deemed factual, they are denied.

31.     Denied.  The averments of this paragraph contain conclusions of law to which no response is required.  To the extent that the averments are deemed factual, they are denied.

## V.     HAVERFORD'S FAILURE TO PROTECT JEWISH STUDENTS

32.     Denied.

33.     Denied.

34.     Denied. By way of further response, Haverford community members gathered for a candlelight vigil on November 28, 2023 in connection with the shooting of a Palestinian-American Haverford student who was shot in Vermont over the Thanksgiving break, and Vice President Young attended and made comments at the vigil concerning violence occurring around the world, including genocide. The averments contained in footnotes five and six to this paragraph refer to written documents, the contents of which speak for themselves and any characterization thereof is denied. Haverford lacks sufficient information to determine the truth or falsity of the averments of this paragraph concerning alleged discussions among unidentified "Plaintiffs" and they are accordingly denied. Any remaining averments are denied.

35.     Admitted in part and denied in part. It is admitted only that on or about January 31, 2024, Haverford administrators including Dean McKnight, Vice President Young, Provost Linda Strong-Leek, and Jesse Lytle, President Raymond's Chief of Staff, attended a meeting with representatives from Haverford's Hillel and Chabad organizations, at which meeting the attendees discussed concerns related to antisemitism. Any remaining averments are denied.

36.     Admitted in part, denied in part. It is admitted only that on or about April 16, 2024, Haverford administrators, including but not limited to Vice President Young, attended a meeting with individuals from the Philadelphia-area Jewish community. Any remaining averments are denied.

### A.    Haverford's Culture of Discrimination Against Jews

37.    The averments of this paragraph relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

38.    The averments of this paragraph relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

39.    The averments of this paragraph relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

40.    The averments of this paragraph relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

### B.    Haverford Fails to Support its Jewish Students in the Wake of the October 7 Massacre

41.    Admitted in part, denied in part. It is admitted that on October 7, 2023, a series of Hamas-led attacks were conducted in Israel and Palestine during which Israeli citizens and residents were murdered, injured, and/or taken hostage. Haverford lacks sufficient knowledge concerning the averments of this paragraph about the reactions of unidentified "Jewish students at Haverford," and they are accordingly denied. Any remaining averments are denied.

42.    Denied.

43.    Denied.

44.    The averments of this paragraph relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

45.    The averments of this paragraph relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

C.    **Haverford Tolerates Antisemitic Social Media Postings and Conduct**

46.    The averments of this paragraph refer to a written document, the contents of which speak for themselves and any characterization thereof is denied.

47.    Denied. Haverford lacks sufficient information to determine the truth or falsity of the averments of this paragraph concerning unidentified "Plaintiffs" or purported "bias reports" concerning unspecified "posts." As such, the averments of this paragraph are denied.

48.    Denied.  The averments of this paragraph contain conclusions of law and/or relate to claims in this case that have been dismissed and as such, no response is required. To the extent that a response is required, denied.

49.    Denied. The averments of this paragraph refer to written documents, the contents of which speak for themselves and any characterization thereof is denied. It is specifically denied that Professor Aougab "publicly attacked Haverford students," or "announced that he would not provide recommendations for students seeking to study in Israel." Any remaining averments are denied.

50.    Admitted in part, denied in part. It is admitted that on or around March 31, 2024, President Raymond attended an event titled "How Do You Jew" and engaged in conversations with Jewish community members, including about concerns related to social media activity among members of the College community. Haverford lacks sufficient information to determine the truth or falsity of the averments of this paragraph concerning communications by and between unspecified "Jewish students," and they are accordingly denied. Any remaining averments are denied.

51.    The averments of this paragraph refer to written documents, the contents of which speak for themselves and any characterization thereof is denied.

52.     Admitted in part, denied in part. It is admitted that Professor Velasco is currently employed at the College. Haverford lacks sufficient information to determine what Plaintiff means by "discipline" or "substantive responses," as used in the averments of this paragraph, and they are accordingly denied. By way of further response, the averments of this paragraph concerning correspondence between "an alumna" and the College's administrators refer to written documents, the contents of which speak for themselves and any characterization thereof is denied. Any remaining averments are denied.

53.     Denied. Haverford lacks sufficient information to determine what Plaintiff means by "substantive response," as used in the averments of this paragraph, and they are accordingly denied. By way of further response, the averments of this paragraph refer to written documents, the contents of which speak for themselves and any characterization thereof is denied.

54.     The averments of this paragraph refer to written documents, the contents of which speak for themselves and any characterization thereof is denied.

55.     Denied. Haverford lacks sufficient information to determine the truth or falsity of the averments of this paragraph concerning the knowledge of the "posts," and they are accordingly denied. By way of further response, the averments of this paragraph contain conclusions of law and/or relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied. Any remaining averments are denied.

56.     The averments of this paragraph relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

57.     Denied. Haverford lacks sufficient information to determine the truth or falsity of the averments of this paragraph regarding internal discussions between unspecified individuals and/or such individuals' knowledge of certain events, and they are accordingly denied. The

"webpage" referenced in the averments of this paragraph is a written document, the contents of which speak for themselves and any characterization thereof is denied. It is specifically denied that the webpage referenced in this paragraph is an "official Haverford webpage." Any remaining averments are denied.

58.    The averments of this paragraph relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

59.    Admitted in part, denied in part. It is admitted that President Raymond became aware of certain social media posts by Professor Aougab at some point during the 2023-2024 academic year. It is further admitted that Christopher R. Rogers is employed as a Visiting Assistant Professor at the College. The averments of this paragraph concerning social media activity by Professor Rogers refer to written documents, the contents of which speak for themselves and any characterization thereof is denied. Haverford lacks sufficient information to determine what Plaintiff means by "discipline," as used in the averments of this paragraph, and they are accordingly denied. Any remaining averments are denied.

60.    The averments of this paragraph relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

61.    The averments of this paragraph relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

62.    The averments of this paragraph relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

63.    Denied. The College lacks sufficient information to determine the truth or falsity of the averments in this paragraph and they are accordingly denied.

64.     Denied. Haverford lacks sufficient information to determine the truth or falsity of the averments of this paragraph. As such, the averments of this paragraph are denied.

65.     Denied. Haverford lacks sufficient information to determine the truth or falsity of the averments of this paragraph. As such, the averments of this paragraph are denied.

66.     The averments of this paragraph relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

67.     The averments of this paragraph relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

68.     The averments of this paragraph relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

69.     The averments of this paragraph relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

70.     The averments of this paragraph relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

71.     The averments of this paragraph relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

72.     The averments of this paragraph contain conclusions of law and/or relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

73.     Denied. Haverford lacks sufficient information to determine the truth or falsity of the averments of this paragraph. As such, the averments of this paragraph are denied.

      **D.**      **Haverford Tolerates Intimidating and Disruptive Conduct Targeting Plaintiffs**

74.    Haverford lacks sufficient information to determine the truth or falsity of the averments of this paragraph concerning unspecified "students" and incidents. As such, the averments of this paragraph are denied.

75.    Denied. The averments of this paragraph contain conclusions of law and/or relate to claims in this case that have been dismissed and as such, no response is required. To the extent that the averments are deemed factual or requiring a response, they are denied.

76.    Denied. The averments of this paragraph contain conclusions of law and/or relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

77.    Denied.

78.    The averments of this paragraph contain conclusions of law and/or relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

## VI.    HOSTILE ACTION BY STUDENTS

      **A.**    **The ADL Event**

79.    Admitted in part, denied in part. It is admitted that on September 30, 2024, Haverford hosted a presentation by the Anti-Defamation League titled "Anti-Semitism 101." Haverford lacks sufficient information to determine the truth or falsity of the averments of this paragraph concerning the conduct of unspecified "students," and they are accordingly denied. By way of further response, the averments of this paragraph refer to written documents, the contents

of which speak for themselves and any characterization thereof is denied. Any remaining averments are denied.

80.    Admitted in part, denied in part. It is admitted that prior to the ADL event, Haverford employees became aware that the blinds on the windows of the room where the event was to be held had been zip tied, and that the College employees promptly removed the zip ties before the event began. It is further admitted that a number of individuals stood outside and protested the event. Haverford lacks sufficient information to determine the truth or falsity of the averments of this paragraph concerning how the blinds became zip tied, and they are accordingly denied. By way of further response, the averments of this paragraph refer to audio recordings, the contents of which speak for themselves and any characterization thereof is denied. Any remaining averments are denied.

81.    Admitted in part, denied in part. It is admitted that four attendees interrupted the ADL presentation. It is further admitted that Dean McKnight, Vice President Young, President Raymond, and other administrators attended the presentation and that Dean McKnight instructed attendees to cease further interruptions. Any remaining averments are denied.

82.    Denied.

83.    Admitted in part, denied in part. It is admitted that at some point after the ADL event, Professor Freedman communicated to President Raymond some concerns he had regarding the protest activity occurring in the context of the ADL event. That communication is a written document, the contents of which speak for themselves and any characterization thereof is denied. Haverford lacks sufficient information to determine the truth or falsity of the averments of this paragraph concerning the reactions of unspecified individuals to the ADL event, and they are accordingly denied. Any remaining averments of this paragraph are denied.

84.     Denied.

85.     Denied.

86.     Haverford lacks sufficient information to determine the truth or falsity of the averments of this paragraph. As such, the averments of this paragraph are denied.

###### B.    Plenary

87.     Admitted in part, denied in part. It is admitted that Plenary is an event at which the Haverford student community gathers to discuss timely issues and vote to ratify the College's Honor Code.  Haverford lacks sufficient information to determine what Plaintiff means by "safe space" as used in the averments of this paragraph, and they are accordingly denied. Any remaining averments are denied.

88.     Denied.

89.     Admitted.

90.     Admitted in part, denied in part. It is admitted that individuals in charge of planning the 2023 Fall Plenary notified the student body, in advance of Plenary, that Plenary would include a time for public comment and provided directions for those who wished to sign up for a time slot to address the College's student body during the 2023 Fall Plenary. It is further admitted that certain students signed up for the available public comment time slots, and that some of those students utilized visual aids during their public comment time slot. The presentation referenced in this paragraph is a written document, the contents of which speak for themselves and any characterization thereof is denied. Haverford lacks sufficient information to determine the truth or falsity of the averments of this paragraph concerning "coordination" between unspecified individuals, and they are accordingly denied. Any remaining averments are denied.

91.     Denied.

92.    Denied.

93.    Haverford lacks sufficient information to determine the truth or falsity of the averments of this paragraph. As such, the averments of this paragraph are denied.

94.    Admitted in part, denied in part. It is admitted that President Raymond, Dean McKnight, among other administrators, attended the Fall 2023 Plenary. It is further admitted that at the request of certain individuals who had not signed up in advance to speak, Dean McKnight attempted to communicate with Plenary leaders and requested that the schedule be adjusted to allow additional individuals an opportunity to address the student body. Any remaining averments are denied.

95.    Denied. The averments of this paragraph refer to a written document, the contents of which speak for themselves and any characterization thereof is denied.

96.    The averments of this paragraph refer to a written document, the contents of which speak for themselves and any characterization thereof is denied.

97.    Admitted in part, denied in part. It is admitted that, at her request, the College granted Landau permission to utilize the College's email system to share her views in a letter to the Haverford community, and that, with the College's assistance, Landau shared such a letter on November 8, 2024. Landau's letter is a written document, the contents of which speak for themselves and any characterization thereof is denied. Any remaining averments are denied.

98.    Haverford lacks sufficient information to determine the truth or falsity of the averments of this paragraph concerning the intended purpose of Landau's letter. As such, the averments of this paragraph are denied.

99.    The averments of this paragraph refer to a written document, the contents of which speak for themselves and any characterization thereof is denied.

100.    The averments of this paragraph refer to a written document, the contents of which speak for themselves and any characterization thereof is denied.

101.    Denied. Haverford lacks sufficient information to determine the truth or falsity of the averments of this paragraph. As such, the averments of this paragraph are denied.

102.    Admitted in part, denied in part. It is admitted that certain administrators at Haverford became aware of the existence of the "Grievances Document." The "Grievances Document" is a written document, the contents of which speak for themselves and any characterization thereof is denied. Haverford lacks sufficient information to determine the truth or falsity of the remaining averments of this paragraph and they are accordingly denied.

103.    Admitted in part, denied in part. It is admitted that President Raymond met with Landau's parents to discuss the "Grievances Document," and that President Raymond coordinated the removal of Landau's name from the document and offered Landau supportive measures. The averments of this paragraph concerning the "Grievances Document" refer to a written document, the contents of which speak for themselves and any characterization thereof is denied. Any remaining averments are denied.

104.    Denied. Haverford lacks sufficient information to determine the truth or falsity of the averments of this paragraph concerning unspecified College employees, and they are accordingly denied. Further, the averments of this paragraph refer to written communications, the contents of which speak for themselves and any characterization thereof is denied. Any remaining averments are denied.

105.    Denied.

106.    Admitted in part and denied in part. It is admitted only that an additional Plenary was held in late February, early March of the Spring 2024 semester at which a resolution was

introduced relating to calls for a ceasefire in Israel and Palestine. The resolution is a written document, the contents of which speak for themselves and any characterization thereof is denied. Any remaining averments are denied.

107.    Denied. The averments of this paragraph contain conclusions of law and/or relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied. By way of further response, the rules governing Plenaries at the College are contained in a written document, the contents of which speak for themselves and any characterization thereof is denied.

108.    The averments of this paragraph relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

109.    The averments of this paragraph relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

110.    The averments of this paragraph relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

111.    The averments of this paragraph relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

112.    The averments of this paragraph relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

113.    The averments of this paragraph relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

114.    Admitted in part and denied in part. It is admitted that a resolution relating to a ceasefire was adopted during the Spring 2024 Plenary, and that an individual offered Palestinian flags to certain Spring 2024 Plenary attendees. Any remaining averments are denied.

115.    The averments of this paragraph refer to a written document, the contents of which speak for themselves and any characterization thereof is denied.

116.    Denied. Haverford lacks sufficient information to determine what Plaintiff means by "substantive response," as used in the averments of this paragraph, and they are accordingly denied.

117.    Admitted in part, denied in part. It is admitted that on or about April 9, 2024, President Raymond issued a message to the Haverford community, which message is a written document, the contents of which speak for themselves and any characterization thereof is denied. Haverford lacks sufficient information to determine the truth or falsity of the averments of this paragraph concerning unspecified "numerous students" and they are accordingly denied. It is specifically denied that President Raymond "did nothing" or, to the extent implied, that Haverford failed to respond to purported "hostility to Jewish students," occurring on campus of which the College was aware. Any remaining averments are denied.

## C.    Lecture Claiming Israel Is Murdering Palestinians by Spreading Disease

118.    Admitted in part, denied in part. It is admitted that in late March 2024, certain Haverford students advertised a scheduled lecture titled "Mass Death on all Fronts: Israel's weaponization of COVID against Palestinians." The "advertisement" referenced in the averments of this paragraph is a written document, the contents of which speak for themselves and any characterization thereof is denied. Any remaining averments are denied.

119.    Admitted in part, denied in part. It is admitted that, as a result of discussions initiated by Dean McKnight, the individuals involved in planning the lecture changed the lecture's title. Haverford lacks sufficient information to determine the truth or falsity of the averments of

this paragraph concerning unspecified "complaints" by unspecified individuals, and they are accordingly denied. Any remaining averments are denied.

120.    Denied. Haverford lacks sufficient information to determine the truth or falsity of the averments of this paragraph. As such, the averments of this paragraph are denied.

121.    Denied. Haverford lacks sufficient information to determine the truth or falsity of the averments of this paragraph concerning unspecified communications by unspecified individuals or the College's alleged response to same, and they are accordingly denied.

122.    The averments of this paragraph refer to a written document, the contents of which speak for themselves and any characterization thereof is denied.

### D.    The Sit-In At Founders Hall

123.    Admitted in part, denied in part. It is admitted that in early December 2023, certain Haverford community members engaged in expressive activity in and around Founders Hall on Haverford's campus, and that such expressive activity occurred at the same time as other events on campus. Haverford lacks sufficient information to determine the truth or falsity of the averments of this paragraph concerning unspecified individuals and the impact of such expressive activity on same, and they are accordingly denied. Any remaining averments are denied.

124.    Admitted in part, denied in part. It is admitted that the expressive activity occurring in and around Founders Hall in December 2023 included, at times, banners and verbal chants, many of which were critical of Israel's actions in the context of the war in Israel and Palestine. Haverford lacks sufficient information to determine the truth or falsity of the averments of this paragraph concerning unspecified individuals and the impact of such expressive activity on same, and they are accordingly denied. Any remaining averments are denied.

125.    Admitted in part and denied in part. It is admitted that Professor Aougab addressed students who were engaged in expressive activity occurring in and around Founders Hall in December 2023, and that some of Professor Aougab's comments were critical of Israel's actions in the context of the war in Israel and Palestine. Any remaining averments are denied.

126.    Denied. The averments of this paragraph relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

127.    Admitted in part, denied in part. It is admitted that President Raymond became aware of the expressive activity occurring in and around Founders Hall in December 2023. It is specifically denied that Haverford failed to enforce or otherwise abide by its established policies. By way of further response, the averments of this paragraph concerning President Raymond's comments refer to a written document, the contents of which speak for themselves and any characterization thereof is denied. Any remaining averments are denied.

128.    Admitted in part, denied in part. It is admitted that President Raymond discussed with Landau's parents concerns they had regarding the expressive activity occurring in and around Founders Hall in December 2023. By way of further response, the averments of this paragraph concerning President Raymond's purported "praise" of the expressive activity refer to a written document, the contents of which speak for themselves and any characterization thereof is denied. Any remaining averments are denied.

### E.    Nova Festival Screening and Demand That Zionists Be Banished

129.    It is admitted only that on or about April 14, 2024, Haverford hosted an event on campus which included a screening of a film concerning the Hamas-led attacks on Israel at the Nova Festival on October 7, 2023. The remaining averments of this paragraph relate to claims in

this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

130.    The averments of this paragraph relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

131.    The averments of this paragraph relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

### F.    The Encampment

132.    Admitted in part, denied in part. It is admitted that in late April 2024, certain Haverford community members engaged in expressive activity on Haverford's Founders Green. The averments of this paragraph concerning "demands" related to the expressive activity in April 2024 refer to a written document, the contents of which speak for themselves and any characterization thereof is denied. Any remaining averments are denied.

133.    Denied.

134.    Denied.

135.    Denied. The averments of this paragraph relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied. By way of further response, Haverford lacks sufficient information to determine the truth or falsity of the averments of this paragraph concerning unspecified individuals and they are accordingly denied.

136.    Denied.

137.    Denied.

G.     **Members Of the Incoming Students WhatsApp Group Drive Away A Jewish Student**

138.    The averments of this paragraph relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

139.    The averments of this paragraph relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

140.    The averments of this paragraph relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

H.     **Orientation For New Students Attacks Plaintiffs' Commitment and Identity**

141.    Admitted.

142.    Admitted that Fall 2024 Customs programming included presentations concerning expressive activity on campus, and that Haverford students often participate in the planning and execution of Customs programming. Any remaining averments are denied.

143.    Admitted that certain students and other community members who were supportive of Israel sought to have their perspective included in Customs programming and prepared a presentation to be given to student leaders involved in Customs reflecting that perspective. The averments of this paragraph concerning the "presentation" refer to a written document, the contents of which speak for themselves and any characterization thereof is denied. Any remaining averments of this paragraph are denied.

144.    Denied.

145.    The averments of this paragraph refer to a written document, the contents of which speak for themselves.

146.    Denied. Haverford lacks sufficient information to determine the truth or falsity of the averments of this paragraph. As such, the averments of this paragraph are denied.

147.    Denied.

148.    Denied.

149.    Haverford lacks sufficient information to determine the truth or falsity of the averments of this paragraph. As such, the averments of this paragraph are denied.

150.    Denied.

151.    The averments of this paragraph relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

> **I.    Haverford Awards A Student Who Mocked Jewish Complaints That Posters Advertising Jewish Events Were Being Pulled Down**

152.    Admitted.

153.    Denied. Haverford lacks sufficient information to determine the truth or falsity of the averments of this paragraph. As such, the averments of this paragraph are denied.

154.    Denied.

155.    Denied.

156.    Admitted in part, denied in part. It is admitted that in Fall 2024, a group previously referred to as "Bi-Co Students for Peace," changed its name to "Bi-Co Students for the Liberation of Palestine." The averments in this paragraph including quoted language "announced" by the group and/or "complaints" regarding same refer to written documents, the contents of which speak for themselves and any characterization thereof is denied. Haverford lacks sufficient information to determine the truth or falsity of the averments of this paragraph, and they are accordingly denied. Any remaining averments are denied.

> **VII.    HOSTILE ACTION BY ADMINISTRATORS**

157.    The averments of this paragraph relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

### A.    Cancellation of the Antisemitism Awareness Basketball Game

158.    Admitted in part, denied in part. It is admitted that during the 2023-2024 academic year, Landau engaged in conversations with Haverford administrators, including Vice President Young and Assistant Director of Athletics Jason Rash, concerning plans to dedicate a Haverford women's basketball game to antisemitism awareness, and that February 6, 2024 had been identified as a potential date for the game. Haverford lacks sufficient information to determine the truth or falsity of the averments of this paragraph concerning actions taken by Landau and they are accordingly denied. Any remaining averments are denied.

159.    Denied.

160.    Denied.

161.    Admitted in part, denied in part. It is admitted that Landau's father communicated to Dean McKnight his belief that Landau had been pressured to forgo the antisemitism awareness component of the February 6, 2024 basketball game, and that Dean McKnight suggested in response that Landau may have faced pressure from other individuals. It is further admitted that at the February 6, 2024 basketball game, Landau's father communicated to Dean McKnight that he did not want Dean McKnight engaging in conversations with Landau. Any remaining averments are denied.

### B.    Vice President Nikki Young Denounces Israel At A Vigil For A Student

162.    Denied.

163.    Denied.

### C.    Haverford Informs Jewish Community Leaders That They Want Jews To Feel Unsafe on Campus

164.    The averments of this paragraph relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied. It is

explicitly denied that Vice President Young stated that "Blacks and gays have in the past not felt safe on campus, and it is now the turn of the Jews to experience that feeling."

165.   The averments of this paragraph relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

> ### D.   Haverford Ratifies Student Hostility To Plaintiffs and Their Commitments

166.   Denied.

167.   The averments of this paragraph contain conclusions of law and/or relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied

## VIII.   PLAINTIFFS' INJURIES

168.   The averments of this paragraph contain conclusions of law and/or relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

169.   The averments of this paragraph relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

170.   The averments of this paragraph relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

171.   Denied. Haverford lacks sufficient information to determine the truth or falsity of the averments of this paragraph. As such, the averments of this paragraph are denied. It is specifically denied that Haverford "rebuffed and/or ignored" Landau's concerns. Any remaining averments are denied.

172.   The averments of this paragraph relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

173.    The averments of this paragraph relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

174.    The averments of this paragraph relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

## COUNT I

## TITLE VI OF THE CIVIL RIGHTS ACT OF 1964 42 U.S.C. § 2000d et seq.

175.    All preceding paragraphs are incorporated by reference.

176.    The averments of this paragraph relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

177.    The averments of this paragraph relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

178.    The averments of this paragraph relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

179.    The averments of this paragraph relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

180.    The averments of this paragraph relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

181.    The averments of this paragraph relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

182.    The averments of this paragraph relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

183.    The averments of this paragraph relate to claims in this case that have been dismissed and as such, no response is required. To the extent a response is required, denied.

## COUNT II

## BREACH OF CONTRACT

184.    All preceding paragraphs are incorporated by reference.

185.    Denied. The averments of this paragraph contain conclusions of law to which no response is required.  To the extent that the averments are deemed factual, they are denied.

186.    Denied. The averments of this paragraph contain conclusions of law to which no response is required.  To the extent that the averments are deemed factual, they are denied.

187.    Denied.  The averments of this paragraph contain conclusions of law to which no response is required.  To the extent that the averments are deemed factual, they are denied.

188.    Denied. The averments of this paragraph contain conclusions of law to which no response is required.  To the extent that the averments are deemed factual, they are denied.

189.    Denied. The averments of this paragraph contain conclusions of law to which no response is required.  To the extent that the averments are deemed factual, they are denied.

190.    Denied.  The averments of this paragraph contain conclusions of law to which no response is required.  To the extent that the averments are deemed factual, they are denied.

191.    Denied. The averments of this paragraph contain conclusions of law to which no response is required.  To the extent that the averments are deemed factual, they are denied. Haverford lacks sufficient information to determine what Plaintiff's mean by "bias report," and such averments are accordingly denied. Insofar as the reference to "bias reports" in the averments of this paragraph refer to written documents, the contents of such written documents speak for themselves and any characterization thereof is denied. Any remaining averments of this paragraph are denied

192.    Denied.

193.    Denied.

194.    Denied.  The averments of this paragraph contain conclusions of law to which no response is required.  To the extent that the averments are deemed factual, they are denied.

**PRAYER FOR RELIEF**

195.    This paragraph constitutes a characterization of the relief sought by Plaintiffs in this lawsuit to which no response is required. To the extent the contents of this paragraph are deemed factual averments requiring a response, denied. It is specifically denied that Plaintiffs are entitled to any relief in this lawsuit.

196.    This paragraph constitutes a characterization of the relief sought by Plaintiffs in this lawsuit to which no response is required. To the extent the contents of this paragraph are deemed factual averments requiring a response, denied. It is specifically denied that Plaintiffs are entitled to any relief in this lawsuit.

197.    This paragraph constitutes a characterization of the relief sought by Plaintiffs in this lawsuit to which no response is required. To the extent the contents of this paragraph are deemed factual averments requiring a response, denied. It is specifically denied that Plaintiffs are entitled to any relief in this lawsuit

198.    This paragraph constitutes a characterization of the relief sought by Plaintiffs in this lawsuit to which no response is required. To the extent the contents of this paragraph are deemed factual averments requiring a response, denied. It is specifically denied that Plaintiffs are entitled to any relief in this lawsuit

199.    This paragraph constitutes a characterization of the relief sought by Plaintiffs in this lawsuit to which no response is required. To the extent the contents of this paragraph are

deemed factual averments requiring a response, denied. It is specifically denied that Plaintiffs are entitled to any relief in this lawsuit.

200.    This paragraph constitutes a characterization of the relief sought by Plaintiffs in this lawsuit to which no response is required. To the extent the contents of this paragraph are deemed factual averments requiring a response, denied. It is specifically denied that Plaintiffs are entitled to any relief in this lawsuit.

201.    This paragraph constitutes a characterization of the relief sought by Plaintiffs in this lawsuit to which no response is required. To the extent the contents of this paragraph are deemed factual averments requiring a response, denied. It is specifically denied that Plaintiffs are entitled to any relief in this lawsuit.

202.    This paragraph constitutes a characterization of the relief sought by Plaintiffs in this lawsuit to which no response is required. To the extent the contents of this paragraph are deemed factual averments requiring a response, denied. It is specifically denied that Plaintiffs are entitled to any relief in this lawsuit.

**WHEREFORE** Haverford demands judgment in its favor, along with any other relief this Court deems just and proper.

## **AFFIRMATIVE DEFENSES**

1.    Plaintiffs' Second Amended Complaint fails to state a claim upon which relief may be granted.

2.    No act or omission on the part of Haverford was the legal cause of, or a substantial contributing factor to, Plaintiffs' alleged injuries or damages.

3.    Haverford is not responsible for intentional torts committed by others.

4.    Plaintiffs have failed to mitigate damages, if any.

5.      Plaintiffs' Second Amended Complaint is barred, in whole or in part, by the doctrines of waiver, estoppel, laches, or unclean hands.

6.      Plaintiffs' Second Amended Complaint is barred, in whole or in part, by the doctrine of accord and satisfaction.

7.      Plaintiffs' recovery in this action may be barred, in whole or in part, by their own wrongful conduct, or that of a third party over whom Haverford had no control.

8.      Haverford acted in accordance with all applicable laws, practices, standards, and regulations.

9.      Plaintiffs' Second Amended Complaint should be dismissed because Haverford did not breach any duties owed to Plaintiffs, individually or in the aggregate.

10.     Plaintiffs' Second Amended Complaint should be dismissed because they lack standing.

11.     Haverford hereby gives notice that it intends to rely upon other such defenses as may become available or appear during discovery proceedings in this case, and reserves the right to amend this Answer and insert any such defense consistent with the Federal Rules of Civil Procedure.

**WHEREFORE** Haverford demands judgment in its favor, along with any other relief this Court deems just and proper.

Respectfully submitted,

**SAUL EWING LLP**

Date: July 14, 2025

s/ *Joshua W. B. Richards*

Joshua W. B. Richards/204315
Levi R. Schy/329199
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA  19102
(215) 972-7737 (Richards)
(215) 972-7803 (Schy)
Joshua.Richards@saul.com
Levi.Schy@saul.com

*Attorneys for Haverford College*

**<u>CERTIFICATE OF SERVICE</u>**

I, Joshua W. B. Richards, certify that on this date I filed via the ECF system a true and correct copy of the foregoing Answer to Plaintiffs' Second Amended Complaint, which constitutes valid service on the following registered users:

Jerome M. Marcus, Esq.
Marcus & Marcus LLC
P.O. Box 212
Merion Station, PA 19066
jmarcus@marcuslaw.us

Lori Lowenthal Marcus, Esq.
The Deborah Project, Inc.
P.O. Box 212
Merion Station, PA 19066
lorilowenthalmarcus@deborahproject.org

*Attorneys for Plaintiffs Ally Landau, HJSB, HJSC, and "Jews at Haverford"*

Date: July 14, 2025

*s/ Joshua W. B. Richards*
Joshua W. B. Richards/204315
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
(215) 972-7737
Joshua.Richards@saul.com

*Attorney for Haverford College*